IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2811-GPG-NRN

URBAN INTERESTS LLC, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES LLC,
HHK GROUP, LLC
JAMES EBERHARD,
JENIFER SNYDER, and
THOMAS SCOTT AVILA,

    Defendants.

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Urban Interests LLC ("Plaintiff" or "Urban Interests"), through undersigned counsel, for its Amended Class Action Complaint against defendants Fluid Market Inc., Fluid Fleet Services LLC (collectively, with Fluid Market Inc., "Fluid Truck"),[1] HHK Group, LLC, James Eberhard, Jenifer Snyder, and Thomas Scott Avila alleges as follows:

---

[1] Plaintiff's claims against Fluid Truck are currently subject to the automatic stay because of Fluid Truck's bankruptcy petitions. *See* Dkt. No. 12. The changes in this Amended Complaint are directed entirely toward non-debtor defendants, specifically against HHK Group, a new non-debtor defendant, and existing non-debtor defendants James Eberhard, Jenifer Snyder, and Scott Avila. Therefore, this Amended Complaint is

## INTRODUCTION

1. This is a proposed class action brought on behalf of all vehicle owners damaged by Fluid Truck's broken promises and naked theft of the proceeds rightfully due and owing to Plaintiff and the class from the sales of vehicles owned by Plaintiff and the class. Fluid Truck's corrupt, unlawful, and unconscionable scheme proceeds as follows. First, Fluid Truck invited the vehicle owners on its vehicle-rental platform—including Plaintiff and the class—to allow Fluid Truck to sell vehicles on their behalf, and promised to provide the proceeds of those sales to those owners. Then, in direct contravention of its express promises to Plaintiff and the class, Fluid Truck elected to sell those same vehicles and simply pocket the money—knowingly misappropriating more than $11 million in sales proceeds for its own use. Making matters worse, Fluid Truck then openly and intentionally lied to the owners about the status of paying those proceeds. The "masterminds" behind this corrupt and widespread theft scheme are James Eberhard, Fluid Truck's CEO, and Jenifer Snyder, his sister and general counsel, both of whom resigned as executives in July 2024, but still somehow remain on the board of directors. Despite Fluid Truck's feint in the direction of leadership change, the company's current leadership and board continue to perpetuate and benefit from the same ongoing theft scheme and refuse to return the stolen funds to Plaintiff and the class.

---

not intended to, and does not, advance Plaintiff's claims or requests for relief against the bankrupt Fluid Truck entities. *See, e.g.*, *In re Gronczewski*, 444 B.R. 526, 530 (Bankr. E.D. Penn. 2011) (filing of amended complaint did not violate automatic stay because "no new claims or requests for relief [were] directed against the Debtor").

Now that this corrupt, unlawful, and unconscionable scheme has been uncovered, Plaintiff seeks to recover all funds stolen by Fluid Truck, as well as its attorneys' fees, expenses, and other appropriate relief.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Urban Interests LLC is a Colorado limited liability company with its principal office located in Littleton, Arapahoe County, Colorado. Urban Interests' sole member, Tim Urban, is a citizen of Colorado.

3. Defendant Fluid Market Inc. is a Delaware corporation with its principal office located at 3827 Lafayette Street, Suite 149, Denver, Colorado 80205.

4. Defendant Fluid Fleet Services LLC is a Colorado limited liability company with its principal office located at 3827 Lafayette Street, Suite 149, Denver, Colorado 80205.

5. Defendant HHK Group, LLC is a Colorado limited liability company fully owned and controlled by Defendants James Eberhard and Jenifer Snyder.

6. James Eberhard is a current board member and former chief executive officer of Fluid Truck. Mr. Eberhard's address is 1601 South Elizabeth Street, Denver, Colorado 80210.

7. Jenifer Snyder is a current board member and former general counsel of Fluid Truck. Ms. Snyder's address is 13880 Gunnison Way, Broomfield, Colorado 80020.

8. Thomas Scott Avila is the interim chief executive officer of Fluid Market Inc. and Fluid Fleet Services LLC. His address is 762 Lakeshore Boulevard, Incline Village, Nevada 89451. Mr. Avila is a citizen of Nevada.

9. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA"), as well as 28 U.S.C. § 1332(d)(2) and (6). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than one hundred (100) members of the putative Class, and Urban Interests and Mr. Avila are citizens of different states.

10. This Court has personal jurisdiction over Defendants, because Defendants are Colorado residents, or, in the case of Mr. Avila, the Chief Executive Officer of Colorado companies. The claims arise out of Mr. Avila's contacts with Colorado.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**FACTUAL ALLEGATIONS**

12. Fluid Truck is an on-demand vehicle rental platform that offers the public access to rent cargo vans, box trucks, and pickup trucks via a mobile app and website.

