IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2811-GPG-NRN

URBAN INTERESTS LLC, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.

FLUID MARKET INC., FLUID FLEET SERVICES LLC,
HHK GROUP, LLC, JAMES EBERHARD, JENIFER SNYDER,
And THOMAS SCOTT AVILA,

    Defendants.

### DEFENDANT THOMAS SCOTT AVILA'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Defendant Thomas Scott Avila ("Defendant Avila" or "Avila"), by and through his undersigned counsel, O'HAGAN MEYER PLLC, hereby submits this Motion to Dismiss Plaintiff's[1] Amended Class Action Complaint (the "Amended Complaint"), and respectfully states as follows:

**Certification of Conferral:** Notwithstanding D.C.COLO.LCivR 7.1(b)(2), and in accordance with GPG Civ. Practice Standard 7.1B(b), Counsel for Defendant Avila conferred with Counsel for Plaintiff on the relief sought herein on January 22, 2025, via phone. Plaintiff opposes this Motion.

---

[1] Defendant Avila's reference to "Plaintiff" herein includes Urban Interests LLC and the putative class as alleged in Plaintiff's Amended Complaint (*See* ECF #33 ¶ 48). Defendant Avila does not, however, by way of this Motion or footnote, agree that a class can be certified under FED. R. CIV. P. 23.

1

#5682309v1

## INTRODUCTION

Defendants Fluid Market Inc., and Fluid Fleet Services LLC, ("Fluid Truck") provide a platform through which commercial vehicles can be rented. Fluid Truck also offers a product called the Fluid Vehicle Investor Platform ("FVIP"), which allows owners of fleet vehicles to rent them out via Fluid Truck's platform. Vehicles in the FVIP program can be "decommissioned" at the owner's election and sold by Fluid Truck at auction. When a vehicle is sold, Fluid Truck remits any net proceeds to the vehicle's owner.

Plaintiff alleges (individually and on behalf of a class of FVIP owners) that Fluid Truck and/or HHK Group, LLC, the alleged majority owner of Fluid Truck, stole more than $11 million in sales proceeds for their own use. The Amended Complaint points the finger exclusively at these entities and asserts they alone control and/or possess the money in question.

What the Amended Complaint does not allege is that Avila – who was appointed as the interim CEO *after* all sales had been completed – had anything to do with the alleged theft. Plaintiff also does not allege Avila has dominion or control over any of the proceeds at issue (now or in the past), or that he possesses any such proceeds. Plaintiff tends to treat Avila as an afterthought, making sporadic allegations that he too is liable for civil theft and conversion without more. But Plaintiff's sparse allegations and unfounded conclusions miss the mark as a matter of law. Plaintiff has not asserted any basis for Avila to be held liable in this matter because no such basis exists.

Avila appears to have been unjustly swept up in Plaintiff's scattershot lawsuit against Fluid Truck and others without any factual or legal basis. Accordingly, and as fully set forth below, Avila's Motion to Dismiss should be granted.

#5682309v1

## RELEVANT BACKGROUND

**A. Relevant Parties and Vehicle Sales Though the FVIP Program.**

On October 10, 2024, Plaintiff filed its original Class Action Complaint against Fluid Truck; their current board members James Eberhard and Jenifer Snyder; and Fluid Truck's interim chief executive officer ("CEO") Thomas Scott Avila (*See* ECF #1). On January 9, 2025, Plaintiff filed its Amended Complaint (*See* ECF #33). The Amended Complaint added certain allegations and added a new defendant: HHK Group, LLC ("HHK Group") (*See* ECF #32-1) (redline changes). Plaintiff alleges HHK Group "was the majority equity owner of Fluid Truck, and is fully owned and controlled by Defendants Eberhard and Snyder." (ECF #33, ¶¶ 5, 22).

Fluid Truck is an on-demand vehicle rental platform (ECF #33, ¶ 12). Fluid Truck has a Fluid Vehicle Investor Platform ("FVIP") that allows third parties to purchase fleets of vehicles and then rent them out via Fluid Truck's platform (*Id.*, ¶ 13). In 2020, Plaintiff began participating in the FVIP program (*Id.*, ¶ 15). Plaintiff allegedly purchased 47 vehicles through the FVIP program and rented them out through Fluid Truck's rental platform (*Id.*, ¶ 16).