13. Fluid Truck also offers a Fluid Vehicle Investor Platform ("FVIP") that enables individuals and small business owners to purchase fleets of vehicles, and then rent them out via Fluid Truck's platform.

14. Fluid Truck manages all aspects of the rental services on behalf of fleet owners who participate in the FVIP. Fluid Truck provides insurance for the rental vehicles, collects payments on behalf of owners, provides maintenance and repair on behalf of owners, and otherwise handles all day-to-day aspects of the rental process.

15. Urban Interests entered into a Vehicle Management Agreement ("Agreement") with Fluid Truck in 2020 for its participation in Fluid Truck's FVIP program.

16. Over time, Urban Interests purchased a fleet of 47 vehicles through the program, and, from time to time pursuant to the Agreement, has placed them into rental service with Fluid Truck.

17. At the time it placed the fleet into rental service with Fluid Truck, Urban Interests also provided the original, physical copies of the titles of the vehicles to Fluid Truck.

18. As part of the FVIP program, Fluid Truck allows vehicle owners to "decommission" their vehicles from the Fluid Truck platform under certain circumstances, including after those vehicles have spent a certain period of time on the platform, after those vehicles reach a certain age, or after those vehicles exceed certain mileage levels.

19. Under Fluid Truck's decommissioning policy (as outlined on the Fluid Truck website), Fluid Truck promised to try to "sell [the] vehicle on [owners'] behalf" through a third-party auction service. From the sale proceeds and any receipts from

5

insurance claims, Fluid Truck would deduct a decommissioning fee, the cost of any necessary repairs, and other applicable fees, and turn the proceeds over to the vehicle owner.

20. For a period of time, Fluid Truck appeared to follow its own decommissioning policy. As it relates to Urban Interests specifically, Fluid Truck decommissioned and sold 29 of Urban Interests' vehicles, and paid those remaining proceeds over to Urban Interests after deducting the amounts noted above.

21. Even in 2022 and 2023, and continuing throughout Defendant Eberhard and Defendant Snyder's management of Fluid Truck, Eberhard and Snyder routed vehicle decommissioning activities through Defendant HHK Group.

22. Defendant HHK Group was the majority equity owner of Fluid Truck, and is fully owned and controlled by Defendants Eberhard and Snyder.

23. When FVIP owners' vehicles were sold, HHK Group would receive the sales proceeds from the third-party auction service.

24. As early as 2022, if not earlier, Eberhard and Snyder would delay HHK Group's payment of sales proceeds to FVIP owners, and falsely tell FVIP owners that the third-party auction service had delayed payment.

25. At all relevant times until their removal from Fluid's management, Defendants Eberhard and Snyder personally directed the timing of sales proceeds payments to FVIP owners—including whether FVIP owners were paid at all.

26. In late 2023 and early 2024, Urban Interests decided to decommission and sell its remaining vehicles ("Vehicles") through the same process.

27. Urban Interests made that decision in direct reliance on Fluid Truck's decommissioning policy.

28. At all relevant times, Urban Interests was the title owner of the Vehicles that it authorized Fluid Truck to sell on its behalf.

29. Between February and June 2024, Fluid Truck in fact sold fourteen Vehicles owned by Urban Interests.

30. Despite repeated requests by Urban Interests, Fluid Truck and HHK Group refused to remit the proceeds of those vehicle sales to Urban Interests.

31. More specifically, Fluid Truck and HHK Group owe Urban Interests the following gross proceeds from their sales of Urban Interests' property:

| Vehicle # | Date of Sale | Sale Amount |
|---|---|---|
| LVP103 | 2/16/24 | $24,075 |
| DAH104 | 2/22/24 | $24,250 |
| TAP176 | 2/29/24 | $33,800 |
| TAP177 | 4/8/24 | $32,850 |
| F1085 | 3/25/24 | $64,000 |
| DN331 | 6/5/24 | $30,000 |
| DN405 | 6/26/24 | $25,250 |
| VIT146 | 3/14/24 | $34,800 |
| T1861 | 4/3/24 | $30,200 |
| RLP136 | 4/22/24 | $25,000 |
| SET144 | 4/24/24 | $25,200 |
| P2212 | 5/21/24 | $24,900 |
| RFP138 | 3/25/24 | $18,000 |
| LVP100 | 5/24/24 | $23,000 |
| **Total** | | **$415,325** |

7

32. By emails dated September 27, 2024, Brennen DuPree, Fluid Truck's head of FVIP relations and remarketing, admitted that Fluid Truck owes $178,216 to Urban Interests for net sales and claims proceeds in connection with the decommissioning of Urban Interests' Vehicles.