"As part of the FVIP program, Fluid Truck allows vehicle owners to 'decommission' their vehicles from the Fluid Truck platform under certain circumstances" (*Id.*, ¶ 18). Plaintiff asserts that pursuant to Fluid Truck's alleged "decommissioning policy", <u>Fluid Truck</u> would sell an owner's vehicle; <u>Fluid Truck</u> would receive the "sale proceeds"; and, after deducting any applicable fees, <u>Fluid Truck</u> would then "turn the proceeds over to the vehicle owner." (*Id.*, ¶ 19). Plaintiff alleges that at unspecified times prior to 2024, Fluid Truck decommissioned and sold 29 of Plaintiff's vehicles and properly remitted the net sale proceeds to Plaintiff (*Id.*, ¶ 20).

Plaintiff also alleges that from 2022 through July 2024, Defendants Eberhard and Snyder

3

#5682309v1

"routed vehicle decommissioning activities through Defendant HHK Group." (*Id.*, ¶¶ 1, 21). In addition to Fluid Truck, Plaintiff also alleges that when "FVIP owners' vehicles were sold, HHK Group would receive the sales proceeds from the third-party auction service." (*Id.*, ¶ 23).

Between February and May 2024, Plaintiff alleges that it authorized the sale of and "Fluid Truck in fact sold" 14 of Plaintiff's remaining vehicles in the FVIP program (ECF #33, ¶¶ 26, 29, 31). The final sale occurred on May 24, 2024 (*Id.*, ¶ 31). Importantly, Plaintiff <u>does not allege</u> that any vehicles it owned (or those owned by other FVIP owners) were sold by Fluid Truck after May 24, 2024 (*See generally* ECF #33). Two months *after* the last vehicle was sold, Fluid Truck's board of directors appointed Defendant Avila as the interim CEO (*Id.*, ¶ 36).

### B. Plaintiff's Allegations as to the Retention of FVIP Sale Proceeds.

Plaintiff alleges that after its 14 vehicles were sold in 2024, "<u>Fluid Truck and HHK Group</u> refused to remit the proceeds of those vehicle sales" to Plaintiff (ECF #33, ¶ 30). Plaintiff further alleges that "<u>Fluid Truck and HHK Group</u>" owe Plaintiff "gross proceeds" from the sale of these vehicles totaling $415,325, or "<u>Fluid Truck</u> owes $178,216 … for net sales and claims proceeds" to Plaintiff for the sold vehicles (*Id.*, ¶¶ 31-32).

Plaintiff goes on to assert "<u>Fluid Truck</u> … is intentionally keeping more than $11 million in stolen funds owed to Plaintiff and the class as sales and claims proceeds" (*id.*, ¶ 33), and chose to "pocket the money" in question (*Id.*, ¶ 1). Plaintiff also alleges "<u>Fluid Truck and HHK Group</u> have stolen from the FVIP vehicle owners to fund Fluid Truck's ongoing operations" (*Id.*, ¶ 34). In fact, Plaintiff goes on to allege numerous times that Fluid Truck and/or HHK Group "retained", "refused to pay", "refused to remit", "refused to return", and/or "misappropriated" the sale proceeds/other amounts allegedly owed to Plaintiff and the class (*Id.*, ¶¶ 41, 52, 65-66, 73, 80).

4

#5682309v1

As a result, Plaintiff explicitly asserts: "By keeping the stolen sales proceeds without authorization, <u>Fluid Truck and HHK Group's</u> actions constitute civil theft and conversion of Urban Interests' property, as well as unjust enrichment." (*Id.*, ¶ 43; *see also* ¶ 67). Therefore: "Equity and good conscience demand that <u>Fluid Truck and HHK Group</u> pay over the proceeds from the sale of the vehicles to Urban Interests and other Class members." (*Id.*, ¶ 82).