33. After months of delays, deception, and obfuscation about the status of payment, Fluid Truck finally admitted to Urban Interests and other members of the class that it is intentionally keeping more than $11 million in stolen funds owed to Plaintiff and the class as sales and claims proceeds.

34. Simply put, Fluid Truck and HHK Group have stolen from the FVIP vehicle owners to fund Fluid Truck's ongoing operations—and Fluid Truck effectively concedes as much.

35. In July 2024, perhaps understanding the exposure created by this illegal scheme, Fluid Truck removed Defendants Eberhard and Snyder as executives. But Eberhard and Snyder remain on the Fluid Truck board of directors.

36. On July 16, 2024, the board of directors (including Defendants Eberhard and Snyder) installed Thomas Scott Avila as interim CEO. Notwithstanding this supposed change in company leadership, Mr. Avila and the current management team have continued to perpetuate the same scheme to steal FVIP owners' money by keeping those funds, and refusing to repay the FVIP owners.

37. When Mr. Avila became Fluid Truck's interim CEO, a Fluid Truck account designated as the "disposition fund" contained $5 million, which consisted of FVIP owners' sales and insurance proceeds. At Mr. Avila's direction, that account's name was changed to "operating fund," and those funds were used for Fluid Truck's operating expenses. Based on information and belief, Fluid Truck then drained monies from that "operating fund" at Mr. Avila's direction, rather than remit those monies to the FVIP owners.

38. On August 21, 2024, Mr. Avila sent an email to participants in the FVIP program that stated in relevant part:

> In my initial communication, I promised transparency and open communication, so I want to be candid—we are facing significant financial challenges that we have yet to solve for [*sic*]. As a result, we are still unable to process arrears payments, including insurance claim payouts and monies owed for vehicle sales. … Most importantly, we expect that moving forward, insurance claims payouts and monies owed for vehicle sales will be paid in a timely manner.

Exhibit A.

39. Mr. Avila personally approved of Fluid Truck's continued use of FVIP owners' sales and insurance proceeds, with the knowledge that such funds were sales and insurance proceeds owed to FVIP owners.

40. In just the three months preceding Fluid Truck's bankruptcy, Mr. Avila's firm, Paladin Management Group, LLC collected more than $2 million in fees from Fluid Truck.

9

41. Douglas Trussler, a partner with Bison Capital Asset Management, LLC ("Bison Capital"), which is an investor in Fluid Truck, informed Urban Interests by telephone on October 2, 2024, and by email on October 3, 2024, that Fluid Truck fully intends and is resolved to keep the sales proceeds stolen from Urban Interests and other FVIP owners.

42. According to Mr. Trussler, Fluid Truck, Bison Capital, and other board members and investors know that Fluid Truck has stolen more than $11 million from FVIP owners.

43. By keeping the stolen sales proceeds without authorization, Fluid Truck and HHK Group's actions constitute civil theft and conversion of Urban Interests' property, as well as unjust enrichment.

44. By launching, supervising, and personally directing all day-to-day details of the scheme to steal and keep the FVIP owners' money, James Eberhard and Jenifer Snyder have directed, actively participated in, and cooperated in the theft and conversion of Urban Interests' property and the property of other FVIP owners.

45. By personally approving of the continuation of the scheme to keep the FVIP owners' money and spend it on other purposes, Thomas Scott Avila has approved of, sanctioned, and cooperated in the theft and conversion of Urban Interests' property and the property of other FVIP owners.

46. Upon information and belief, other board members, executives, and investors have directed, approved of, sanctioned, actively participated in, or cooperated

in the theft and conversion of Urban Interests' property and the property of other FVIP owners.

## CLASS ALLEGATIONS

47. Plaintiff Urban Interests brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other persons similarly situated.

48. Urban Interests seeks to represent the following class ("Class"):

All FVIP owners nationwide who (i) requested decommissioning of their vehicles from Fluid Truck, (ii) had their vehicles sold by Fluid Truck, and (iii) have not been paid the sales proceeds and other amounts due and owing from the sales of their vehicles by Fluid Truck.

49. Excluded from the Class are the Defendants, their respective officers, directors, and employees, any entity that has a controlling interest in any defendant, and all of its or their respective employees, affiliates, legal representatives, heirs, successors, or assignees.

50. Plaintiff reserves the right to modify or amend the definition of the proposed Class based upon information it learns during the course of discovery and until such time as the Court determines whether class certification is appropriate.