Regardless of the amounts allegedly owed, or whether the amount is owed by Fluid Truck or HHK Group, Plaintiff's Amended Complaint makes clear that Avila: (i) was <u>not</u> involved in the sale of any vehicles; (ii) he became the interim CEO <u>after</u> all vehicles were sold and proceeds obtained; (iii) he <u>does not</u> possess, and never possessed, any of the money allegedly owed to Plaintiff or the class; (iv) he has <u>no</u> dominion or control, and never had dominion or control, over any of the proceeds allegedly owed to Plaintiff or the class; and (v) he had <u>no</u> knowledge that any proceeds allegedly owed to Plaintiff or the class were wrongfully withheld (*See* ECF #33). Instead, the sparse allegations against Avila merely allege:

- **Paragraph 37**: Avila changed the name of a Fluid Truck bank account, and later directed the use of that account, which allegedly contained $5 million of FVIP sales and insurance proceeds. However, Plaintiff <u>does not</u> allege that: (i) any of the money in the account was Plaintiff's or any member in the putative class; (ii) any of the money in the account was wrongfully retained or possessed by Fluid Truck; or (iii) Avila had knowledge of the source of the funds in the account.

- **Paragraph 38**: Avila sent an email in August 2024 that provided an update on the financial status of Fluid Truck at that time. However, nothing in Avila's email infers or can be reasonably construed as evidencing he had knowledge of any wrongfully retained proceeds or that he had dominion/control of any money possessed by Fluid Truck.

- **Paragraphs 39, 45, 69, and 76** are unfounded conclusions that Avila "approved" the continued use or scheme to keep FVIP proceeds and/or he sanctioned or cooperated in the theft or conversion of the proceeds. However, Plaintiff alleges no factual basis to support these assertions, thereby rending them conclusory allegations without any supporting factual averments.

#5682309v1

Accordingly, Plaintiff does not allege – and there are no factual allegations to infer – that Avila had knowledge of or participated in any wrongful conduct with respect to this matter. Therefore, for the reasons set forth below, Avila's Motion to Dismiss should be granted.

## STANDARD OF REVIEW

### 1. *Dismissal Under Rule 12(b)(6).*

"'Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face.'" *Cline v. Clinical Perfusion Sys.*, 92 F.4th 926, 930 (10th Cir. 2024). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, at 678.

But, courts "need not accept conclusory allegations without supporting factual averments." *Church v. Church*, 2023 LEXIS 91044, at *7–8 (D. Colo. 2023) (citing *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998)) (Neureiter, M.J.).[2] "'The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, at 678). "'Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, at 678).

Further, to accept a plaintiff's "allegations as true, they must be *well-pleaded* allegations." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (emphasis in original). Such a

---

[2] All unpublished cases are attached hereto as **Exhibit A**.

6

#5682309v1

determination "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, at 679). "The court must determine whether the plaintiff has pleaded 'enough facts to state a claim to relief that is plausible on its face,' not just 'conceivable.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Id.* (quoting *Iqbal*, at 679).

### 2. *Substantive Law Under CAFA.*[3]

"'In enacting CAFA, Congress . . . expand[ed] federal diversity jurisdiction over interstate class actions.'" *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017) (alteration added). Thus, in CAFA cases, like traditional diversity cases, "the substantive law of the forum state governs the analysis of the underlying claims" *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Thus, Colorado substantive law applies to Plaintiff's claims.

## ARGUMENT

**I. The Second Claim for Relief (Civil Theft) Should be Dismissed as to Defendant Avila Because Plaintiff Fails to Allege a Plausible Claim for Relief.**

"A person commits civil theft when he (1) knowingly obtained, retained, or exercised control over 'anything of value of another without authorization or by threat or deception'; and (2) acted intentionally or knowingly in ways that deprived the plaintiff of the thing of value permanently." *Chavez v. Chavez-Krumland (In re Estate of Chavez)*, 2022 COA 89, ¶ 47. "[C]ivil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property." *Id.* (quoting *Scott v. Scott*, 2018 COA 25, ¶ 26).

---

[3] Plaintiff invokes this Court's original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (*See* ECF #33, ¶ 9).

Additionally, if the property forming the basis for a civil theft claim is money, and the defendant does not have "'possession of the money,' <u>the plaintiff cannot recover under Colo. Rev. Stat. § 18-4-405 because that statute only permits recovery where the other person still has possession of the stolen property</u>." *Goode v. Ramsaur*, 2024 LEXIS 147009, at *49 (D. Colo. 2024) (quoting *Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996)).