51. The Class is so numerous that joinder of all Class members would be impracticable. Fluid Truck and HHK Group have stolen and retained sales proceeds and other amounts due from the sales of vehicles from more than 100 FVIP owners. Thus, the proposed Class satisfies the numerosity requirement of Rule 23.

52. Plaintiff Urban Interests requested decommissioning of its Vehicles from Fluid Truck, Fluid Truck sold Vehicles on Urban Interests' behalf, and Fluid Truck and HHK Group have refused to pay the sales proceeds and other amounts due to Urban Interests related to the sales of its Vehicles. Thus, Urban Interests' claims are typical of the claims of other Class members.

53. Urban Interests will fairly and adequately represent the interests of the absent Class members. Plaintiff has no claims antagonistic to those of the Class.

54. Plaintiff's attorneys are experienced in the litigation of class actions and complex litigation.

55. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of potentially hundreds of FVIP owners is impracticable, the damages suffered by individual Class members may be relatively small, and the expense and burden of litigation would make it difficult if not impossible for the members of the Class to individually redress the wrongs done to them by Defendants. And because of the commonality of the predominant issues involved in the claims, defenses, and damages alleged, there will be no difficulty in maintaining this dispute as a class action.

56. There is a well-defined community of interest in the questions of law and fact involved in this matter such that a class action is clearly the superior method for the fair and efficient handling of this dispute.

## FIRST CLAIM FOR RELIEF
### (Fraud – Fluid Truck, Eberhard, and Snyder)

57.     Urban Interests incorporates the foregoing paragraphs as if fully set forth herein.

58.     Fluid Truck's decommissioning policy represented that it would "sell [the] vehicle on [the owners'] behalf" through a third-party auction service. Fluid Truck further represented that, from the sale proceeds and other amounts due, it would only deduct a decommissioning fee, the cost of any necessary repairs, and other applicable fees, and then remit the remaining proceeds to the relevant vehicle owner.

59.     Fluid Truck knew its representations about turning decommissioning sales proceeds and other amounts due over to owners were false.

60.     Fluid Truck made its decommissioning misrepresentations with the intent that Urban Interests and other Class members would rely on those misrepresentations.

61.     Urban Interests and other Class members justifiably relied on Fluid Truck's decommissioning misrepresentations.

62.     The reliance by Urban Interests and other Class members on Fluid Truck's decommissioning misrepresentations caused damages to Urban Interests and other Class members in an amount to be proven at trial.

63.     James Eberhard and Jenifer Snyder have directed, actively participated in, and cooperated in Fluid Truck's decommissioning misrepresentations, and are therefore equally liable for such misrepresentations.

## SECOND CLAIM FOR RELIEF
### (Civil Theft – All Defendants)

64. Urban Interests incorporates the foregoing paragraphs as if fully set forth herein.

65. Urban Interests and other Class members were the lawful owner of vehicles that Fluid Truck and HHK Group sold at auction, yet for which Fluid Truck and HHK Group have refused to remit the proceeds to Urban Interests and other Class members.

66. Fluid Truck and HHK Group have knowingly retained funds belonging to Urban Interests and other Class members without authorization, and has intentionally used and misappropriated Urban Interests and other Class members' funds to support its failing business—doing so in a manner that will permanently deprive Urban Interests and other Class members of their rightful benefit of those same funds.

67. As a result, Fluid Truck has committed civil theft of Urban Interests and other Class members' vehicles, and wrongfully and unlawfully retained the value of those vehicles.

68. James Eberhard and Jenifer Snyder have directed, actively participated in, and cooperated in the theft of Urban Interests and other Class members' property, and are therefore equally liable for such theft.

69. Thomas Scott Avila has approved of, sanctioned, and cooperated in the theft and conversion of Urban Interests and other Class members' property, and is therefore equally liable for such theft.

70. As a result of Defendants' theft, Urban Interests and other Class members have suffered damages in an amount to be proven at trial, as well three (3) times their actual damages, and their attorney's fees, pursuant to C.R.S. § 18-4-405.

### THIRD CLAIM FOR RELIEF
### (Conversion—All Defendants)

71. Urban Interests incorporates the foregoing paragraphs as if fully set forth herein.

72. Urban Interests and other Class members owned and had the right to possess their vehicles.

73. Fluid Truck and HHK Group intentionally and substantially interfered with Urban Interests and other Class members' ownership of their vehicles, and their right to the proceeds and other amounts due from the vehicles' sale, by refusing to return Urban Interests and other Class members' sales proceeds and other amounts due after Urban Interests and other Class members demanded the return of those funds.

74. Neither Urban Interests nor any other Class member consented to Fluid Truck and HHK Group's retention of the sales proceeds and other amounts due to Urban Interests and other Class members in connection with the sales of the vehicles.