As set forth above, Plaintiff makes no allegation that Avila (knowingly or otherwise) obtained, retained, or exercised control over any proceeds (now or in the past) that were allegedly owed to Plaintiff or a member of the class. Instead, those allegations are asserted exclusively against Fluid Truck and HHK Group. Plaintiff also makes no allegation that Avila took any action with the specific intent to permanently deprive Plaintiff or a class member of any proceeds.

What's more, civil theft claims are wholly a product of statute. *See* C.R.S. § 18-4-405. The civil theft statute explicitly limits such claims to be brought only against the "taker" or "possessor" of property, but it does not permit a claim against someone who allegedly approved, sanctioned, or cooperated in the taking or possession of property held by a third party. *See* C.R.S. § 18-4-405; *Estate of Brookoff v. Clark*, 2018 CO 80, ¶ 6 (affirming that Colorado courts "we may not write special limitations into a statute as '[t]hat is a function of the legislature and not the courts.'"); *People v. Diaz*, 2015 CO 28, ¶ 12 ("'We do not add words to the statute or subtract words from it.'"). Thus, Plaintiff's theory for holding Avila responsible for its claim cannot succeed as a matter of law.

Accordingly, there is no basis to support a claim for civil theft against Avila and Avila's Motion to Dismiss as to the Second Claim for Relief should be granted.

8

**II.     The Third Claim for Relief (Conversion) Should be Dismissed as to Defendant Avila Because Plaintiff Fails to Allege a Plausible Claim for Relief.**

"Common-law conversion is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.'" *Itin v. Bertrand T. Ungar, P.C.*, 17 P.3d 129, 135 n.10 (Colo. 2000) (quoting *Byron v. York Inv. Co*, 296 P.2d 742, 745 (Colo. 1956). "Conversion takes place when the converter takes dominion over the property at issue." *Scott v. Scott*, 2018 COA 25, ¶ 33. To state a claim for conversion, Plaintiff must assert: (1) Avila "exercised dominion or control over property"; (2) "that property belong to" Plaintiff; (3) Avila's "exercise of control was unauthorized; (4) Plaintiff "demanded return of the property"; and (5) Avila "refused to return it." *Id*, at ¶ 31 (quoting *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)).

Plaintiff's claim for conversion fails for two key reasons as to Avila. *First*, as discussed above, Plaintiff makes no allegation that Avila has dominion or ownership over any of Plaintiff or the class's property at issue. Those allegations are asserted only against Fluid Truck and HHK Group. *Second*, Plaintiff makes no allegation that it demanded the return of any property from Avila or that he refused to return said property (*See* ECF #33). <u>The latter is unsurprising because it would be illogical for Plaintiff to demand Avila return property that it does not allege he possess or controls</u>. Instead, Plaintiff alleges only that it made such a demand to Fluid Truck and HHK Group (ECF #33, ¶ 73). The reason being: these are the only defendants Plaintiff alleges possess or control the proceeds at issue in this case (*See, supra*).

Accordingly, there is no basis to support a claim for conversion against Avila and Avila's Motion to Dismiss as to the Third Claim for Relief should be granted.

9

#5682309v1

**III.     The Fifth Claim for Relief (Injunctive and Declaratory Relief) Should be Dismissed as to Defendant Avila Because No Substantive Claim Exists to Support Such Relief.**

Finally, Plaintiff's Fifth Claim for Relief seeks injunctive and declaratory relief as to each defendant (*See* ECF #33, pp. 17-18). The relief sought also fails as to Avila.

Initially, Colorado law holds that "an injunction is a *remedy*, not an independent cause of action." *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶¶ 5, 217; *see also Foothills Park & Rec. Dist. V. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2024 COA 62, ¶ 59 (same). This Court agrees and holds the same. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018) ("Injunctive relief is not a separate cause of action; rather it is one form of relief for the other legal violations alleged."). Accordingly, if the Court agrees that Plaintiff's substantive claims against Avila fail, Plaintiff's request for injunctive relief against Avila must also fail.

As for declaratory relief, Plaintiff has failed to specifically identify whether it is seeking such relief under Colorado's Uniform Declaratory Judgment Law ("CUDJL"), C.R.S. 13-51-106, or the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 (*See* ECF #33, pp. 17-18). That is immaterial, however, because the relief fails under both theories.