75. James Eberhard and Jenifer Snyder have directed, actively participated in, and cooperated in the conversion of Urban Interests and other Class members' property, and are equally therefore liable for such conversion.

76. Thomas Scott Avila has approved of, sanctioned, and cooperated in the conversion of Urban Interests and other Class members' property, and is equally therefore liable for such conversion.

77. Urban Interests and other Class members have been damaged by Defendants' conversion of their money in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
**(Money Had and Received – Fluid Truck and HHK Group)**

78. Urban Interests incorporates the foregoing paragraphs as if fully set forth herein.

79. Urban Interests and other Class members provided the vehicles to Fluid Truck, with the expectation, based on Fluid Truck's representations, that Fluid Truck would prepare the vehicles for sale, sell the vehicles, and remit the proceeds to Urban Interests and other Class members.

80. Notwithstanding its representations, Fluid Truck and HHK Group have retained the proceeds from the sale of the vehicles without paying those proceeds over to Urban Interests and other Class members.

81. Fluid Truck and HHK Group's actions cover matters that are outside the scope of and arose after any written agreements.

82. Equity and good conscience demand that Fluid Truck and HHK Group pay over the proceeds from the sale of the vehicles to Urban Interests and other Class members.

## FIFTH CLAIM FOR RELIEF
### (Injunctive and Declaratory Relief – All Defendants)

83. Urban Interests incorporates the foregoing paragraphs as if fully set forth herein.

84. Urban Interests seeks a declaratory judgment to determine the rights of Plaintiff and the Class members, and to enjoin Defendants from continuing to engage in their unlawful scheme of stealing sales proceeds and related amounts that are due and payable to Plaintiff and the Class.

85. Defendants' unlawful pattern of activity as described herein is systemic and the declarations Urban Interests seeks relate wholly to Defendants' actions or omissions in their conduct toward the Class as a whole.

86. Urban Interests seeks a declaration of the following:

   a. That any use or commingling of sales proceeds and receipts from insurance claims, less decommissioning fees, the costs of any necessary repairs, and other applicable fees, for any purpose other than remitting those amounts to the vehicle owners is unlawful and constitutes theft and conversion.

87. Urban Interests seeks an order directing:

   a. That any Defendant, or any of their employees, agents, successors, or assigns, may not use sales proceeds and receipts from insurance claims, less decommissioning fees, the costs of any necessary repairs,

    and other applicable fees, for any purpose other than remitting those amounts to the vehicle owners;

  b. That any Defendant, or any of their employees, agents, successors, or assigns, may not commingle sales proceeds and receipts from insurance claims, less decommissioning fees, the costs of any necessary repairs, and other applicable fees, with any other bank accounts or funds;

  c. That Fluid Truck maintain all such sales proceeds and receipts from insurance claims, less decommissioning fees, the costs of any necessary repairs, and other applicable fees, in a bank account separate from any and all other bank accounts and funds, to be held in trust for the benefit of vehicle owners; and

  d. That Fluid Truck remit all such sales proceeds and receipts from insurance claims, less decommissioning fees, the costs of any necessary repairs, and other applicable fees, to vehicle owners within 30 days of each vehicle's sale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

A. Enter judgment in favor of Plaintiff and the Class members and against Defendants for Civil Theft, and award Plaintiff and the Class members three (3) times actual damages and attorneys' fees pursuant to C.R.S. § 18-4-404;

18

B. Enter judgment in favor of Plaintiff and the Class members and against Defendants for conversion;

C. Enter judgment in favor of Plaintiff and the Class members and against Defendants Fluid Truck, Eberhard, and Snyder for fraud;

D. Enter judgment in favor of Plaintiff and the Class members and against Defendants Fluid Truck and HHK Group for money had and received;

E. Declare the rights of the Class members and enjoin Defendants from further engaging in the above-described unlawful conduct as requested by Plaintiff herein;

F. Award Plaintiff its attorney fees, costs, and pre- and post-judgment interest to the fullest extent permitted by law; and

G. Grant such other relief as this Court deems just and proper.

Dated this 9th day of January, 2025

Respectfully submitted,

/s/ David C. Holman
David C. Holman
John K. Crisham
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, Colorado 80120
Telephone: (720) 739-2176
E-mail: Dave@crishamholman.com
E-mail: John@crishamholman.com

*Attorneys for Plaintiff Urban Interests LLC*

19

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of January, 2025, a true and correct copy of the foregoing document was filed via this Court's CM/ECF filing system and served on all counsel of record.

/s/ <u>Amanda Turney</u>