The "CUDJL provides for a *remedy*", not a substantive claim. *Air Sols., Inc. v. Spivey*, 2023 COA 14, ¶ 95. Similarly, the DJA "does not create substantive rights; it merely creates a procedure by which parties may obtain relief under some other substantive theory." *Brown v. Fed. Bureau of Prisons*, 2012 LEXIS 183488, at *30 (D. Colo. 2012) (citing *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)); *see also Long v. Wells Fargo Bank, N.A.*, 670 Fed. Appx. 670, 671 (10th Cir. 2016) ("Because Mr. Long's substantive claims have failed, his request for declaratory relief in relation to those claims is not viable.").

10

Accordingly, if the Court agrees that Plaintiff's substantive claims against Avila fail, Plaintiff's request for declaratory relief against Avila must also fail.

### IV. Leave to Further Amend the Amended Complaint Should be Denied as Futile.

Under Rule 15(a)(2), leave to amend shall be freely granted when justice so requires. *Church*, 2023 LEXIS 91044, at *6 (Neureiter, M.J.). However, leave to amend may be denied due to "futility of the amendment." *Id.* (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).'" *Id.* (quoting *Dorough v. Am. Family Mut. Ins. Co.*, 2016 LEXIS 49086, at *2 (D. Colo. Apr. 11, 2016)).

If the Court agrees that Plaintiff's allegations against Avila fail to assert a viable claim for relief, the Court should deny any further requests to amend the Complaint. Plaintiff's claims do not fail for lack of detail or specificity; it is because there is no factual or legal basis to hold Avila liable for the harm Plaintiff is alleging. If facts or circumstances existed to hold Avila liable, the Court should assume Plaintiff would have included such allegations in its original or its Amended Complaint. The absence of such allegations after two bites at the apple shows that no such allegations exist. Giving Plaintiff a third opportunity would not be a charm, but would be futile.

What's more, now that Avila has laid out all the factual and legal deficiencies with Plaintiff's claims against him, giving Plaintiff further leave to amend its Complaint would merely invite Plaintiff to invent allegations, or plead some fiction "upon information and belief", solely for the purpose of surviving another Rule 12 motion. The Court should preclude any such attempt and, like at least one of its sister courts held, deny further leave to amend as futile. *See Santana v.*

11

#5682309v1

*Experian Info. Sols., Inc.*, 2021 LEXIS 261063, at *10 (N.D. Okla. 2021) (denying leave to amend a second time as futile as "it is not possible to conceive of amendments to Plaintiff's Amended Complaint that would cure the identified defects, as an entire set of factual allegations would have to be invented to state a claim").

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant Thomas Scott Avila respectfully requests this Court GRANT his Motion to Dismiss Plaintiff's Amended Class Action Complaint, dismiss with prejudice Plaintiff's Second, Third, and Fifth Claims for Relief against Avila, and grant him any and all such further relief as this Court deems just and appropriate.

Respectfully submitted,

O'HAGAN MEYER, PLLC

By:   */s/ William R. Thomas*
William R. Thomas, Esq.
Brian R. DeMocker, Esq.
Attorneys for Defendant Thomas Scott Avila
1331 17th Street, Suite 350
Denver, CO  80202
303-652-5881
wthomas@ohaganmeyer.com

Dated:   January 23, 2025          bdemocker@ohaganmeyer.com

12

#5682309v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2025, a true and correct copy of **DEFENDANT THOMAS SCOTT AVILA'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** was filed and served electronically via the CM/ECF system which will send notification of the filing to the following:

David C. Holman, Esq.
John K. Crisham, Esq.
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
*Attorneys for Plaintiff Urban Interests LLC*

John C. Hawk, IV, Esq.
WOMBLE BOND DICKINSON LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com
*Attorney for Defendants Fluid Market, Inc.
and Fluid Fleet Services LLC*

Chad T. Nitta, Esq.
Heather N. Tilley, Esq.
Shelby L. Morbach, Esq.
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Chad.Nitta@kutakrock.com
Shelby.Morbach@kutakrock.com
Heather.tilley@kutakrock.com
*Attorney for Defendants James Eberhard
and Jenifer Snyder*

                                                  *s/ Ramona Raub*
                                                  Ramona Raub, Legal Assistant

#5682309v1