## *Brown v. Fed. Bureau of Prisons*

United States District Court for the District of Colorado

December 7, 2012, Decided; December 7, 2012, Filed

Civil Action No. 11-cv-03191-WYD-BNB

**Reporter**

2012 U.S. Dist. LEXIS 183488 *; 2012 WL 6774822

TIMOTHY DEMITRI BROWN, Plaintiff, v. FEDERAL BUREAU OF PRISONS, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES OF AMERICA, and JOHN AND JANE DOES 1-20, Defendants.

**Subsequent History:** Affirmed by, Adopted by, Complaint dismissed at, in part, Motion denied by, in part *Brown v. Fed. Bureau of Prisons, 2013 U.S. Dist. LEXIS 1394 (D. Colo., Jan. 4, 2013)*

Motion denied by *Brown v. Fed. Bureau of Prisons, 2013 U.S. Dist. LEXIS 104481 (D. Colo., July 25, 2013)*

Magistrate's recommendation at *Brown v. Fed. Bureau of Prisons, 2013 U.S. Dist. LEXIS 184391 (D. Colo., Sept. 24, 2013)*

**Counsel: [*1]** Timothy Demitri Brown, Plaintiff, Pro se, FLORENCE, CO.

For Federal Bureau of Prisons, United States Department of Justice, USA (actually named as United States of America), John and Jane Does 1-20, Defendants: Timothy Bart Jafek, U.S. Attorney's Office-Denver, Denver, CO.

**Judges:** Boyd N. Boland, United States Magistrate Judge.

**Opinion by:** Boyd N. Boland

# Opinion

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter arises on the defendants' **Motion to Dismiss Plaintiff's Complaint Pursuant to *Fed. R. Civ. P. 12(b)(1)*, *12(b)(3)*, and *12(b)(6)*** [Doc. #26, filed 05/01/2012) (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*. I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*.

In ruling on a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. **[*2]** *City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S. Ct. 2034, 90 L. Ed. 2d 480 (1986)*; *Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)*. The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. *Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007)*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*, overruled on other grounds by *Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)*.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under *Fed.R.Civ.P. 12(b)(1)* is described as follows:

> Generally, *Rule 12(b)(1)* motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. **[*3]** When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under *Rule 12(b)(1)*. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a *Rule 56* motion.

> However, a court is required to convert a *Rule 12(b)(1)* motion to dismiss into a *Rule 12(b)(6)* motion or a *Rule 56* summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

*Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)* (citations omitted).


## II. BACKGROUND

The plaintiff is currently incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADX"). He filed his Prisoner Complaint [Doc. #3] (the "Complaint") **[*4]** on December 8, 2011.[1] The Complaint is not a model of clarity. It contains many allegations but lacks specific facts and does not state the causes of action with clarity.

The Complaint contains the following allegations:


## Claim One

1. The plaintiff was "forced into unwarranted psychological treatment" in the Special Management Unit program ("SMU").[2] *Complaint*, ¶ 1.

2. The BOP has no data to support its conclusion that the program improves safety. Id. at ¶ 2.

3. The program has increased violence in federal and state prisons nationwide. Id. at ¶ 3.

4. SMUs were knowingly implemented in violation of the Administrative Procedure Act ("APA"). Id. at ¶ **[*5]** 4.

---

[1] The plaintiff filed a handwritten Complaint on the court's form [Doc. #1] and a typewritten Complaint that is not on the court's form [Doc. #3]. The Complaints are identical in substance. All references in the defendants' Motion are to the typewritten Complaint. For purposes of uniformity, I also refer to the typewritten Complaint in this Recommendation.

[2] The defendants assert that the plaintiff was placed in the SMU program at the Federal Correctional Institution in Talladega, Alabama. *Motion*, p. 2. The plaintiff does not dispute this assertion.

2012 U.S. Dist. LEXIS 183488, *5

5. SMUs authorize involuntary medical and psychological treatment, the use of excessive force, and the writing of false reports. Id. at ¶¶ 5-6, 9.

6. The plaintiff suffered physical damage from excessive force on August 25, 2009; October 15, 2009; and January 20, 2011. His injuries include water in his lungs from water boarding, a concussion from being shot in the head, and bruises from being beaten. Id. at ¶ 7. False reports were written against him on June 16, 2009; August 25, 2009; October 15, 2009; November 19, 2009; and January 20, 2011. Id. at ¶ 10.

7. SMUs authorize housing mentally ill and non-mentally ill prisoners together. Id. at ¶ 12.

8. SMUs authorize the torture of prisoners for acts which occurred before its implementation in violation of the *ex post facto* clause. The plaintiff was "forced into SMU based on [an] incident that occurred before the November 2008 implementation of the provision." Id. at ¶ 13.

9. SMUs illegally authorize retaliation against prisoners for exercising their rights. Id. at ¶ 14. The plaintiff was transferred to ADX, and his telephone privileges denied, in retaliation for refusing unwarranted and involuntary psychological treatment and seeking redress  [*6] for being forced into treatment. Id. at ¶¶ 15-16.

10. SMUs were implemented in violation of the Congressional Review Act because the BOP never submitted a report to Congress as required.[3] Id. at ¶ 17.

11. The plaintiff asserts a "[t]ort claim against the BOP, DOJ and USA" for being forced into SMU. Id. at ¶ 1.


## Claim Two

12. The plaintiff was unjustly deprived of rental property due to illegal mail tampering authorized by SMU. Id. at ¶ 22. The BOP refused to deliver to the plaintiff a notice from the Ninth Judicial District Court in Louisiana regarding court action related to the property. Id. at ¶¶ 23-24. The court ruled against the plaintiff for failure to respond to the notice. Id. at ¶ 26. The plaintiff "lost the property in the judgment." Id.

13. "Mail and content were stolen and unlawfully rejected on numerous occasions." Id. at ¶ 27.

14. The plaintiff asserts a "[t]ort claim against the BOP, DOJ and USA due to the illegal mail tampering authorize[d]  [*7] by SMU." Id. at ¶ 22. In addition, the actions alleged in Claim Two violate the plaintiff's rights "to property, access to court and free speech." Id. at ¶ 31.


## Claim Three

15. On March 13, 2011, the plaintiff requested copies of reports that were required to be submitted under the Congressional Review Act. Id. at ¶ 34. The request was denied "without reason." Id. The plaintiff appealed the denial. Id.

16. On March 14, 2011, the plaintiff requested copies of executive decisions 01-12-33; 02-03-01; and 02-09-34 pursuant to the Freedom of Information Act ("FOIA"). Id. at ¶¶ 32-33. The request was denied "without reason." Id. at ¶ 33. The plaintiff appealed the denial. Id.

17. On May 9, 2009, the plaintiff requested copies of administrative records for the SMU program statement 5217.01. Id. at ¶ 35. The request was denied "without reason." Id. The plaintiff appealed the denial. Id.

---

[3] The plaintiff states that he is not asserting a cause of action under the Congressional Review Act; he "only cited the violation of it as a supporting fact." Plaintiff's Reply to Defendants' Motion to Dismiss [Doc. #30] (the "Response"), pp. 12-13.

2012 U.S. Dist. LEXIS 183488, *7

18. On June 17, 2011, the plaintiff requested a "copy of items seized from his mail on June 17, 2011." Id. at ¶ 36. The request was denied on the basis that there was no record of the items, even though an incident report was completed regarding the seizure. Id.

19. The plaintiff requested copies of records pertaining **[*8]** to "the takeover of the SMU due to human rights abuses on January 25, 2010, and July 23, 2010." Id. at ¶ 37. The request was denied "without reason," and the plaintiff appealed the denial. Id.

20. On August 24, 2010, the plaintiff requested copies of "telephone and email contract." Id. at ¶ 38. The request was denied "without reason," and the plaintiff appealed the denial. Id.

21. The plaintiff requested copies of "use of force records" on December 19, 2009; March 3, 2010; and March 16, 2011. Partial records were released. Id. The plaintiff appealed the denial of the non-released records. Id.

22. The plaintiff requested a copy of an "Inmate Trust Fund Audit" on December 19, 2009. Id. at ¶ 40. The request was denied "without reason," and the plaintiff appealed the denial. Id.

23. The plaintiff requested copies of unclaimed trust funds and uncashed checks on December 21, 2010, and April 15, 2011. Id. at ¶ 41. The request was denied "without reason," and the plaintiff appealed the denial. Id.

24. The plaintiff submitted a grievance to the BOP and the Department of Justice ("DOJ") concerning embezzlement of trust and commissary funds on April 15, 2011. Id. at ¶ 42. The grievance was ignored. **[*9]** Id.

25. The BOP has denied the requested records in violation of FOIA. Id. at ¶ 32.


**Claim Four**

26. The BOP and the DOJ's exemptions from the Privacy Act, *28 C.F.R. §§ 16.96 et seq.*, are void for vagueness because they encourage arbitrary application, and are unconstitutional as applied "and/or violate the Administrative Procedures Act." Id. at ¶ 45. The BOP is not exempt from sections (e)(6) and (7). Id. at ¶ 53. The exemption under section (i)(2) "exempting section (g) deprives the plaintiff of any remedy to redress the clear violations of the Act." Id.

27. DOJ employees knowingly started a false rumor that the plaintiff threatened Fifth Circuit Court of Appeals Judge Carolyn King. Id. at ¶ 47. DOJ employees disseminated this rumor to Judge King and others "in a malicious, defamatory, libel and slanderous manner to cause prejudice against the plaintiff." Id. at ¶ 48. The false information caused Judge King and others to "disregard and violate clear law." Id. at ¶ 49. Judge King "denied plaintiff relief of the Supreme Court's summary reversal of the case in contradiction of clearly established law." Id. at ¶ 50.

28. A Tucson District Court Judge dismissed the plaintiff's civil rights complaint **[*10]** "under knowingly false pretense [sic] of failure to pay court fee." Id. at ¶ 51. The judge later admitted that the plaintiff had paid the fee. Id.

29. The DOJ employees "have actual knowledge that this information is false as their records clearly state[] such." Id. at ¶ 52. The DOJ falsely claims that the records were created based on a book written by the plaintiff "which DOJ employees stole and refused to return." Id. at ¶ 55. The DOJ has "refused to expunge and/or correct this knowingly false information." Id. at ¶ 60.

30. The defendants' actions violated the plaintiff's right "to privacy and property; not to be defamed; to impartial and unbias[ed] adjudication; access to court; free speech; to life and liberty; not to be retaliated against for exercising my rights." Id. at ¶ 62.


**Claim Five**

2012 U.S. Dist. LEXIS 183488, *10

31. The DOJ employees have disseminated and continue to disseminate the false information described in Claim Four. Id. at ¶ 63. Their actions constitute state law claims of defamation, libel, and slander. Id. Their actions violate the plaintiff's right "to privacy; not to be defamed; to impartial and unbias[ed] adjudication; to access to court; to life and liberty; not to be retaliated against for  **[*11]** exercising my rights." Id. at ¶ 64.

## Claim Six

32. The "DOJ employees who stole and refused to return plaintiff's book and mail in claims II and IV" committed theft and "fraudulent concealment of plaintiff's property" under state law. Id. at ¶ 65. They also violated the plaintiff's rights "to property and pursuit of happiness; to free speech; to access to court." Id. at ¶ 66.

## Claim Seven

33. The acts described in all of the previous allegations "constitute a criminal conspiracy in violation of _18 U.S.C. §§ 241 et seq._ and _42 U.S.C. § § 1985_ and _1986_."[4] Id. at ¶ 67.

34. "The OIG refuses to investigate criminal complaint submitted to them, which are referred back to OIA." Id. at ¶ 68. "P.S. 1210.24 section (6) of the OIA is suppose[d] to ensure to report such matters to the OIG, which does not happen." Id. at ¶ 69. "The USAO refuses to prosecute criminal complaints submitted to them." Id. at ¶ 70.

35. DOJ FOIA staff assisted in the conspiracy by denying requests for records under false pretenses. Id. at ¶ 71.

In addition to these allegations, the plaintiff states that "[t]he matters herein  **[*12]** involve violations of federal provision _5 U.S.C. §§ 552_, _552a_, _553_, _701_, _801, et seq._; _18 U.S.C. § § 241 et seq._; _28 U.S.C. §§ 1331_, _1343_, _1346_, _1367_, _1651_, _2201_, _2202_, _2241_ and _2671_; _42 U.S.C. § § 1985_ and _1986_; Bivens; _Public Law 89-554_ et al." Id. at p. 1. The plaintiff requests monetary, injunctive, and declaratory relief. Id. at ¶¶ 79-97.

I liberally construe the plaintiff's claims as follows:[5]

## Claim One Against the BOP, DOJ, and USA

1. The plaintiff's placement in the SMU constitutes a violation of the _ex post facto_ clause;

2. The plaintiff's placement in unwarranted psychological treatment in the SMU constitutes a state tort;

3. The SMU program is unconstitutional;

4. The SMU program was implemented in violation of the APA;

5. The plaintiff was transferred to ADX in retaliation for exercising his constitutional right to seek redress for  **[*13]** illegal actions taken against him in the SMU; and

6. Excessive force was used on the plaintiff in the SMU in violation of the _Eighth Amendment_.

## Claim Two Against the BOP, DOJ, and USA

---

[4] The plaintiff states that he is not asserting a cause of action under _18 U.S.C. § 241_. _Response_, p. 12.

[5] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See _Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)_ (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

The defendants improperly rejected and confiscated the plaintiff's mail in violation of state tort law and the plaintiff's constitutional right to property, access to the court, and free speech.

## Claim Three Against the BOP

The BOP denied the plaintiff's requests for information in violation of FOIA.

## Claim Four Against DOJ Employees John and Jane Does

1. Certain exemptions to the Privacy Act are unconstitutionally vague;

2. DOJ employees disseminated false information about the plaintiff to a Fifth Circuit Court of Appeals judge and others in violation of state tort law; and

3. DOJ employees stole the plaintiff's property and disseminated the false information in violation of his constitutional rights to access the court, free speech, and due process rights.

## Claim Five Against DOJ Employees John and Jane Does

The DOJ employees' dissemination of false information about the plaintiff constitutes the state law torts of defamation, libel, and slander and is in violation of the plaintiff's constitutional rights to privacy, **[*14]** to access the court, and due process.

## Claim Six Against DOJ Employees John and Jane Does

1. The DOJ employees stole the plaintiff's book and his mail in violation of the plaintiff's constitutional rights to due process, free speech, and access to the courts; and

2. These actions constitute the state law torts of theft and fraudulent concealment of property.

## Claim Seven Against All Defendants

All of the above-described acts constitute a conspiracy in violation of *42 U.S.C. §§ 1985* and *1986*.

## III. ANALYSIS

## A. Claim One: Federal Tort Claims Act ("FTCA")

The defendants assert that the court lacks subject matter jurisdiction over Claim One insofar as it is brought under the Federal Tort Claims Act ("FTCA") because the claim was not filed in this court within six months of final agency denial of the underlying administrative claim. *Motion*, p. 5. This is a factual challenge to the Complaint. Therefore, I may not presume the truthfulness of the Complaint's factual allegations, and I have wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Holt, 46 F.3d at 1003*.

In Claim One, the plaintiff states that he is asserting a "[t]ort claim against the BOP, DOJ and **[*15]** USA" for being forced into unwarranted psychological treatment in the SMU. *Complaint*, ¶ 1. On December 17, 2010, the plaintiff filed an administrative tort claim which states that he has been held in extended isolation for more than two years

and, as a result, has suffered mental, emotional, and physical deterioration. *Motion*, Ex. 1, ¶ 6; Ex.1-E. The plaintiff's administrative claim was denied in a certified letter dated May 23, 2011. Id. at Ex. 1, ¶ 6; Ex. 1-F.

A tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. *28 U.S.C. § 2401(b)*. The defendants argue the six month deadline expired on November 23, 2011, and that the claim is barred because the Complaint was not filed until December 8, 2011.

The plaintiff asserts that he executed and delivered the Complaint to BOP officials on November 13, 2011, and it should be deemed filed on that date. *Response*, p. 4. Under the mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as **[*16]** having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." Id. at 1165. However, the inmate must establish actual use of the prison's internal mail system in order to be accorded the benefits of the mailbox rule. Id.

The plaintiff has filed a declaration wherein he states under penalty of perjury that on November 13, 2011, he executed and delivered the Complaint with postage pre-paid to ADX prison officials for mailing to the court. *Plaintiff's Reply* . . . . [Doc. #36], p. 6. Accordingly, the defendants' Motion should be denied insofar as it seeks dismissal of the FTCA claim asserted in Claim One.


**B. Claims Four, Five, and Six: State Law Tort Claims**

Claim Four alleges that DOJ employees disseminated false information to a Fifth Circuit Court of Appeals Judge and others "in a malicious, defamatory, libel and slanderous manner . . . ." and stole his book. *Complaint*, ¶¶ 48, 55. Claim Five asserts "[s]tate law claims of defamation, libel and slander against the DOJ employees (names unknown, John and Jane Does) who have and continue to disseminate the knowingly false information in claim IV." Id. at ¶ 63. Claim Six alleges state law tort claims against **[*17]** the DOJ employees for stealing his book and his mail. Id. at ¶ 65.

The defendants assert that these tort claims are barred because the plaintiff did not submit administrative tort claims with the appropriate federal agency prior to asserting the tort claims in this court. *Motion*, pp. 5-6; Ex. 1, ¶¶ 5-7; Ex. 1-C (seeking compensation for an alleged unlawful use of force and broken headphones); Ex. 1-E (seeking compensation for time spent in the SMU); Ex. 1-G (seeking compensation for real property lost as a result of alleged interference with the plaintiff's mail). This is a factual challenge to the Complaint.

The plaintiff does not provide any evidence to show that he submitted an administrative claim to the appropriate federal agency prior to asserting these tort claims here. Instead, he argues that he does not have to file an administrative claim because the tort claims are not asserted against the United States or its agencies; they are asserted against individuals. *Response*, pp. 4-5. However, the FTCA provides the exclusive remedy for tort claims asserted against a Government employee acting with the scope of his or her employment. *28 U.S.C. § 2679(b)(1)*.[6]

The plaintiff further argues that he exhausted his administrative remedies as to these claims "by filing Privacy Act Corrections." *Response*, p. 5. He cites to his own Exhibit E in support of his argument. Id. Exhibit E contains two letters from the Office of Privacy and Civil Liberties. The letters deny the plaintiff's requests for correction of certain records under the Privacy Act.

In order to maintain a claim under the FTCA, a plaintiff must comply with several strictly construed prerequisites to suit. See *United States v. Kubrick, 444 U.S. 111, 117-18, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)* (stating that "the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a

---

[6] The plaintiff also argues **[*18]** that the Doe defendants were not acting within the scope of their employment, but he does not allege any specific facts or provide any evidence to support his argument. *Plaintiff's Motion to File Surreply* . . . . [Doc. #32] (the "Surreply"), pp. 1-3.

condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended"). Tort claims against the United States must be "presented in writing to the appropriate Federal agency within two years after such **[*19]** claim accrues" or the claim "shall be forever barred." *28 U.S.C. § 2401(b)*. "Exhaustion of administrative claims is a jurisdictional prerequisite to asserting claims under the FTCA." *Pipkin v. United States Postal Service, 951 F.2d 272, 273 (10th Cir. 1991)*. The plaintiff has the burden to prove jurisdiction in the face of a challenge under *Rule 12(b)(1), Fed. R. Civ. P. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)*.

The letters do not demonstrate that the plaintiff provided proper notice of his tort claims against the DOJ employees. The defendants' Motion should be granted insofar as it seeks dismissal of the state law tort claims asserted in Claims Four, Five, and Six for failure to exhaust administrative remedies.


## C. Claim Two: FTCA Claim Regarding Tampering with Mail

Claim Two asserts a "[t]ort claim against the BOP, DOJ and USA due to the illegal mail tampering authorize[d] by the SMU." *Complaint*, ¶ 22. The plaintiff filed an administrative claim which was denied on July 25, 2011. Id. at ¶ 30.

The administrative claim states:

> Between April 2010 and September 2010 the FCI Talladega Alabama mailroom unlawfully rejected legal mail for me concerning property located **[*20]** at 3710 Third Street, Alexandria, Louisiana. The rejected mail items were from the Clerk of the Court, Carolyn Jones Ryland and Alexandria Attorney at Law Darrell Hickman. Due to the unlawful acts the property was lost.

*Motion*, Ex. 1-G (denied in Ex. 1-H). The plaintiff sought $160,000 in property damages. Id.

The defendants assert that under *28 U.S.C. § 2680(b)*, the United States has not waived sovereign immunity with regard to this claim. *Motion*, pp. 6-7. *Section 2680(b)* provides that sovereign immunity is not waived as to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."

The Tenth Circuit has applied this exception to the negligent acts of BOP mail room staff. *Georgacarakos v. United States, 420 F.3d 1185, 1188 (10th Cir. 2005)* (BOP employees mailed inmate property to a relative without inmate's authorization and property never arrived). As support for its decision, the court cited *Ruiz v. United States, 160 F.3d 273 (5th Cir. 1998)*. In Ruiz, the plaintiff claimed that prison officials failed to deliver his incoming mail which notified him of final judgments in separate legal actions. Primarily due to his transfer to another **[*21]** prison facility, he did not receive the mail until after appellate deadlines had passed. The court held that *section 2680(b)* applied to bar his FTCA claim.

Here, as in *Ruiz*, the plaintiff's FTCA claim for damages caused by failure to receive his mail is barred by *section 2680(b)*. The Motion should be granted to the extent it seeks dismissal of Claim Two's allegations regarding a tort claim against the BOP, DOJ, and USA.


## D. Bivens Claims Against the BOP, DOJ and USA

The defendant asserts that, to the extent the plaintiff is suing the United States or its agencies pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)*, the court lacks subject matter jurisdiction. *Motion*, pp. 7-8.

It is a well-established principle that "[a]s a sovereign, the United States 'is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Lee v. United States, 980 F.2d 1337, 1340 (10th Cir. 1992)* (quoting *United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941))*. "Sovereign immunity protects the United States against judgments that would

require an expenditure from public funds, **[*22]** that interfere with public administration or that would restrain the Government from acting, or to compel it to act." (quotations and citations omitted). *Hensel v. Office of the Chief Administrative Hearing Officer, 38 F.3d 505, 509 (10th Cir. 1994)*. Sovereign immunity is jurisdictional bar to suit. *Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)*. The BOP and the DOJ are federal agencies. Sovereign immunity shields the federal government and its agencies from suit. *Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999)*.

*Bivens* does not waive the sovereign immunity of federal agencies. *Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 484-86, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)*; *Bivens, 403 U.S. at 410*. The Supreme Court has stated:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a <u>Bivens</u> claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual . . . .

*Correctional Services Corp. v. Malesko, 534 U.S. 61, 71, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001)*.

The **[*23]** plaintiff states that Claim One is a tort claim against the BOP, DOJ, and USA, and that <u>Bivens</u> "is the alternative theory of liability." *Response*, p. 2. However, he also states that "all <u>Bivens</u> claims are asserted against individuals." <u>Id</u>. at p. 6. The plaintiff's contradictory statements notwithstanding, to the extent he is attempting to assert claims for constitutional deprivations against the BOP, DOJ, or USA, the claims are barred by sovereign immunity. I have construed Claims One and Two as asserting claims for constitutional deprivations against the BOP, DOJ, and/or USA. The Motion should be granted insofar as it seeks dismissal of these claims as barred by sovereign immunity.


**E. Claim Seven: Violations of *42 U.S.C. §§ 1985* and *1986***

Claim Seven "adopts all facts set forth" throughout the entire Complaint and states that "[t]hese acts constitute a criminal conspiracy in violation of . . . *42 U.S.C. §§ 1985* and *1986*." The defendants assert that the United States has not waived its sovereign immunity for suits against it under *42 U.S.C. §§ 1985* and *1986*. *Motion*, p. 8.

Sovereign immunity bars suits against the United States, its agencies, and officers acting in their official capacities **[*24]** that are brought pursuant to civil rights statutes including *42 U.S.C. §§ 1985* and *1986*. *Davis v. United States Dept. of Justice, 204 F.3d 723, 726 (7th Cir. 2000)*; *Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999)*; *United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982)*; *Omeli v. National Counsel of Senior Citizens, 12 Fed. Appx. 304, 307, 2001 WL 700849 (6th Cir. June 11, 2001)*.

The plaintiff argues that the claims under *42 U.S.C. §§ 1985* and *1986* are asserted against individuals, not the United States or its agencies. *Response*, p. 6. However, Claim Seven does not contain any factual allegations against individual defendants. *Complaint*, pp. 12-13. I recommend that the Motion be granted insofar as it seeks dismissal of Claim Seven in its entirety.


**F. "Claim-Splitting"**

The defendants assert that "[u]nder the rule against 'claim-splitting,' courts have the inherent authority to manage their dockets and may dismiss claims under *Federal Rule of Civil Procedure 12(b)(6)* when there is ongoing duplicative litigation." *Motion*, p. 9. The defendants argue that the plaintiff's APA and Privacy Act claims must be dismissed due to claim-splitting. **[*25]** <u>Id</u>. They cite *Hartsel Springs Ranch of Colo. v. Bluegreen Corp., 296 F.3d 982, 985 (10th Cir. 2002)*, in support of their argument.

2012 U.S. Dist. LEXIS 183488, *25

In Hartsel, the district court dismissed the complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* for claim-splitting. *Hartsel, 296 F.3d at 985*.[7] The Tenth Circuit recognized the claim-splitting analysis set forth by the Supreme Court in *United States v. The Haytian Republic, 154 U.S. 118, 14 S. Ct. 992, 38 L. Ed. 930 (1894)*, but stated that "more recent cases analyze claim-splitting as an aspect of res judicata." *Id. at 986*. The court then performed a *res judicata* analysis under Colorado law:

> In Colorado, res judicata, also known as claim preclusion, requires the presence of four elements: 1) finality of the first judgment; 2) identity of subject matter; 3) identity of claims for relief; and 4) identity or privity between parties to the actions.

*Id. at 986-87* (internal quotations and citation omitted).

The court found that the district court abused its discretion in dismissing the action based **[*26]** on the prohibition against claim-splitting because there was no identity or privity between the parties. *Id. at 987-988*.

The defendants do not discuss the *res judicata* requirements. Accordingly, the Motion should be denied to the extent it seeks dismissal of the plaintiff's APA and Privacy Act claims due to claim-splitting.


## G. Bivens Claims Against Individual Defendants

The defendants assert that the plaintiff's Bivens claim fails to state a claim upon which relief can be granted because it lacks specificity. The defendants do not identify the claim at issue. My review of the Complaint reveals that the plaintiff is asserting claims for constitutional violations under Bivens against the individual Doe defendants in Claims Four, Five, and Six.

The Doe defendants have not been identified or served with the Summons and Complaint. Nevertheless, under *42 U.S.C. § 1997e(c)(1)*, a court may dismiss on its own motion any action brought with respect to prison conditions under any federal law if the court is satisfied that the action fails to state a claim on which relief can be granted.

A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. **[*27]** *Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007)*. "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)* (internal quotations and citation omitted).

The Tenth Circuit has stated:

> [P]lausibility . . . refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim **[*28]** rests. See *Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir.2007)* ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under *Rule 8*."). The Twombly Court was particularly critical of complaints that mentioned no specific time, place, or person involved in the alleged

---

[7] Because the dismissal was "premised in significant measure on the ability of the district court to manage it won docket," the Tenth Circuit reviewed the dismissal under an abuse of discretion standard. Id.

conspiracies. Given such a complaint, a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin.

*Id. at 1247* (internal quotations and citations omitted except as noted).

To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007)*.

The plaintiff's allegations against the Doe defendants are vague and conclusory. He accuses them generally of disseminating false information and stealing a "book and mail." He does not provide any specific factual allegations **[*29]** to plausibly support a claim for relief against any of the 20 Doe defendants. Nor does he differentiate between any of the Doe defendants; he consistently refers to them collectively as the "DOJ employees."

The Motion should be granted insofar as it seeks dismissal of the <u>Bivens</u> claims asserted against the individual Doe defendants in Claims Four, Five, and Six for failure to state a claim upon which relief can be granted.

## H. Claim Four: Habeas

In his jurisdictional statement, the plaintiff asserts a violation of *28 U.S.C. § 2241*. *Complaint*, p. 1. The defendants assert that the plaintiff has failed to state a habeas claim under *section 2241*. *Motion*, p. 12.

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser, 411 U.S. at 484*. A challenge to the duration of custody is properly brought under *28 U.S.C. § 2241*. *McIntosh v. United States Parole Commission, 115 F.3d 809, 811 (10th Cir. 1997)* (stating that a habeas proceeding attacks the fact or duration of confinement and seeks the remedy of shortened confinement or immediate release).

The Complaint does not contain any factual allegations which challenge the fact or duration of the plaintiff's **[*30]** confinement. If it did, the plaintiff would be required to submit the allegations in a separate habeas petition using the court's form. *D.C.COLO.LCivR 8.1A*.

The Motion should be granted to the extent it seeks dismissal of any claim asserted under *28 U.S.C. § 2241*.

## I. Claims Under the Declaratory Judgment Act

The defendants assert that to the extent the plaintiff seeks relief under the Declaratory Judgment Act, *28 U.S.C. §§ 2201* and *2202*, "he fails to state a claim because the Act does not create substantive rights." *Motion*, p. 13.

The Declaratory Judgment Act generally provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201(a)*. The Declaratory Judgment Act does not create substantive rights; it merely creates a procedure by which parties may obtain relief under some other substantive theory. *Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1386 (10th Cir. 1978)*.

The plaintiff makes nine requests for declaratory relief. **[*31]** *Complaint*, pp. 13-15. The defendants do not discuss any of them. Therefore, it is unclear which claims they are challenging. The Motion should be denied insofar as it seeks dismissal of the plaintiff's claims for declaratory relief.

## J. FOIA Claims

2012 U.S. Dist. LEXIS 183488, *31

The defendants assert that the plaintiff's FOIA claims should be dismissed for improper venue. *Motion*, pp. 13-15. Under FOIA, venue is proper in the district where claimant resides, in the district where agency records are situated, or in the District of Columbia. 5 U.S.C. § 552(a)(4)(B).

There is a split of authority regarding whether an inmate resides at his place of incarceration or x+at his domicile prior to incarceration. *Bailey v. United States of America, No. 92-3186-RDR, 1992 U.S. Dist. LEXIS 17307, 1992 WL 331320 (D. Kan. Oct. 23, 1992)* (citing cases). I find persuasive the reasoning of the court in *Royer v. Federal Bureau of Prisons, No. 1:10-cv-0146 (LMB/IDD), 2010 U.S. Dist. LEXIS 122878, 2010 WL 4827727 (E.D.Va. Nov. 19, 2010)*:

> In this case, Royer's Complaint alleges that venue is proper in this District because "plaintiff is resident and domiciled in the Eastern District of Virginia at 6166 Leesburg Pike in Falls Church, [Virginia]," where he resided before his arrest and subsequent incarceration. **[*32]** Pl.'s Compl. ¶ 6. Moreover, in his Supplemental Memorandum Concerning Venue, Royer cites a number of cases, the vast majority of which are from circuits other than the Fourth Circuit, which he claims establish that a prisoner is "deemed to reside in the district wherein he resided prior to his incarceration." Pl.'s Supp. Mem. Concerning Venue at 1.

> Most of the authorities plaintiff cites, however, deal with the concepts of domicile and citizenship, not residence. In particular, the two cases Royer identifies from the Fourth Circuit, *Price v. Carr—Price, 23 F.3d 402 (4th Cir.1994)* and *Roberts v. Morchower, 956 F.2d 1163 (1992)*, both address the domicile of a prisoner for diversity jurisdiction purposes, not the separate and distinct matter of where a prisoner resides for purposes of establishing venue under statutes like FOIA and the Privacy Act. As the Fourth Circuit observed in <u>Commissioner of Internal Revenue v. Nubar</u>:

> "When these words, "domicile" and "residence," are technically used by persons skilled in legal semantics, their meanings are quite different.... "Residence" simply requires bodily presence as an inhabitant in a given place, while "domicile" requires bodily presence **[*33]** in that place and also an intention to make it one's domicile."

> 185 F.2d 584, 587 (4th Cir.1950) (internal quotation marks and citations omitted); see also Black's Law Dictionary 501, 1310 (7th ed.1999) (defining residence as "the act or fact of living in a given place for some time," while domicile is separately defined as "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere").

2010 U.S. Dist. LEXIS 122878, [WL] at *4.

The plaintiff is currently incarcerated in Florence, Colorado. *Complaint*, p. 2. I find that for purposes of FOIA, he resides in Colorado. Therefore, venue is proper in this court. The Motion should be denied to the extent it seeks dismissal of Claim Three for improper venue.

## K. Remaining Claims

If this Recommendation is accepted, the following claims will remain:

1. Claim One insofar as it alleges that (a) the plaintiff's placement in unwarranted psychological treatment in the SMU constitutes a state tort, and (b) the SMU program was implemented in violation of the APA;

2. Claim Three against the BOP for denying the plaintiff's requests for information in violation of FOIA; and

3. Claim Four's allegations that certain **[*34]** exemptions to the Privacy Act are unconstitutionally vague.

## L. Plaintiff's Abusive Litigation Behavior

2012 U.S. Dist. LEXIS 183488, *34

The plaintiff's filings are filled with impertinent and immaterial statements and *ad hominem* attacks on the defendants. For example, in response to the defendants' assertion that there is no jurisdiction for a *§1985* or *§ 1986* claim against the United States, he accuses the defendants of "attempting to perpetrate a fraud on this court with their tricks, false and misleading statements." *Response*, p. 6. He repeatedly accuses the defendants of fraud in both his Response and Surreply. I will not tolerate the plaintiff's immaterial and impertinent statements and *ad hominem* attacks against the defendants.

## IV. CONCLUSION

I respectfully RECOMMEND[8] that the Motion [Doc. #26] be GRANTED IN PART and DENIED IN PART as follows:

1. DENIED insofar as it seeks dismissal of the tort claim asserted in Claim One;

2. GRANTED insofar as it seeks dismissal of the remaining tort claims (asserted in Claims Two, Four, Five, and Six);

3. GRANTED insofar as it seeks dismissal of all constitutional claims asserted against the BOP, DOJ, and/or USA under Bivens as barred by sovereign immunity;

4. GRANTED insofar as it **[*35]** seeks dismissal of Claim Seven in its entirety;

5. DENIED to the extent it seeks dismissal of the plaintiff's APA and Privacy Act claims due to claim-splitting;

6. GRANTED insofar as it seeks dismissal of all constitutional claims asserted under Bivens against the individual Doe defendants for failure to state a claim upon which relief can be granted;

7. GRANTED to the extent it seeks dismissal of any habeas claim asserted under *28 U.S.C. § 2241*;

8. DENIED insofar as it seeks dismissal of the plaintiff's claims for declaratory relief; and

9. DENIED to the extent it seeks dismissal of Claim Three for improper venue.

FURTHER, IT IS ORDERED that the plaintiff shall cease filing papers containing immaterial and impertinent statements, and *ad hominem* attacks against the defendants. Failure to comply with this order may result in sanctions, including dismissal of this case.

Dated December 7, 2012.

BY THE COURT:

/s/ Boyd N. Boland

United States Magistrate Judge

---

**End of Document**

---

[8] Pursuant to *28 U.S.C. § 636(b)(1)(C)* and *Fed. R. Civ. P. 72(b)*, the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, *Fed. R. Civ. P. 72(b)*; *Thomas v. Arn, 474 U.S. 140, 147-48, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*, and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000)*. A party's objections to this recommendation must be both timely **[*36]** and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996)*.

## *Church v. Church*

United States District Court for the District of Colorado

May 24, 2023, Decided; May 24, 2023, Filed

Civil Action No. 22-cv-02285-RMR-NRN

**Reporter**

2023 U.S. Dist. LEXIS 91044 *; 2023 WL 3612838

HARVEST CHURCH, a Colorado Nonprofit Corporation, Plaintiff, v. RESOUND CHURCH, an Oregon Non-Profit Corporation, Defendant.RESOUND CHURCH, an Oregon Non-Profit Corporation, Counterclaim Plaintiff, v. HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ, Counterclaim Defendants.

**Subsequent History:** Adopted by, Motion granted by, in part, Motion denied by, in part, Objection overruled by *Harvest Worship Ctr. v. Resound Church, 2023 U.S. Dist. LEXIS 176226 (D. Colo., Sept. 29, 2023)*

**Prior History:** *Church v. Church, 2022 U.S. Dist. LEXIS 230635, 2022 WL 17843890 (D. Colo., Dec. 21, 2022)*

**Counsel:** **[*1]** For Harvest Worship Center, Plaintiff, Counter Defendant: Janine A. Guillen, Timothy L. DeGeorge, Guillen DeGeorge, LLP, Lone Tree Professional Center, Lone Tree, CO.

For Resound Church, Defendant: Adam Patrick O'Brien, Saugat K. Thapa, Wells Anderson & Race, LLC, Denver, CO; Ian Seth Speir, Nussbaum Speir Gleason PLLC, Colorado Springs, CO; Andrew Martin Nussbaum, Nussbaum Speir Gleason, Colorado Springs, CO.

For HHarvest Church, also known as Harvest Worship Center, Counter Defendant: Janine A. Guillen, Timothy L. DeGeorge, Guillen DeGeorge, LLP, Lone Tree Professional Center, Lone Tree, CO.

For Resound Church, Counter Claimant: Ian Seth Speir, Nussbaum Speir Gleason PLLC, Colorado Springs, CO; Andrew Martin Nussbaum, Nussbaum Speir Gleason, Colorado Springs, CO.

**Judges:** N. Reid Neureiter, United States Magistrate Judge.

**Opinion by:** N. Reid Neureiter

# Opinion

**REPORT AND RECOMMENDATION ON HARVEST CHURCH'S MOTION TO JOIN ADDITIONAL PARTIES PURSUANT TO *Fed. R. Civ. P. 13(h)*,*19*, AND 20, AND *C.R.S. § 38-35-114* (Dkt. #77), and MOTION FOR LEAVE TO AMEND ITS COMPLAINT PURSUANT TO *D.C.COLO.LCivR 15.1(b)* (Dkt. #78)**

**N. REID NEUREITER**

**United States Magistrate Judge**

This matter is before the Court pursuant to an Order (Dkt. #79) issued by Judge Regina M. Rodriguez referring Plaintiff/Counterclaim **[*2]** Defendant Harvest Church's ("Harvest") Motion to Join Additional Parties Pursuant to *Fed. R. Civ. P. 13(h)*,*19*, and 20, and *C.R.S. § 38-35-114* ("Motion to Join," Dkt. #77), and Motion for Leave to Amend its Complaint Pursuant to *D.C.COLO.LCivR 15.1(b)* ("Motion to Amend," Dkt. #78). Defendant/Counterclaim Plaintiff Resound Church's ("Resound") filed a combined response to the motions (Dkt. #88), and Harvest filed replies (Dkt. #93 & 94). On April 6, 2023, the Court heard argument from the parties. Now, having taken judicial

2023 U.S. Dist. LEXIS 91044, *2

notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and as set forth fully below, the Court **RECOMMENDS** that Harvest's motions (Dkt. ##77 & 78) be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Court has set forth the procedural and factual background of this case in its earlier Recommendations (*see* Dkt. ##65 & 141) and will repeat it here only as necessary. In brief, this lawsuit revolves around who owns a large church facility (the "Subject Property") located in Federal Heights, Colorado. Harvest alleges that it is the owner of the Subject Property, despite the deed to the property being in Resound's name. In 2018, as part of an alleged joint venture or partnership with Resound, **[*3]** Harvest transferred the Subject Property to Resound for less than its true market value. Harvest says that Resound then squeezed Harvest out of the venture and is planning on cutting Harvest out of any proceeds it obtains from selling or leasing the Subject Property.

In its First Amended Complaint (Dkt. #6), Harvest asserted the following claims:

(1) a declaratory judgment to void Resound's deed due to insufficient consideration;

(2) a declaratory judgment voiding the property transfer transaction due to violation of the statue of frauds and due to negligent misrepresentation;

(3) breach of contract for breach of the purchase agreement;

(4) breach of contract for breach of an alleged joint venture between Harvest and Resound;

(5) breach of contract for breaching the duty of good faith and fair dealing;

(6) fraud/fraudulent conveyance, alleging that Resound made misrepresentations as part of a scheme to defraud Harvest and divest Harvest of the Subject Property;

(7) unjust enrichment, claiming that Resound received a benefit (presumably the Subject Property) under circumstances that would make it unjust for Resound to retain the benefit without paying; and

(8) for quiet title, asking that the **[*4]** Court declare the special warranty deed void and vesting title in Harvest.

Resound brings counterclaims (*see* Dkt. #61) against Harvest and its leadership (Danny Valdez, Steve Valdez, and Vickie Maestas) for:

(1) slander of Resound's title to the Subject Property;

(2) intentional interference with contract relating to Resound's proposed sale of the Subject Property that fell apart due to this lawsuit;

(3) breach of the warranties of title against Harvest;

(4) aiding and abetting breach of warranties of title against the Valdezes and Ms. Maestas;

(5) quiet title; and

(6) declaratory judgment that Resound is the true, rightful, and sole owner of the Subject Property.

On February 2, 2023, Harvest filed the subject motions (Dkt. ##77 & 78), in which it seeks leave to amend its complaint to assert three additional claims (for fraud in the inducement, constructive fraud, and constructive trust), and add several other parties, including individual board members of Resound: Luke Reid, David Crocker, David Schaal (a non-diverse party), and Anthony Nash; and, as "interested parties," the lender, CDF Capital a/k/a Church

Development Fund ("CDF"), and the Adams County Colorado Treasurer and Public Trustee, **[\*5]** Alex Villagran ("Public Trustee," a non-diverse party).

Resound partially opposes the subject motions. It argues that Harvest has failed to allege sufficient facts or a plausible legal basis for personal liability of Resound individual board members Crocker, Nash, and Schaal[1]; that the proposed fraudulent misrepresentation claims fail as a matter of law; that Harvest's "constructive trust" theory is not available in this dispute; and that joinder of CDF and the Public Trustee should not be permitted. (*See generally* Dkt. #88.)

After holding a day-long evidentiary hearing, the Court issued a Report and Recommendation on May 11, 2023 (*see* Dkt. #141) on several other motions, including Harvest's motion for preliminary injunction and Resound's motion for judgment on the pleadings. The crux of that Recommendation is that title to the Subject Property should be deemed to rest exclusively with Resound. As discussed in more detail below, if adopted, the Recommendation will dispose of many of Harvest's claims as asserted in its original pleading and its proposed Second Amended Complaint.

## LEGAL STANDARDS

### Motion to Amend and Futility

Under *Rule 15(a)(2) of the Federal Rules of Civil Procedure*, "a party may amend its pleading only with the opposing party's **[\*6]** written consent or the court's leave." Leave to amend shall be freely granted when justice so requires. *See, e.g., Bellairs v. Coors Brewing Co., 907 F. Supp. 1448, 1459 (D.Colo.1995)*. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. However, the Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)*. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*." *Dorough v. Am. Family Mut. Ins. Co., No. 15-cv-02388-MSK-KMT, 2016 U.S. Dist. LEXIS 49086, 2016 WL 1426968, at \*2 (D. Colo. Apr. 11, 2016)*.

*Rule 12(b)(6)* provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. "The court's function is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003)* (citations and quotation marks omitted).

"A **[\*7]** court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.

---

[1] Resound appears to only oppose the amendment of claims to add Luke Reid as a Defendant in the two fraud claims (Sixth and Ninth Claims).

*Id. at 679-81*. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id. at 681*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id. at 679*.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste, 161 F.3d 1259, 1262 (10th Cir. 1998)*. "[T]he tenet that a court must accept as true all of the allegations **[*8]** contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal, 556 U.S. at 678*. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).


## Joinder

As noted above, Harvest seeks to amend its pleading to add claims against several new parties, some of whom would destroy diversity and therefore compel remand to Colorado state court. But "the joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal." *Frontier Airlines, Inc. v. United Air Lines, Inc., 758 F. Supp. 1399, 1403 (D. Colo. 1989)*. In other words, if the plaintiff fails to state a cause of action against the defendant who defeats diversity, the joinder of the resident defendant is considered "fraudulent," and removal is proper. *Id.*

Resound bears the burden of proving fraudulent joinder. *Frontier Airlines, Inc., 758 F. Supp at 1404*. To do so, it must show "either that there is no possibility that the **[*9]** plaintiff would be able to establish a cause of action against the resident defendant in state court; or that there has been outright fraud in plaintiff's representations as to jurisdictional facts." *Id. at 1403*. "The burden on defendant is high; its presentation must be one that compels the conclusion that the joinder is without right and is made in bad faith." *Id. at 1404*.


## ANALYSIS

### First, Second, and Eighth Claims

In its Recommendation of May 11, 2023, the Court determined that title of the Subject Property rests solely with Resound. (*See* Dkt. #141 at 40.) This automatically narrows the scope of the Court's analysis here because, based on the Court's prior Recommendation, several of Harvest's claims in the proposed Second Amended Complaint are plainly subject to dismissal under *Rule 12* and are therefore futile. Those claims are:
- "First Claim for Relief: Declaratory Judgment - Void Contract and Void Deed Due to Insufficient Consideration - Against Resound";
- "Second Claim for Relief Declaratory Judgment - Defective Special Warranty Deed Due to Violation of The Statute of Frauds and Negligent Misrepresentation Using Fraud - Against Resound and Luke Reid"; and

- "Eighth Claim for Relief - Quiet Title Action - Against Resound, CDF **[*10]** Capital, an Interested Party Defendant, and Alex Villagran, Adams County Colorado Public Trustee, an Interested Party Defendant."

As Harvest's quiet title claim is the only one that involves "interested parties" CDF and the Public Trustee, the Motion to Join with respect to these parties should be denied.


### Sixth Claim

Similarly, Harvest's Sixth Claim for fraudulent conveyance against Resound and Luke Reid alleges that the warranty deed is void due to fraud in the factum, which applies where "a person has been fraudulently deceived

about the nature of a document, so that he or she is excusably ignorant about what has been signed." *Delsas ex rel. Delsas v. Centex Home Equity Co., LLC, 186 P.3d 141, 144 (Colo. App. 2008)* (quoting *Svanidze v. Kirkendall, 169 P.3d 262, 266 (Colo. App. 2007)*). The Court has recommended that title is vested in Resound. As finding for Harvest on this claim would necessarily affect title to the Subject Property, this claim is foreclosed by the Court's May 11, 2023 Recommendation.

### Tenth and Eleventh Claims

The Court has also rejected Harvest's argument that the equitable remedy of a constructive trust be imposed with respect to Subject Property. "A constructive trust is a remedial device designed to prevent unjust enrichment." *Mancuso v. United Bank of Pueblo, 818 P.2d 732, 737 (Colo. 1991)*. "In general, 'a constructive trust is imposed . . . because the person holding the **[*11]** title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.'" *Id.* (quoting *Restatement (Second) of Trusts, ch. 12*, introductory note at 326 (1959)). "Some instances in which a constructive trust may be imposed are when property is obtained by fraud, duress, or abuse of confidential or fiduciary relationship." *Id. at 737-38*.

The Court was not persuaded that the "very friendly relationship between Luke Reid and Steve Valdez rose to the level of a confidential relationship that allowed Luke Reid to take unfair advantage or exert undue influence." (Dkt. #141 at 34.) The Court also declined to impose a constructive trust because doing so would require the Court to scrutinize the relationship of two pastors and thus "tread dangerously close to the line which prohibits delving into and assessing the ecclesiastical and spiritual relationships within a church." (*Id.* at 35.)

With this in mind, Harvest's proposed Tenth and Eleventh Claims for constructive fraud and constructive trust are futile. If, as the Court has already determined, Steve Valdez did not have a confidential relationship with Luke Reid, with whom he had developed a personal friendship, such a relationship obviously cannot **[*12]** be said to have existed with Resound board members Crocker, Schaal, and Nash, who are not alleged to have been close, personal friends of Steve Valdez. Moreover, both claims would necessitate the Court delving into the ecclesiastical and spiritual relationship between Luke Reid and other Resound board members and Steve Valdez, which violates the "neutral principles" approach Colorado has adopted to the resolution of church property disputes. *See Bishop and Diocese of Colo. v. Mote, 716 P.2d 85 (Colo. 1986)*.

### Fourth, Fifth, and Seventh Claims Against Nash, Schaal, and Crocker

Next, the Court agrees with Resound that Harvest's claims for individual liability against proposed parties Nash, Schaal, and Crocker (the Fourth, Fifth, and Seventh Claims) are subject to dismissal under *Rule 12(b)(6)*.

Nash, Schaal, and Crocker are Resound board members. Nash is "the secretary who handles all the financial aspects, including financial reports and accounting for Resound," and "signed and endorsed an email to the church congregation that decimated the church congregation." (Dkt. #78-1 ¶ 31.) Schaal "became lead pastor of the Denver campus after Steve Valdez resigned and as a board member approved the slanderous emails sent by David Crocker to a congregation of 1700 persons **[*13]** . . . ." (*Id.* ¶ 32.) Crocker, as Resound's Global Executive Pastor "oversees all the management and financial aspects of the Church globally," and "directed emails to the Denver congregation that are material to some of the claims in this lawsuit." (*Id.* at 5.) Harvest generally alleges that Nash, Schaal, and Crocker "are jointly and severally individually liable for their own acts and those of Resound in both omission and commission, along with Luke Reid. They all knew or should have known of the fraudulent inducements and fraudulent misrepresentations but chose to stay as board members and approve these acts before the lawsuit started." (*Id.* ¶ 33.)

Harvest's Fourth Claim is for breach of oral contract regarding what it calls the two church's "joint venture," and its Fifth Claim is for breach of the contractual obligation of good faith and fair dealing. However, neither Nash, Schaal, nor Crocker are alleged to have been parties to any contract with Harvest. Rather, Harvest alleges that Luke Reid,

on behalf of Resound, entered into an oral agreement to collaborate in the joint venture with Harvest. (*See id.* ¶ 120 ("Harvest and Resound had a constructive oral contract for the Joint Venture, **[\*14]** which was subsequently breach by Defendant.").) In other words, Harvest had no contractual relationship with Resound's individual board members. "It is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract." *Worman v. Farmers Co-op. Ass'n, 4 F. Supp. 2d 1052, 1054 (D. Wyo. 1998)*.

Although Harvest alleges in both claims that Crocker, "on behalf of the board members," defamed Steve Valdez in an email to the Resound Denver congregation, it does not bring a claim against Crocker either for defamation or for tortiously interfering with Harvest's contractual relationship with Resound. As Crocker was not a party to any contract with Harvest or Valdez, his allegedly defamatory email cannot form the basis of individual liability for Resound's breach of contract.

Harvest's Seventh Claim for unjust enrichment runs into similar problems. In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See DCB Constr. Co. v. Central City Dev. Co., 965 P.2d 115, 119-20 (Colo. 1998)*. Unjust enrichment is a "claim in quasi-contract for money damages based upon principles of restitution." *Id. at 118*.

Here, as noted above, Harvest alleges **[\*15]** that *Resound* breached the oral joint venture agreement and unfairly obtained a benefit at Harvest's expense in the form of the warranty deed to the Subject Property. The alleged benefit to Resound's board members in the form of the reimbursement of their expenses is too attenuated to maintain an unjust enrichment claim. Put differently, if Harvest recovers on its unjust enrichment claim (in the event its breach of contract claim fails for whatever reason), it can obtain restitution against Resound itself, not from Resound's board members.


**Ninth Claims Against Luke Reid**

Finally, Resound argues that Harvest's Ninth claim against Luke Reid for fraud in the inducement does not meet Rule 9(b)'s demand that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (Emphasis added.) In the "paradigmatic" case of *Trussell v. United Underwriters, Limited*, the Court explained that Rule 9(b) "requires identification of the circumstances constituting fraud or mistake." *228 F. Supp. 767, 774-75 (D. Colo. 1964)*; *see also Noland v. Gurley, 566 F. Supp. 210, 215-16 (D. Colo. 1983)*. "More specifically," the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party **[\*16]** making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 (10th Cir. 2000)* (quoting *In re Edmonds, 924 F.2d 176, 180 (10th Cir. 1991)*), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity connection with an averment of intent, knowledge, or condition of mind." *Trussell, 228 F. Supp. at 774*.

A sufficient allegation of fraudulent inducement requires the plaintiff to advance facts demonstrating each of the following elements: (1) the defendant's misrepresentation of a material fact, (2) the plaintiff's reliance on that misrepresentation, (3) the plaintiff's reliance on the misrepresentation was justifiable, and (4) justifiable reliance resulted in damage to the plaintiff. *J.A. Walker Co. v. Cambria Corp., 159 P.3d 126, 132 (Colo. 2007)* (Hobbs, J., dissenting). The Court cannot agree that Ninth Claim does not adequately allege that Luke Reid made false statements or misrepresentations to Steve and Danny Valdez that they justifiably relied on to their detriment. However, only one set of those allegedly false statements are actionable in this lawsuit.

The Ninth Claim asserts that Resound and Luke Reid fraudulently induced Harvest to enter into the joint venture, and later to persuade Steve Valdez to temporarily resign, by making false promises to pay Pastors Danny and **[\*17]** Steve Valdez lifetime emeritus payments of $50,000 per year, which they contend are practically uncancellable, only to not make any payments to Steve Valdez at all and to stop making payments to Danny Valdez after this lawsuit was commenced. This is sufficient to state a claim grounded in fraud under Rule 8 and 9.

However, to the extent the Ninth Claim seeks to void the warranty deed because Luke Reid concealed the conveyance as a mere "refinancing," such a claim cannot be maintained in light of the Court's earlier Recommendation that judgment on Harvest's claim to quiet title be entered against Harvest and in favor of Resound.

**CONCLUSION**

For the reasons outlined above, it is hereby **RECOMMENDED** that Harvest Church's Motion to Join Additional Parties Pursuant to *Fed. R. Civ. P. 13(h)*,19, and 20, and *C.R.S. § 38-35-114* (Dkt. #77), and Motion for Leave to Amend its Complaint Pursuant to *D.C.COLO.LCivR 15.1(b)* (Dkt. #78) be **GRANTED IN PART** and **DENIED IN PART** such that the only claims from Harvest's proposed Second Amended Complaint that proceed are:

- Third Claim for Relief Breach of Contract - Purchase Sale Agreement - Against Resound and Luke Reid;
- Fourth Claim for Relief Breach of Oral Contract - Joint Venture - Against Resound And Luke Reid;

- Fifth Claim **[*18]** for Relief - Breach of Good Faith and Fair Dealing - Against Resound, Luke Reid;
- Seventh Claim for Relief - Unjust Enrichment - Against Resound and Luke Reid; and
- Ninth Claim for Relief - Fraud In The Inducement Against Resound and Luke Reid.

**NOTICE: Pursuant to *28 U.S.C. § 636(b)(1)(c)* and *Fed. R. Civ. P. 72(b)(2)*, the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn, 474 U.S. 140, 148-53, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*, and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999)*; *Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996)*.**

Date: May 24, 2023

/s/ N. Reid Neureiter

N. Reid Neureiter

United States Magistrate Judge

---

**End of Document**

## *Dorough v. Am. Family Mut. Ins. Co.*

United States District Court for the District of Colorado

April 11, 2016, Decided; April 11, 2016, Filed

Civil Action No. 15-cv-02388-MSK-KMT

**Reporter**

2016 U.S. Dist. LEXIS 49086 *

JENNIFER DOROUGH, Plaintiff, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, and GEICO CASUALTY COMPANY, a Maryland corporation, Defendants.

**Subsequent History:** Motion denied by *Dorough v. GEICO Cas. Co., 2016 U.S. Dist. LEXIS 177990 (D. Colo., Dec. 23, 2016)*

Motion granted by *Dorough v. Gov't Emples. Ins. Co., 2017 U.S. Dist. LEXIS 231732, 2017 WL 11545514 (D. Colo., Mar. 15, 2017)*

**Counsel:** **[*1]** For Jennifer Dorough, Plaintiff: Thomas George Tasker, Hillyard, Wahlberg, Kudla, Sloane & Woodruff, L.L.P., Denver, CO.

For American Family Mutual Insurance Company, a Wisconsin corporation, Defendant: Debra K. Sutton, Charles Russell Scheurich, Sutton Booker, P.C., Denver, CO.

For Geico Casualty Company, a Maryland corporation, Defendant: Christopher T. Colby, Johnson & Stephens PC, Dallas, TX.

**Judges:** Kathleen M. Tafoya, United States Magistrate Judge.

**Opinion by:** Kathleen M. Tafoya

# Opinion

### ORDER

This matter is before the court on "Plaintiff's Motion to Amend Complaint (Opposed in Part)." (Doc. No. 27 ["Mot."], filed February 18, 2016.) Defendant has filed a Response (Doc. No. 30 ["Resp."], filed March 10, 2016), to which Plaintiff has replied. (Doc. No. 37 ["Reply"], filed March 21, 2016.)

### BACKGROUND

On February 1, 2012, Plaintiff was injured in a motor vehicle accident while riding as a passenger in Brittany Loranc's vehicle. (Doc. No. 3 ["Comp."] at 2; Mot. at 2.) The accident was caused by the driver of a second vehicle, Mathew O'Donnell. (Comp. at 2.) On September 24, 2013, Plaintiff received payment of $100,000, which represented the liability limits under Mr. O'Donnell's insurance policy. (*Id.*) At the time of the collision, Ms. Loranc had **[*2]** Underinsured Motorist (UIM) coverage with Defendant American Family Mutual Insurance Company ("American Family") with per-person limits of $50,000 and UIM coverage with Defendant GEICO Casualty Company ("GEICO") with per-person limits of $50,000. (*Id.*) American Family and GEICO UIM coverage were co-primary. (*Id.*) It is undisputed between the parties that, as a passenger in Ms. Loranc's vehicle, Plaintiff was covered as an insured under each of these policies. (Mot. at 2.)

According to the Complaint, under their respective UIM coverage, American Family and GEICO were required to pay Plaintiff all sums she was legally entitled to recover as compensatory damages from O'Donnell up to the respective UIM policy limits, less the $100,000 policy-limit settlement she received from O'Donnell. (Comp. at 2.) Plaintiff made a claim for UIM benefits under each policy and each company denied the same. (*Id.*) Plaintiff subsequently brought this action asserting claims for breach of contract, statutory relief under *Colo. Rev. Stat. §§ 10-3-1115*, *10-3-1116*, and bad faith breach of contract against each company. (*Id.* at 2-5.)

By this Motion, Plaintiff seeks leave to amend her Complaint in order to: (1) substitute Government Employees Insurance Company for GEICO as the proper [*3] party defendant in this matter and (2) assert a claim for declaratory judgment to reform the underlying Government Employees Insurance Company's insurance policy to include UIM coverage with a limit of $100,000, rather than the $50,000 per person limit currently on the policy (the "reformation claim"). The parties agree that Government Employees Insurance Company is the company that issued the insurance policy at issue ("GEICO policy"), and GEICO is the entity responsible for adjusting Plaintiff's UIM claim. (Mot. at 2; Resp. at 1.) Thus, GEICO does not object to Plaintiff's request to substitute Government Employees Insurance Company as the proper party defendant. (Resp. at 1.) GEICO does, however, object to Plaintiff's request to amend the Complaint in order to add the reformation claim. (Resp. at 2-6.)

## ANALYSIS

Under *Federal Rule of Civil Procedure 15(a)*, a court should allow a party to amend its pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of [*4] the Federal Rules." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)*. Further, the non-moving party bears the burden of showing that the proposed amendment satisfies any of these justifications. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Invr.'s Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999)*.

In seeking to add the reformation claim, Plaintiff relies upon *Colo. Rev. Stat. § 10-4-609(2)*, which provides that before a car insurance policy "is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits." Colorado courts have interpreted this statute "as creating a one-time duty upon an insurer to notify an insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage in accordance with the insurer's rating plan and rules and in an amount equal to the insured's bodily injury liability limits but in no event in excess of $100,000 per [*5] person and $300,000 per accident, whichever is less." *Allstate Ins. v. Parfrey, 830 P.2d 905, 912 (Colo. 1992)*. Determining whether the insurer has discharged its statutory duty under *§ 10-4-609(2)* to notify the insured of the availability of higher UIM coverage and to offer such coverage "must be resolved by considering the totality of the circumstances." *Id. at 914*. "[A] court may appropriately consider such factors as the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer." *Id. at 913*.

According to Plaintiff, in order to fulfill the statutory duty set forth in *§ 10-4-609(2)*, GEICO provides an "Option Form" to its customers that provides information to the insured about UM/UIM coverage and directs the insured to select the UM/UIM coverage they desire. (Mot. at 3.) GEICO does not appear to dispute that the Option Form represents its means of complying with *§ 10-4-609(2)*. (Resp. at 4.) Plaintiff further contends GEICO has been unable to produce any Option Forms provided to and/or signed by Ms. [*6] Loranc. (Mot. at 3.) Plaintiff asserts the evidence will show GEICO did not perform its duty of notification and offer under *§ 10-4-609(2)* in a manner

2016 U.S. Dist. LEXIS 49086, *6

reasonably calculated to permit Ms. Loranc to make an informed decision about whether to purchase UM/UIM coverage at the same limit as liability coverage. (*Id.*)

GEICO raises futility and prejudice as the bases for denying Plaintiff's request to amend. (Resp. at 2, 5.) Beginning with the former, "[t]he futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir.1999); see also Meadows at Buena Vista, Inc., v. Arkansas Valley Pub. Co., No. 10-cv-02871-MSK-KMT, 2012 U.S. Dist. LEXIS 19234, 2012 WL 502688, at *2 (D. Colo. Feb. 15, 2012)* (applying the 12(b)(6) standard to a motion to amend and explaining, "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under *Fed. R. Civ. P. 12(b)(6).*").

GEICO first argues the addition of Plaintiff's reformation claim is futile because *§ 10-4-609(2)* does not require an insurer to secure a writing on which the insured selects a lower amount of UIM coverage. (Resp. at 3.) Although Plaintiff's Motion does appear **[*7]** to state that such a requirement applies, *see* Mot. at 3, ¶ 11, Plaintiff clarified her position in her Reply. (Reply at 5-7.) Plaintiff explained that GEICO intended the signed Option Form to be a method of showing it had complied with its statutory duty, the Option Form does not adequately notify GEICO's customers of equal UIM limits as required by the statute, and that, in any event, it does not appear the Option Form was ever provided to Ms. Loranc. (*Id.*) Disputed questions of fact regarding whether Ms. Loranc ever received the Option Form and/or whether the Option Form adequately informs insureds of their right to obtain UIM coverage in equal amounts to the insured's own bodily-injury liability limits are questions properly presented to the trier of fact. They are not a basis to deny Plaintiff's request to assert the underlying claim in the first place.

Next, GEICO contends the court should deny Plaintiff's request because she has not produced any supporting documentation for her position. (Resp. at 4.) However, this argument erroneously shifts the burden to prove futility to Plaintiff, illustrated by the fact that it essentially Case 1:15-cv-02388-MSK-KMT Document requires her **[*8]** to prove a negative - the nonexistence of a document. *See Jefferson Cnty. Sch. Dist., 175 F.3d at 859* (noting non-moving party bears burden of showing proposed amendment is futile); *Toy v. Am. Family Mut. Ins. Co., No. 12-cv-01683-PAB-MJW, 2013 U.S. Dist. LEXIS 193449, 2013 WL 1324903, at *1 (D. Colo. April 1, 2013)* (citing *Winner v. Etkin & Co., Inc., No. 2:07-cv-903, 2008 U.S. Dist. LEXIS 105419, 2008 WL 5429623, at *2 (W.D.Pa. Dec. 31, 2008)* (noting that a party "cannot be required to 'prove a negative' by demonstrating that non-existent documents do not exist")).

GEICO also bases several arguments on its erroneous assertion that Plaintiff agreed in her Motion that GEICO provided the Option Form to Ms. Loranc during the time the GEICO policy was in effect. (*Id.*) As Plaintiff points out in her Reply and the court's careful reading of the Motion confirms, Plaintiff never made such an assertion and instead, stated that although GEICO was providing the Option Form to its customers during the relevant time period, there is no evidence it had provided the same to Ms. Loranc. (Mot. at 3; Reply at 4.)

GEICO relies on *Stickley v. State Farm Mut. Auto. Ins. Co., 402 F. Supp. 2d 1226 (D. Colo. 2005)* for the proposition that reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties. (Resp. at 3.) It is GEICO's position that because Plaintiff's reformation claim would go beyond merely giving effect to the **[*9]** parties' actual intentions, it is not appropriately asserted herein. (*Id.*) However, although the *Stickley* court did note the general principle GEICO asserts, the court also noted that "when . . . an insurer fails to offer the insured optional coverage that satisfies [the statute], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy. Essentially, when a policy is violative of a statute, reformation is the required remedy to assure that coverage will meet the statutory minimums." *Stickley, 402 F. Supp. 2d at 1236* (internal quotations and citations omitted). Thus, if Plaintiff is successful in establishing GEICO failed to fulfill its statutory duty under *§ 10-4-609(2)*, reformation is likely the appropriate remedy. *Id.*

Finally, GEICO also argues Plaintiff's proposed reformation claim is prejudicial. (Resp. at 5-7.) "Most often, [prejudice] occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter v. Prime Equip. Co., 451 F.3d 1196, 1207-08 (10th Cir.*

2016 U.S. Dist. LEXIS 49086, *9

*2006)*. GEICO contends it would be prejudicial to allow Plaintiff's reformation claim because it is unrelated to the underlying claim regarding UIM coverage benefits and therefore, "would require **[\*10]** GEICO to expend significant, additional time and resources defending in discovery and to prepare for trial on another, wholly separate and distinct issue . . . ." (Resp. at 6.) The court disagrees. Plaintiff has asserted claims based on GEICO's denial of coverage under the UIM portion of the GEICO policy. Rather than being unrelated, the proper amount of UIM coverage is inextricably related to the claim itself. As GEICO acknowledges, "[I]f the Court[] grants Plaintiff's Motion to Amend, Plaintiff would be afforded a chance to seek additional UM/UIM limits from GEICO." (Resp. at 6.)

Accordingly, it is

**ORDERED** that "Plaintiff's Motion to Amend Complaint (Opposed in Part)" (Doc. No. 27) is **GRANTED**.

Dated this 11th day of April, 2016.

**BY THE COURT:**

/s/ Kathleen M. Tafoya

Kathleen M. Tafoya

United States Magistrate Judge

---

**End of Document**

### *Goode v. Ramsaur*

United States District Court for the District of Colorado

August 16, 2024, Decided; August 16, 2024, Filed

Civil Action No. 20-cv-00947-DDD-KAS

**Reporter**

2024 U.S. Dist. LEXIS 147009 *; 2024 WL 3849756

JAMES COREY GOODE, individually, and GOODE ENTERPRISE SOLUTIONS, INC., Plaintiffs, v. ROGER RICHARDS RAMSAUR,[1] Defendant.

**Subsequent History:** Adopted by, Motion denied by, Without prejudice *Goode v. Ramsaur, 2024 U.S. Dist. LEXIS 196729 (D. Colo., Sept. 3, 2024)*

**Prior History:** *Goode v. Ramsaur, 2023 U.S. Dist. LEXIS 80236, 2023 WL 3305923 (D. Colo., May 5, 2023)*

**Counsel: [*1]** For James Corey Goode, individually, Goode Enterprise Solutions, Inc., Plaintiffs: Valerie Ann Yanaros, Yanaros Law, P.C., Dallas, TX.

Roger Richards Ramsaur, Defendant, Pro se, Portland, OR.

For Wells Fargo Bank, N.A., Interested Party: Anna Marie Adams, Kutak Rock LLP, Denver, CO.

**Judges:** Kathryn A. Starnella, United States Magistrate Judge.

**Opinion by:** Kathryn A. Starnella

# Opinion

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiffs' **Motion for Default Judgment Against Roger Richards/Ramsaur** [#130] (the "Motion"). The Motion [#130] has been referred to the undersigned for Recommendation. *See Order Referring Motion* [#131]. In the interest of resolving the Motion [#130] on the merits and ensuring that Defendant Roger Richards Ramsaur was served copies of all relevant orders, the Court directed the Clerk of Court to mail copies of nine documents to Defendant and ordered Defendant to respond to the Motion [#130] by January 9, 2024. *See Minute Order* [#137] at 2-3. The Court further ordered him to confirm his mailing address within seven days. *Id.* at 3. Defendant never filed a response to the Motion [#130] and never updated his mailing **[*2]** address. The Court has reviewed the operative Complaint [#32], the Motion [#130], the pleadings and filings in this case, and for the following reasons, **RECOMMENDS** that Plaintiffs' Motion for Default Judgment [#130] be **DENIED WITHOUT PREJUDICE**.

---

[1] The caption was updated after the dismissal of all claims between Plaintiffs/Counter-Defendants Goode and Goode Enterprise Solutions, Inc., and Defendants/Counter-Plaintiffs Kennedy and Youngblood. See Order [#150]. Because they are no longer parties, in this Recommendation, the Court refers to former defendant Leon Kennedy as Mr. Kennedy and former defendant Adrienne Youngblood as Ms. Youngblood.

2024 U.S. Dist. LEXIS 147009, *2

## I. Background

The following allegations are taken from the Second Amended Complaint [#32] and are accepted as true for purposes of the Motion for Default Judgment [#130]. *See United States v. Craighead, 176 F. App'x 922, 924-25 (10th Cir. 2006)* ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)*).

Plaintiff James Corey Goode ("Plaintiff Goode" or "Goode") is "an educational and motivational speaker, influencer, author and public figure" in the "Conscious Community." *Second Am. Compl.* [#32], ¶¶ 2, 12. Plaintiff Goode Enterprise Solutions, Inc., ("Plaintiff GES" or "GES") produces "educational, spiritual, health and entertainment goods and services geared toward the Conscious Community." *Id.*, ¶ 3. Plaintiff Goode is involved in the "Disclosure" movement, which is "geared towards bringing to light covert, clandestine and possibly harmful groups and ideas [*3] that control and contort mainstream media as well as bringing to the mainstream research evidence of interstellar travel and/or extraterrestrial existence." *Id.*, ¶¶ 19, 19 n.2. In June 2015, a television network, Gaia, approached Mr. Goode to star on a show called "Cosmic Disclosure." *Id.*, ¶ 20. While on the show, Mr. Goode "spoke about the testimony that he had been sharing and developing prior to his involvement with [Defendant, Mr. Kennedy, or Ms. Youngblood] regarding the Blue Avians™, 20 and Back™, and the SBA® ." *Id.*, ¶ 21.

In 2016, Plaintiff Goode met Defendant Roger Richards Ramsaur ("Defendant," "Richards," or "Defendant Ramsaur"), at an event in Mount Shasta, California. *Id.*, ¶ 24. They became friends and Defendant began volunteering with Goode. *Id.* Defendant soon became Goode's "right-hand man." *Id.*, ¶ 25. Plaintiff GES owns federal trademarks for "Blue Avians," "20 and Back," "Sphere Being Alliance," and "SBA." *Id.*, ¶¶ 35, 36.

In 2018, Goode decided not to renew his contract with Gaia, and he hired a media team headed by Defendant to work on a graphic novel as well as two movies, "Above Majestic", and "Cosmic Secret." *Id.*, ¶¶ 28-29, 60, 61. Plaintiffs allege that in Plaintiff [*4] Goode's and Defendant's time working together, the two "entered into numerous written and verbal agreements together, wherein [Defendant] agreed to perform certain duties or work for [Plaintiff] Goode and Goode either paid [Defendant] in cash and/or ownership interest in various entities and/or projects." *Id.*, ¶ 48.[2] Defendant was paid "in cash and/or ownership interest in various entities and/or projects (e.g., an entity called 'SBA Media Enterprise, LLC' hereafter 'SBA Media') for his performance of certain duties or work." *Id.* Plaintiffs allege that Defendant, and later Mr. Kennedy, was entrusted to oversee and manage production and distribution of the graphic novel, which was set to be finished and distributed in 2018. *Id.*, ¶ 49. In early 2019, Defendant sent Goode an email stating:

> I will be stepping down and away from all things SBA related [sic] permanently from here on out. I gift with gratitude all my work on the SBA slate for Tracy, Above Majestic Sequels, the Graphic Novel, SBA events, and The SSP Book to you Corey [sic]. You are free to develop as you wish and reap the rewards as you wish, they are yours now.

*Id.*, ¶ 39 (alterations in original). In an "open letter" posted [*5] on Facebook, Defendant stated, in part, that "[t]he idea of doing a Graphic Novel [sic] based on Coreys [sic] testimony was not my idea. I was asked to help organize the artist volunteers interested in participating." *Id.*, ¶ 46.

Setbacks associated with Defendant "using Graphic Novel funds to fund other projects of his own choosing" resulted in the postponement of the novel's release to 2019. *Id.*, ¶ 50. Goode met Mr. Kennedy around July 2018, and the latter also became involved with Plaintiffs' business dealings. *Id.*, ¶ 59 (alleging that Plaintiffs and Defendant "came to place their trust in [Mr.] Kennedy, handing over the reins of financial entities and any contract

---

[2] Although Plaintiffs broadly alleged the existence of contracts and breaches thereof, the District Judge found that "the [P]laintiffs' complaint does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform" and, therefore, the breach of contract claim was not well-pleaded. *See Order on Motion to Dismiss* [#117] at 6-7.

negotiations in reliance on his representations."). Mr. Kennedy became a point of contact between Goode and "The Orchard," a production company that entered a contract with Goode related to his movies, "Above Majestic" and "Cosmic Secret." *Id.*, ¶ 60.

While the graphic novel was in production, Plaintiff Goode was responsible for guiding the story, creating the characters, producing the drawings—all the "creative" aspects of the graphic novel. *Id.*, ¶ 67-68. "At one point, [Mr.] Kennedy and [Defendant] **[*6]** agreed to take over the finalization of the Graphic Novel and Above Majestic," which included the management of funds. *Id.*, ¶ 69. Defendant was responsible for the receipt of revenue from presales of the graphic novel, which "still remains to be finalized." *Id.*, ¶¶ 70, 71. Mr. Kennedy was involved in managing finances for the movie "Cosmic Street" and in distributing royalties for the movie "Above Majestic." *Id.*, ¶ 72. Mr. Kennedy allegedly used his connections with the Orchard to swindle hundreds of thousands of dollars from Plaintiff Goode and investors. *Id.*, ¶ 74.

Goode created the outline for "Cosmic Secret" based on his own intellectual property, Mr. Kennedy took the outline and gave it to Defendant, and Defendant "subsequently claimed that [he] directed Cosmic Secret when the agreement actually was that Goode and Richards were co-directors." *Id.*, ¶ 76. Defendant allegedly "misrepresented the contents of a contract for a movie deal he was negotiating on behalf of [Plaintiff] Goode and inserted himself—secretly—as IP owner." *Id.*, ¶ 77. Due to the fund mismanagement and Mr. Kennedy's and Defendant's abrupt departure, the graphic novel "has yet to be finished or distributed" and Plaintiff **[*7]** Goode must now fund the project on his own. *Id.*, ¶ 78. Plaintiff Goode alleges that he and his businesses have suffered reputational harm due to these issues with the graphic novel. *Id.*, ¶ 80.

Separately, Plaintiffs allege that Plaintiff Goode invested $15,000 in Ms. Youngblood's cannabis farm to support her planned project to start growing hemp. *Id.*, ¶¶ 85-86. Defendant's alleged role in this project was minimal. Specifically, Defendant and Youngblood allegedly "withheld any info about the status of the crops" and told Plaintiff and Mrs. Goode "that the whole hemp crop in which they invested died of a disease." *Id.*, ¶¶ 87, 90.

Plaintiffs allege that Mr. Kennedy and Defendant "commingled funds meant to be separated for Above Majestic, the Graphic Novel, and Cosmic Secret." *Id.*, ¶ 102. They allege that Mr. Kennedy and Defendant "engaged in shoddy management of sending the DVDs for Above Majestic and Cosmic Secret" and "[shoddy] management of various websites connected to any of the herein-described projects." *Id.*, ¶¶ 103-04. Plaintiffs also allege that Defendant, Mr. Kennedy, and Ms. Youngblood "have made claims against [Plaintiff Goode] that accuse him of crimes such as fraud and improperly **[*8]** disseminating others' information." *Id.*, ¶ 107. Mr. Kennedy and Defendant allegedly have sent Goode, his associates, and his counsel threatening emails. *Id.*, ¶ 108. Allegedly, Mr. Kennedy and Defendant continue to use their protected trademarks despite not being in a business relationship and lacking authorization. *Id.*, ¶ 110. When Kennedy and Richards send DVDs to customers, they allegedly use "SBA®￼" in their email address and mailing address. *Id.*, ¶ 111. Plaintiffs allege that the shoddy quality of those "packages" has "tarnished and harmed Goode's goodwill and image." *Id.*, ¶ 112. They further allege that Defendant, Mr. Kennedy, and Ms. Youngblood owe Plaintiff Goode money that they refuse to pay back. *Id.*, ¶ 113.

Finally, Plaintiffs attached four Exhibits to the prior amended complaint, which they impermissibly incorporate by reference in the operative Complaint [#32]: their Registered Trademarks for "Sphere Being Alliance" and "SBA," *Registered Marks* [#7-1]; the Trademark Application for "Dimensions of Disclosure," *Trademark Application* [#7-2]; a photo of alleged "shoddy" DVD package *Photograph* [#7-3]; and a screenshot of alleged shoddy "management of various websites," *Screenshot* **[*9]** [#7-4]. Pursuant to *D.C.COLO.LCivR 15.1(b)*, "[u]nless otherwise ordered, a proposed amended pleading "shall not incorporate by reference any part of the preceding, including exhibits[.]" When Plaintiffs sought leave to file the operative Complaint [#32], they did not identify any exhibits from their prior pleading which they sought to incorporate by reference. *See Consent Motion to File Second Amend. Compl.* [#29]. Further, the Order granting the Consent Motion did not grant Plaintiffs permission to incorporate by reference any previously filed exhibits. *See Order* [#30]. Accordingly, the Court declines to consider Plaintiffs' exhibits.

**II. Analysis**

2024 U.S. Dist. LEXIS 147009, *9

## A. Jurisdiction

### 1. Personal Jurisdiction

The Court may not enter default judgment without personal jurisdiction over the defendant. *Bixler v. Foster, 596 F.3d 751, 761 (10th Cir. 2010)* (citing *Hukill v. Okla. Native Am. Domestic Violence Coal., 542 F.3d 794, 797 (10th Cir. 2008)*). "[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. F.D.I.C., 969 F.2d 940, 943 (10th Cir. 1992)*. Thus, "[d]efault judgments are void if entered by a district court without personal jurisdiction" and "district courts cannot obtain personal jurisdiction without proper service." *Doran Law Office v. Stonehouse Rentals, Inc., 678 F. App'x 733, 735 (10th Cir. 2017)* (citing *United States v. Bigford, 365 F.3d 859, 865 (10th Cir. 2004)*; *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)*).

On July 19, 2020, Plaintiffs filed a Waiver **[\*10]** of Service [#17] on Defendant Ramsaur, who was represented by counsel at the time. The waiver was signed by counsel Christian B. Clark, on Defendant's behalf. *See Waiver of Service* [#17]. On October 2, 2020, Defendants filed a motion to dismiss Plaintiffs' breach of contract claim, which the Court granted. *Motion to Dismiss* [#34] at 12; *Order* [#117] at 1, 7 (granting motion). While the Motion to Dismiss [#34] was pending, on November 29, 2022, Defendant's counsel moved to withdraw from representation. *Motion to be Relieved as Counsel* [#84]. They asserted a breakdown of communication and provided Defendant's last known address and contact information. *Id.* at 1-2.

While "waiving service of a summons does not waive any objection to personal jurisdiction or venue," a party voluntarily submits to the Court's jurisdiction "by appearing before this Court and filing motions without raising the defense of insufficient service." *Fed. R. Civ. P. 4(d)(5)*; *United States v. Heijnen, 376 F. Supp. 2d 1193, 1194 (D.N.M. 2005)*. Here, Defendant's "attorney appeared on [his] behalf in filing the motion to dismiss," and "voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court." *Hopper v. Wyant, 502 F. App'x 790, 792 (10th Cir. 2012)* (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)*). Here, the Court finds that it has personal **[\*11]** jurisdiction over Defendant because he voluntarily appeared through counsel. *Id.*; *see Motion to Dismiss* [#34].

### 2. Subject Matter Jurisdiction

The Court must also have subject matter jurisdiction before it may enter default judgment. *See Villanueva v. Account Discovery Sys., Inc., 77 F. Supp. 3d 1058, 1067 (D. Colo. 2015)* (citing *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997)*; *Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1986)*). Federal district courts have original jurisdiction over civil actions arising under federal law. *28 U.S.C. § 1331*. Here, Plaintiffs' claims include trademark infringement and false designation of origin under the *Lanham Act, 15 U.S.C. §§ 1114*, *1125*. *Second Am. Compl.* [#32], ¶¶ 116-149. A claim under the Lanham Act falls within the Court's federal question subject matter jurisdiction. *See, e.g., Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 965 (10th Cir. 1996)* (holding that "the district court had federal question jurisdiction over [a] declaratory judgment action" that was premised on *section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1)*).

As for Plaintiffs' state law claims, "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-65, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997)* (collecting cases). Here, Plaintiffs' federal and Colorado claims arise from common facts, **[\*12]** i.e., the deterioration of the business relationship between Plaintiffs and Defendant. *See Second Am.*

2024 U.S. Dist. LEXIS 147009, *12

Compl. [#32], ¶¶ 61-114. The Court finds that these claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Court is satisfied that it has subject matter jurisdiction over all of Plaintiffs' claims.


**B. Entry of Default**

The Court also considers whether default was properly entered against Defendant. *See, e.g.,* Topp v. Lone Tree Ath. Club, Inc., No. 13-cv-01645-WYD-KLM, 2014 U.S. Dist. LEXIS 95985, 2014 WL 3509201, at *4 (D. Colo. July 15, 2014). Fed. R. Civ. P. 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." When a defendant files a Rule 12 motion instead of an answer, the period to respond is altered to 14 days after the Court rules on the motion. Strobel v. Rusch, No. CIV 18-0656 RB/JFR, 2020 U.S. Dist. LEXIS 121589, 2020 WL 3893071, at *2 (D.N.M. July 10, 2020) ("Though no appellate case appears to address whether all responsive pleadings are tolled when only a partial motion to dismiss is filed, district courts are in clear alignment on the matter.") (collecting cases); *Kent v. Geren*, No. 07-cv-02202-ZLW-MJW, 2008 WL 150060, at *1 (D. Colo. Jan. 11, 2008) (holding that filing of a partial Rule 12 motion tolled the responsive pleading deadline until notice of the court's action **[*13]** on that motion). Default may be entered "if [a] defendant fails to appear after being properly served with [an] [a]mended [c]omplaint." Williams v. Cutting Edge Hairstyling, No. 10-2174-CM-DJW, 2010 U.S. Dist. LEXIS 105375, 2010 WL 3908608, at *2 (D. Kan. Oct. 1, 2010).

Here, Plaintiffs were given leave file a Second Amended Complaint by September 29, 2020, and the Court set October 6, 2020, as Defendants' response deadline. *Order* [#30]; *Second Am. Compl.* [#32]. In lieu of filing an answer, on October 2, 2020, Defendants filed a Motion to Dismiss under Rule 12(b)(6), which sought to dismiss the breach of contract claim. *See generally Motion to Dismiss* [#34]. On September 30, 2023, the Court granted Defendants' Motion to Dismiss and dismissed Plaintiffs' breach of contract claim. *See Order Granting Motion to Dismiss* [#117]. Therefore, Defendant's deadline to file a responsive pleading was 14 days later, or October 14, 2023. While Ms. Youngblood and Mr. Kennedy timely filed an answer, Defendant Ramsaur did not. *See Defendants Youngblood and Kennedy Answer* [#119]. On November 7, 2023, Plaintiffs moved for entry of default and, on November 8, 2023, the Clerk of Court entered default. *See Motion for Entry of Default* [#126]; *Clerk's Entry of Default* [#127]. Defendant Ramsaur never responded to the Second Amended Complaint [#32], nor **[*14]** has he appeared in this matter since his counsel withdrew. Therefore, the Court finds that entry of default against Defendant was proper.


**C. Default Judgment**

A trial court has discretion to enter default judgment; a party is not entitled to it as of right. *Purzel Video GmbH v. Martinez, 13 F. Supp. 3d 1140, 1148-49 (D. Colo. 2014)*.

By his default, Defendant has admitted Plaintiff's well-pleaded allegations of fact. United States v. Craighead, 176 F. App'x 922, 924 (10th Cir. 2006). However, "a party in default does not admit mere conclusions of law." Bixler, 596 F.3d at 762 (citation omitted). The plaintiff still must plead sufficient factual allegations to establish the defendant's liability, and "[t]here must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co., 515 F.2d at 1206 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment); *see also* Topp, 2014 U.S. Dist. LEXIS 95985, 2014 WL 3509201, at *5-*10 (adopting recommendation to deny motion for default judgment where the plaintiff failed to "provide the necessary factual details to support" his Fair Labor Standards Act claim). Where plaintiffs' claims are barred or subject to dismissal under Rule 12(b)(6), the district court may exercise its discretion to deny default judgment. Bixler, 596 F.3d at 762.

Under Rule 12(b)(6), "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint **[*15]** suffice if it tenders naked assertions devoid of further

factual enhancement." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. The Court must disregard conclusory allegations. *Matney v. Barrick Gold of N. Am., 80 F.4th 1136, 1144-45 (10th Cir. 2023)*. Conclusory allegations are those "in which an inference is asserted without 'stating underlying facts' or including 'any factual enhancement.'" *Id. at 1144* (quoting *Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021)*). The Court may not enter default judgment where a complaint fails to satisfy the elements of the asserted claims or otherwise fails to state a cognizable claim, whether through well-pleaded allegations or supporting documents. *Day v. Career Bldg. Acad., No. 18-cv-00837-RM-KMT, 2021 U.S. Dist. LEXIS 50965, 2021 WL 1723777, at *2 (D. Colo. Mar. 18, 2021)*.

Finally, the amount of damages must be ascertained before a court may enter default judgment. *Herzfeld v. Parker, 100 F.R.D. 770, 773 (D. Colo. 1984)* (citing 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2692 (1983)). A court "may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment" it needs to determine the amount of damages or establish the truth of any allegation by evidence. *Fed. R. Civ. P. 55(b)(2)(B)-(C)*.

Here, Plaintiffs' claims against Defendant are: federal trademark infringement under *15 U.S.C. § 1114*, *1125(a)*; false designation of origin and federal unfair competition under *15 U.S.C. § 1125*; trademark counterfeiting under *15 U.S.C. § 1114*; common law trademark and trade name infringement under Colorado law; common law unfair competition under Colorado law; violations of the Colorado **[*16]** Consumer Protection Act; slander per se; libel per se; tortious interference with business expectancy; breach of fiduciary duty; and embezzlement and fraudulent procurement of company funds. *See Second Am. Compl.* [#32], ¶¶116-69; 177-198.[3] Because none of these claims is plausibly pleaded as to Defendant, as discussed below, the Court **recommends** that the Motion [#130] be **denied without prejudice**.

## D. Plaintiffs' Causes of Action

As an initial matter, the Court notes that the diffuse and lengthy Complaint [#32] lacks a timeline of the relevant events and contains vague and conclusory allegations. Therefore, several of Plaintiffs' allegations are not entitled to the assumption of truth. *See Matney, 80 F.4th at 1144-45*.

Plaintiffs' conclusory allegations include that: (1) Defendant and Mr. Kennedy exercised their authority over the finances to embezzle funds for their own use; (2) Defendant and Mr. Kennedy owed Plaintiffs a fiduciary duty and breached that duty; (3) Defendant, Mr. Kennedy, and Ms. Youngblood "engaged in defaming activities" against Plaintiff Goode and his associates; (4) Defendant and Mr. Kennedy sent Plaintiff "emails **[*17]** containing threats that amount to extortion"; (6) Defendant, Mr. Kennedy, and Ms. Youngblood "have gone behind [Plaintiff] Goode's back to various entities and individuals to defame and tarnish his name"; (7) Defendant, Mr. Kennedy, and Ms. Youngblood "wrongfully and illegally" used his trademarks; (8) Defendant, Mr. Kennedy, and Ms. Youngblood "have made false representations, false descriptions, and false designations of origin regarding Defendants and Defendants' goods or services in violation of *15 U.S.C. § 1125(a)*"; (9) Defendant and Mr. Kennedy's acts "constitute trademark counterfeiting in violation of Section 32 of the Lanham Act"; (10) Defendant, Mr. Kennedy, and Ms. Youngblood have "engaged in deceptive trade practices"; and (11) that Defendant and Mr. Kennedy covertly took funds and placed them in their own accounts and accounts of others in violation of *C.R.S. § 18-4-405*. *Second Am. Compl.* [#32], ¶¶ 73, 81-82, 106, 108, 114, 124-25, 138, 162, 192-93, 197.

---

[3] Plaintiffs' claims are inconsistently numbered in the operative complaint. *See, e.g., Second Am. Compl.* [#32] at ¶¶ 153-54 ("V. Claim IV: Colorado Common Law Unfair Competition"), ¶¶ 194-95 ("XII. Claim XV: Embezzlement and Fraudulent Procurement of Company Funds"). Accordingly, in this Recommendation, the Court refers to Plaintiffs' claims by the number in which they appear, rather than the "Claim #" description used by Plaintiffs. Thus, for example, "Embezzlement and Fraudulent Procurement of Company Funds" is "Claim Twelve," not "Claim XV". Moreover, Plaintiffs' Claim Seven, Breach of Contract, has been dismissed with prejudice. *Second Am. Compl.* [#32], ¶¶ 170-76; *Order on Motion to Dismiss* [#117] at 7-8. Additionally, Claim Thirteen, Declaratory Judgments of Ownership of DoD Trademarks, was asserted only against Ms. Youngblood. *Second Am. Compl.* [#32], ¶¶ 199-202.

2024 U.S. Dist. LEXIS 147009, *17

While Plaintiffs were not required to plead any specific facts, "there are certain details the Plaintiff[s] should know and could properly plead to satisfy the plausibility requirement." *Khalik v. United Air Lines, 671 F.3d 1188, 1194 (10th Cir. 2012)* (finding inadequate pleading rendered claims implausible and affirming dismissal). For example, **[*18]** Plaintiffs should be able to identify at least some products, emails, and social media messages Defendant disseminated bearing Plaintiffs' trademarks and when those products and communications were sent. Plaintiffs should know when the business relationship with Defendant ended, and when Defendant's authorization to use their marks ended. Plaintiffs should know which of their marks Defendant continues to use, and on what products or services that use continues. Plaintiffs should know what allegedly defamatory statements Defendant made about them, when, and to whom, especially if they were publicly posted on social media. Plaintiffs should know what Defendant said in his threatening "email to [Plaintiff] Goode at the beginning of this year." *Second Am. Compl.* [#32], ¶ 180. Plaintiffs should know which "interested business investors" were actual or prospective business contacts. Plaintiffs should be able to describe how Defendant mishandled company funds, even if they do not know the exact details. Most importantly, Plaintiffs should be able to distinguish between Defendant's conduct and that of Mr. Kennedy or Ms. Youngblood. The Court does not necessarily require all the above facts, **[*19]** but more detail is needed to render Plaintiffs' claims plausible. *Khalik, 671 F.3d at 1194*; *see also Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007)* ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff beliefs the defendant violated.").

### 1. Federal Trademark Infringement, *15 U.S.C. § 1114* (Claim One)

Plaintiffs assert that Defendant committed federal trademark infringement in violation of *15 U.S.C. §§ 1114*. *Second Am. Compl.* [#32], ¶¶ 116-149. The Lanham Act protects both trademarks and service marks. *1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1238 (10th Cir. 2013)*. A trademark is "any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *15 U.S.C. § 1127*. A service mark is similar except that it is used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, **[*20]** even if that source is unknown." *Id.* "Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor." *Id.*

*Section 32 of the Lanham Act, 15 U.S.C. § 1114*, prohibits the unauthorized "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which use "is likely to cause confusion, or to cause mistake, or to deceive[.]" *15 U.S.C. § 1114(1)*. To state an actionable trademark infringement claim, Plaintiffs must plausibly allege: (1) the marks are valid and protectable; (2) Defendant used the mark in commerce without consent; and (3) Defendant's use is likely to cause confusion. *Atlas Biologicals Inc. v. Kutrubes, No. 15-cv-00355-CMA-KMT, 2019 U.S. Dist. LEXIS 161501, 2019 WL 4594274, at *6 (D. Colo. Sept. 23, 2019.*

#### a. Trademark Allegations

Plaintiffs rely on the same allegations in support of their Claim One (Federal Trademark Infringement), Claim Two (False Designation of Origin and Federal Unfair Competition), Claim Three (Trademark Counterfeiting), Claim Four (Colorado Common Law Trademark and Trade Name Infringement), and Claim Five (Colorado Common Law Unfair Competition), *see, e.g., Second Am. Compl* **[*21]** . [#32], ¶¶ 151, 155 (both claims "premised upon the same facts and circumstances laid out in claims I-III"). The Court discusses them in detail here.

Plaintiffs allege that:

• Mr. "Kennedy and [Defendant] continue to use Goode's protected 'SBA®' and 'Sphere Being Alliance ®' trademarks and pending 'Blue Avians™ ' and '20 and Back™ ' trademarks although they are no longer in a business relationship [with] Goode and therefor [sic] are not authorized to do so."

*Second Am. Compl.* [#32], ¶ 110.

• Defendant and "[Mr.] Kennedy wrongfully and illegally made use of GES Marks by wrongfully and illegally continuing to use GES marks even though they are no longer affiliated with [Plaintiffs] Goode or GES. These activities were carried out without [Plaintiffs'] consent or knowledge up until the recent discovery of such activities."

*Id.*, ¶ 124.

• Defendant and Mr. Kennedy "send existing and prospective Goode customers numerous emails and social media messages and marketing which represented that their products or services were offered under GES Marks when in fact they are not."

*Id.*, ¶ 128.

• "[W]hen [Mr.] Kennedy and [Defendant] send out DVDs to customers and followers of Goode that have purchased his 'Above **[*22]** Majestic' movie[,] they do so by using 'SBA®' in their email address and mailing address."

*Id.*, ¶ 111.

• Defendant and Mr. Kennedy "have engaged in shoddy management of sending the DVD's" for Plaintiff Goode's movies, *Above Majestic* and *Cosmic Secret* and have poorly managed of various websites.

*Id.*, ¶ 104.


**b. Plausibility**

The Court focuses on the second element of Plaintiff's trademark infringement claim: unauthorized use of the mark. Because Plaintiffs' claim fails on that element, the Court declines to address the other two elements: the marks' validity and protectability (first element) and likelihood of consumer confusion (third element).

Plaintiffs fail to plead the most basic details of allegedly unauthorized use of their marks. Nearly all allegations are collectively aimed at "[Mr.] Kennedy and [Defendant] Richards." Though the Amended Complaint [#32] renders unclear the nature and duration of Plaintiffs' and Defendant's former business agreement, at one time, Defendant allegedly held an *ownership interest* in Goode's media company, SBA Media, and related projects; was empowered to negotiate deals on Goode's behalf; and agreed to manage funding for Plaintiffs' projects. *See Second* **[*23]** *Am. Compl.* [#32], ¶¶ 48, 69, 77. Further, Defendant allegedly received "royalties" and "ownership interests" from his work with Goode and SBA Media. *Id.*, ¶ 81. Though the Complaint articulates that Defendant, Mr. Kennedy, and Plaintiffs are "no longer in a business relationship," *see id.*, ¶ 110, the Complaint renders unclear whether, upon the business relationship's dissolution, Defendant relinquished all ownership interests he acquired.

Additionally, Plaintiffs' trademark infringement claim rests on threadbare allegations regarding unauthorized trademark use. Allegedly, Defendant and Mr. Kennedy have sent DVDs to "customers and followers of Goode" while "using 'SBA®' in their email address and mailing address." *Id.*, ¶¶ 110-11. Yet Plaintiffs' own allegations establish that Defendant *acquired an ownership interest* in Goode's media company, SBA Media. *Id.*, ¶ 48 (Plaintiffs "paid [Defendant] in cash and/or ownership interest in various entities and/or projects," including SBA Media), ¶ 81 ("[Defendant] and [Mr.] Kennedy agreed [to manage and control certain projects, manage finances, and maintain confidential information] in exchange for . . . pay, royalties and/or ownership interests"). **[*24]** Thus, Plaintiffs' allegations encompass a wide swath of conduct, including conduct commensurate with any ownership interests Defendant may have retained post-dissolution.

2024 U.S. Dist. LEXIS 147009, *24

Plaintiffs' trademark infringement claim is also implausible to the extent it rests on Defendant's continued use of Plaintiffs' mark(s) after termination of a contract that conveyed a trademark license. As the District Judge noted in his Order dismissing Plaintiffs' breach of contract claim, the Complaint "does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform. And in the absence of such factual averments, [the Complaint] fails to nudge [the] breach-of-contract claim across the line from conceivable to plausible." *Order Granting Motion to Dismiss Breach-of-Contract Claim* [#117] at 6 (internal citations and quotation marks omitted). Put differently, Plaintiffs have not plausibly alleged "a proper termination of the instrument which grants [Defendant] the right to use of a mark." *Steak n Shake Enters., Inc., v. Globex Co., LLC, No. 13-cv-01751-RM-CBS, 2013 U.S. Dist. LEXIS 125330, 2013 WL 4718757, at *8 (D. Colo. Sept. 3, 2013)* (preliminarily enjoining use of trademarks and tradenames upon a showing of a properly terminated franchise agreement, among **[*25]** other findings). In sum, Plaintiffs' claim falls to the extent it sits on the phantom foundation of an implausible breach of contract claim.

Based on the foregoing, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim One (Federal Trademark Infringement under *15 U.S.C. §§ 1114* and *1125(a)*).

### 2. False Designation of Origin and Unfair Competition, *15 U.S.C. § 1125* (Claim Two)

Section 43 of the Lanham Act, or the federal unfair competition law, provides for two distinct causes of action for unfair competition: (1) false designation of origin; and (2) false description or representation, known as false advertising. *Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1252 n.3 (10th Cir. 1999)*; *see also 15 U.S.C. § 1125*.

Specifically, § 43(a) of the Lanham Act, prohibits the unauthorized use
in commerce any word, term, name, symbol, or device, or . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of . . . [the] goods, services, or commercial activities[.]

*15 U.S.C. § 1125(a)(1)(A)*.

Section 43(a)'s protection extends to unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)* ("Section 43(a) prohibits a broader range of practices than does § 32, which applies **[*26]** to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks[.]") (internal citation and quotation marks omitted).

Here, Plaintiffs' unfair competition claim is premised on false designations of origin *and* false descriptions. *See Second Am. Compl.* [#32], ¶ 138 (broadly alleging, "Defendants' have made false representations, false descriptions and false designations of origin regarding Defendants and Defendants' goods or services in violation of *15 U.S.C. § 1125(a)*").

A false designation of origin claim may take one of two forms: "'passing off,' where a party represents his or her *own* goods or services as someone else's or 'reverse passing off,' where a party misrepresents *someone else's* goods or services as his or her own." *John Bean Techs. Corp. v. B GSE Group, LLC, 480 F. Supp. 3d 1274, 1303-04 (D. Utah 2020)* (emphases in original). Plaintiffs do not explicitly state which form of false designation of origin they are alleging. They claim that "Defendants" have "made repeated representations about the source, origin, and nature of Defendants' products that have created the false and misleading impression that Defendants' goods or services are" created or authorized by Plaintiffs. *Second Am. Compl.* [#32], ¶ 137; *see also id.*, ¶ 138.

To state an actionable **[*27]** false description or false designation claim under § 43(a) of the Lanham Act, Plaintiffs must plausibly allege: (1) that their mark(s) qualify for protection; (2) Defendant used a false designation of origin or false description or representation in connection with goods or services; (3) the goods or services entered interstate commerce; (4) Plaintiffs were damaged by the use of such false description; and (5) the false description or

2024 U.S. Dist. LEXIS 147009, *27

representation was likely to cause confusion. *Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 442 F. Supp. 2d 1160, 1168 (D. Kan. 2006)*.

Plaintiffs rely on the same allegations discussed by the Court in connection with their conclusory federal trademark infringement claim. To the extent that Plaintiffs' claim rests on Defendant's and Mr. Kennedy's use of the mark "SBA" in their email and mailing addresses when fulfilling customer orders, *see, e.g.*, [#32], ¶ 111, Plaintiffs have not adequately alleged how Defendant's actions falsely designate origin, falsely or misleadingly describe or represent facts in a way that would confuse consumers about designation of origin or association as proscribed by *15 U.S.C. § 1125(a)(1)*—especially when Defendant had received an ownership interest.

Finally, the failure to plausibly allege that Defendant made unauthorized use of Plaintiffs' marks is fatal **[*28]** to this claim: "The Lanham Act proscribes advertisements which mislead the public into believing that the trademark owner has sponsored, endorsed or authorized the use of the mark or that the owner is otherwise connected or affiliated with the infringer's product." *Paramount Pictures Corp. v Video Broad. Sys., Inc., 724 F. Supp. 808, 814 (D. Kan. 1989)* (citations omitted). Where the trademark owner has authorized the use of his mark and where he is connected or affiliated with the product, the public is not misled by the mark's use.

Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Two (False Designation of Origin and Federal Unfair Competition under *15 U.S.C. § 1125*).

### 3. Trademark Counterfeiting, *15 U.S.C. § 1114* (Claim Three)

To state an actionable trademark counterfeiting claim under the Lanham Act, Plaintiffs must plausibly allege that (1) Defendant infringed a registered trademark in violation of *15 U.S.C. § 1114*; and (2) Defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in *15 U.S.C. § 1116*. *Oakley, Inc. v. Ly, No. 20-cv-1414-WJM-MEH, 2021 U.S. Dist. LEXIS 141462, 2021 WL 3206320, at *2 (D. Colo. July 29, 2021)* (citing *Otter Prods., LLC v. Fisch Enter. Inc., No. 19-cv-00030-CMA-KLM, 2019 U.S. Dist. LEXIS 223537, 2019 WL 7290937, at *4 (D. Colo. Oct. 3, 2019)*). A "counterfeit mark" is defined as "(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether **[*29]** or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available[.]" *15 U.S.C. § 1116(d)(1)(B)*.

Because the first element of trademark counterfeiting requires that "the defendant infringed a registered trademark in violation of *15 U.S.C. § 1114*," Plaintiffs' failure to plausibly plead infringement means that they have also failed to plausibly plead trademark counterfeiting. For reasons previously discussed, even accepting all well-pleaded facts as true, the Court cannot infer that Defendant's use of the marks, including the SBA mark in his email, was unauthorized or infringing. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Three (Trademark Counterfeiting - *15 U.S.C. § 1114*).

### 4. Colorado Common Law Trademark and Trade Name Infringement

Plaintiffs allege that Defendant has engaged in common law trademark and trade name infringement under Colorado law, "premised upon the same facts and circumstances laid out in Claims [One]-[Three]." *Second Am. Compl.* [#32], ¶ 151.

"The elements of common law trademark or service **[*30]** mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez v. Coors Brewing Co., 392 F.3d 1211, 1219 (10th Cir. 2004)*. Thus, Plaintiffs must adequately allege (1) a protectable interest in their mark(s); (2) Defendant's use of that mark in commerce; and (3) the likelihood of consumer confusion. *Id.*

2024 U.S. Dist. LEXIS 147009, *30

In Colorado, a claim of unfair competition regarding a similar trade name requires a plaintiff to adequately allege "(1) its name has acquired a secondary meaning and (2) the defendant has unfairly used the name, or a simulation of it, against the plaintiff." *Your True Nature, Inc., v. JF Show Store, No. 23-cv-00107-CNS-NRN, 2023 U.S. Dist. LEXIS 38229, 2023 WL 2359234, at *2 (D. Colo. Feb. 14, 2023)* (citing *Gregg Homes, Inc. v. Gregg & Co. Builders, 978 P.2d 146, 147 (Colo. App. 1998)*). "Secondary meaning" is "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc., 805 F. Supp. 2d 1115, 1124 (D. Colo. 2011)* (citation omitted). "[T]he use of the same or a similar name can constitute unfair competition 'if the public is likely to be deceived by its use.'" *Your True Nature, Inc., 2023 U.S. Dist. LEXIS 38229, 2023 WL 2359234, at *2* (quoting *Gregg Homes, Inc., 978 P.2d at 147*).

Here, Plaintiffs premise Claim Four on the same allegations underlying their first three claims. *Second Am. Compl.* [#32], ¶ 151. With respect to the common law trademark infringement claim, the Court finds—for the same reasons as with Claims One, Two, and Three above—that **[*31]** Plaintiffs have failed to plausibly allege Defendant's unauthorized or unfair use of their marks and, therefore, they have failed to plausibly allege that Defendant's use caused consumer confusion, i.e., the third element of this claim. As for trade name infringement, Plaintiffs simply point to Defendant's use of the SBA mark in email addresses or mailing addresses, which the Court cannot infer was an unauthorized use, given Plaintiffs' allegation that Defendant has (or had) an ownership interest in SBA Media. *Second Am. Compl.* [#32], ¶ 111. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Four (Colorado Common Law Trademark and Trade Name Infringement).

## 5. Colorado Common Law Unfair Competition (Claim Five)

Plaintiffs' Colorado common law unfair competition claim is "premised upon the same facts and circumstances laid out in Claims [One]-[Three]." *Second Am. Compl.* [#32], ¶ 155. They broadly allege that

> Defendants have made unauthorized and infringing use of [Plaintiff] Goode's trademarks and trade names, wrongfully and illegally took control of Goode's content causing Goode's information and favorable social media content to be associated **[*32]** with Defendants', clearly intending to benefit from the reputation and goodwill residing in Goode's, utilized Defendants' position as advisor and/or colleague to gain access to Goode's existing and prospective customers with the intent of and undertaking actions and deceptive communications to create confusion and misperception and thereby diverting their business to Defendants.

*Id.*, ¶ 156. Plaintiffs point to no supporting factual allegations.

Because Plaintiffs rely on the same allegations underlying their federal trademark claims—which were conclusory, deficient, and implausible—the Court cannot infer that Defendant used Plaintiffs' marks without authorization or that he passed off goods (such as DVDs) as his own. Plaintiffs have not plausibly alleged that Defendant has used their names against them—at most, they have alleged that Defendant has used the SBA mark in an email address or mailing address. *Second Am. Compl.* [#32], ¶ 104. Similarly, the Court does not find that Plaintiffs have plausibly alleged that any customers or followers are likely to be confused or deceived. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Plaintiffs' Claim **[*33]** Five (Colorado Common Law Unfair Competition).

## 6. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 (Claim Six)

To pursue a private cause of action under the *Colorado Consumer Protection Act (the "CCPA"), Colo. Rev. Stat. § 6-1-101 et seq.*, Plaintiffs must show (1) that Defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of Defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of Defendant's goods, services, or property; (4) that Plaintiffs suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused Plaintiffs'

2024 U.S. Dist. LEXIS 147009, *33

injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003)* (citing *Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998)*).

"Where the alleged deceptive trade practice sounds in fraud, allegations as to fraudulent statements must be pled with particularity, as required by *Fed. R. Civ. P. 9(b)*." *See, e.g., Martinez v. Nash Finch Co., 886 F. Supp. 2d 1212, 1216-17 (D. Colo. 2012)* (applying *Rule 9(b)* specificity requirements to the plaintiffs' CCPA claims of deception regarding grocery store prices); *Hauschild GMBH & Co. KG v. FlackTek, Inc., No. 20-cv-02532-PAB-STV, 2022 U.S. Dist. LEXIS 23385, 2022 WL 392501, at *10 (D. Colo. Feb. 9, 2022)* (applying same regarding CCPA claims arising from false representation as to "the source, sponsorship, or approval of [the] defendants' products and defendants' affiliation with [the] plaintiff"). This means that the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false **[*34]** statements, and the consequences thereof." *Hauschild GMBH, 2022 U.S. Dist. LEXIS 23385, 2022 WL 392501, at *10* (quoting *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc., 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011)*).

Here, Plaintiffs' CCPA claim is not pleaded with specificity. As to Defendant, Plaintiffs rely on the allegation of "[Defendant] and [Mr.] Kennedy's misuse of the [Plaintiffs'] GES marks in connection with entertainment services and products such as DVDs." *Second Am. Compl.* [#32], ¶ 162. Elsewhere, Plaintiffs allege that Defendant and Mr. Kennedy illegally used the GES marks by "continuing to use GES marks even though they are no longer affiliated with [Plaintiffs] Goode or GES," and they "send existing and prospective Goode customers numerous emails and social media messages and marketing which represented that their products or services were offered under GES Marks when in fact they are not." *Id.*, ¶¶ 124, 128. Plaintiffs further allege that "[Defendant] and [Mr.] Kennedy are both in the entertainment market and have used the GES Marks to sell movies and/or graphic novels[.]" *Id.*, ¶ 136.

None of the Complaint's allegations provide the required "time, place and contents of the false representation" which underlies the alleged unfair or deceptive trade practice. *Hauschild GMBH, 2022 U.S. Dist. LEXIS 23385, 2022 WL 392501, at *10*; *HealthONE, 805 F. Supp. 2d at 1121*. The Complaint renders unclear what "misuse of the GES marks" Defendant **[*35]** allegedly engaged in, and Plaintiffs therefore also fail to plausibly allege that this misuse had a significant public impact. *Hauschild GMBH, 2022 U.S. Dist. LEXIS 23385, 2022 WL 392501, at *10* ("All elements of a CCPA claim must be pled; otherwise, the claim fails as a matter of law.") (citing *HealthONE, 805 F. Supp. 2d at 1120*). Also, because Defendant and Mr. Kennedy are linked together in the relevant allegations, the Complaint is unclear as to what acts (if any) are attributable to Defendant and what acts (if any) are attributable to Mr. Kennedy. *Second Am. Compl.* [#32], ¶¶ 124, 128, 136, 162.

Finally, Plaintiffs' allegations concerning damages related to the alleged CCPA violation are also inadequate. While Plaintiffs allege that "[s]pecifically, [Plaintiff] Goode has lost hundreds of thousands of dollars through lost revenue from DoD [Dimensions of Disclosure] and the Graphic Novel" and has lost "tens of thousands of dollars in lost revenue and out of pocket costs" due to Defendant's and Kennedy's use of "the GES Marks to sell movies and/or graphic novels," *id.*, ¶¶ 136, 168, the allegations related to DoD do not even mention this Defendant. *Id.*, ¶ 162 (alleging that the "deceptive trade practices in the course of business in violation of [the CCPA] . . . was accomplished through **[*36]** [Ms.] Youngblood's misattribution of the DOD mark in connection with conferences"). Moreover, to the extent that the lost revenue stems from delays in the Graphic Novel's publication, those delays were *unrelated* to any alleged "misuse of the GES marks in connection with entertainment services and products such as DVDs." *Second Am. Compl.* [#32], ¶¶ 50 (alleging delays related to funding issues), 162, 168. By linking their alleged damages to conduct other than the allegedly deceptive trade practices, Plaintiffs have failed to plausibly plead actual damages caused by alleged deceptive trade practices. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Six (Colorado Consumer Protection Act).


## 7. Slander Per Se and Libel Per Se (Claims Eight and Nine)

Plaintiffs allege that Defendant has engaged in both slander per se (Claim Eight) and libel per se (Claim Nine). *Second Am. Compl.* [#32], ¶¶ 177-86. Libel (usually written communication) and slander (usually oral communication) are the two types of communication which comprise the tort of defamation. *Keohane v. Stewart, 882 P.2d 1293, 1297 n.5 (Colo. 1994)*. Where the plaintiff is a public figure, he must also show that the allegedly

defamatory statements **[\*37]** were made with actual malice—that is, knowledge of their falsity or with reckless disregard of whether it was false or not. *Milkovich v. Lorain Journal Co., 497 U.S. 1, 14-15, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)* (citing *Curtis Publ'g Co. v. Butts, 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967)*). Here, Plaintiffs allege that Plaintiff Goode is a "public figure" in the Conscious Community and that he has starred in a "hit show" for a "roaring three-year stint." *Second Am. Compl.* [#32], ¶¶ 12, 20.

Under Colorado law, libel and slander per se involving a public figure require a showing of the following elements: (1) publication of a statement the court has determined is defamatory; (2) actual damage; (3) material falsity, i.e. that the "substance or gist" of the statement was false when it was published; and (4) knowledge of falsity or reckless disregard as to falsity. *See* Colo. Jury Instructions ("CJI") - Civil 22:1; *Denver Publ'g Co. v. Bueno, 54 P.3d 893, 898-99 n.8 (Colo. 2002)* (citing the CJI to discuss the elements of libel per se, libel per quod, and false light invasion of privacy). Statements are defamatory per se when they impute one of the following about the plaintiff: "(1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct." *Gordon v. Boyles, 99 P.3d 75, 79 (Colo. App. 2004)* (citations omitted).

Here, Plaintiffs base their claims on purported statements by Defendant (and Ms. **[\*38]** Youngblood and Mr. Kennedy) accusing Plaintiff Goode of fraud and improper business activities. *Second Am. Compl.* [#32], ¶¶ 51, 107, 178, 183. However, Plaintiffs do not identify any specific defamatory statements Defendant allegedly made. They claim that "all three Defendants have made claims against [Plaintiff] Goode that accuse him of crimes such as fraud and improperly disseminating others' information. All three Defendants have made these claims in person to acquaintances of [Plaintiff Goode] and Mrs. Goode as well as through [s]ocial [m]edia postings and public forums." *Id.*, ¶ 107; *see also id.*, ¶ 51 (accusing Defendant of "ma[king] claims to various individuals accusing [Plaintiff] Goode of fraudulent business practices both in person and through various social media platforms"), ¶¶ 178, 183 (similar). None of these allegations provide enough detail to state a claim of slander or libel per se against Defendant. For example, Plaintiffs neither identify the statements nor indicate when those statements were made, which statements (if any) Defendant made, in which social media postings or forums, or to which acquaintances these statements were allegedly made. Plaintiffs should **[\*39]** know at least some of the relevant details—for example, Plaintiffs allege that Defendant "threatened to [publish or communicate defamatory statements] prior to making such statement in an email to [Plaintiff] Goode at the beginning of this year," but they did not quote or even describe that email in their Second Amended Complaint [#32]. *Second Am. Compl.* [#32], ¶¶ 179, 180, 184, 185; *cf. Khalik, 671 F.3d at 1194* (stating that, while the court "do[es] not mandate the pleading of any specific facts in particular, there are certain details the [p]laintiff should know and could properly plead to satisfy the plausibility requirement.").

Moreover, Plaintiffs' threadbare allegations render the Court unable to determine whether the at-issue (and unidentified) statements are plausibly defamatory. *McGettigan v. Di Mare, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016)* (noting that whether a statement is defamatory per se is a question of law for the court to decide). The Court need not accept as true Plaintiffs' unsupported inference that unidentified "defamatory" statements are actionable— these are "naked assertions devoid of further factual enhancement." *Johnston, 715 F. App'x at 830*; *Khalik, 671 F.3d at 1194*. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Eight (Slander Per Se) and Claim **[\*40]** Nine (Libel Per Se).

## 8. Tortious Interference with Business Expectancy (Claim Ten)

Colorado recognizes the tort of intentional interference with prospective business relations. *Amoco Oil Co. v. Ervin, 908 P.2d 493, 500 (Colo. 1995)* (discussing *RESTATEMENT (SECOND) OF TORTS §§ 766B* (1979)).

A person may tortiously interfere with a business expectancy when he "intentionally and improperly interferes with another's prospective contractual relation," whether by "inducing or otherwise causing a third person not to enter into or continue the prospective relation" or "preventing the other from acquiring or continuing the prospective relation." *RESTATEMENT (SECOND) OF TORTS §§ 766B* (1979); *see also Examination Bd. of Pro. Home*

*Inspectors v. Int'l Ass'n of Certified Home Inspectors, 519 F. Supp. 3d 893, 915 (D. Colo. 2021)* (discussing Restatement factors).

The following factors weigh into whether intentional interference was improper: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. *RESTATEMENT (SECOND) OF TORTS § 767* (1979).

However, even if the Court finds a party used improper means, it must determine **[*41]** whether sufficient evidence exists to establish an inference of injury—i.e., "whether the tortfeasor's wrongful conduct prevented the plaintiff from forming a contract." *Examination Bd. of Pro. Home Inspectors, 519 F. Supp. 3d at 916*. To qualify as a protected relationship, a "reasonable likelihood or probability" must exist "that a contract would have resulted; there must be something beyond a mere hope." *Crocs, Inc. v. Effervescent, Inc., 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017)* (quoting *Klein v. Grynberg, 44 F.3d 1497, 1506 (10th Cir. 1995)*) (internal quotation marks omitted). Speculative prospective contracts do not suffice. *See Klein, 44 F.3d at 1506* (noting absence of an "ongoing relationship with any of the investors," a single meeting with investors, and absence of investor intent to enter contractual relationship).

Here, the Court finds that Plaintiffs have not alleged any non-speculative business expectancy sufficient to demonstrate an inference of injury. Plaintiffs allege that "Goode had a multitude of actual or prospective business contracts with conferences and various entertainment agencies. Specifically, with DoD and other interested business investors," and "Defendants knew of these actual or prospective business contracts and intentionally and improperly interfered with the performance of these contracts[.]" *Second Am. Compl.* [#32], ¶¶ 188-89. These vague statements are asserted **[*42]** against Defendant, Ms. Youngblood, and Mr. Kennedy, collectively; no allegation is asserted against Defendant, particularly. *See id.*; *Robbins*, 519 F.3d at 1253 (noting the plaintiff's failure to put the defendants on notice as to the particular alleged actions that support liability).

Additionally, Plaintiffs identify *only one* business prospect, DoD, but nearly every allegation pertaining to DoD, except one, is directed at Ms. Youngblood and not against Defendant. *See generally id.*, ¶¶ 84-101 (section entitled "Dimensions of Disclosure [DoD] and Adrienne Youngblood"); *but see* ¶ 90 ("[Defendant] and [Ms.] Youngblood told the Goodes at DoD that the whole hemp crop in which they invested died of disease."). The single allegation against Defendant falls far short of plausibly alleging Defendant's interference with a prospective business opportunity related to DoD.

No allegations in the Second Amended Complaint [#32] support the conclusion that a "reasonable probability" existed that Plaintiffs "would have received economic benefits" from a third party in the absence of this Defendant's actions. *See Klein, 44 F.3d at 1506*. Plaintiffs' "mere hope" of prospectively forming business contracts with unidentified third parties is insufficient **[*43]** to state a tortious interference claim. *Examination Bd. of Pro. Home Inspectors, 519 F. Supp. 3d at 917*. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Ten (Tortious Interference with a Business Expectancy).

## 9. Breach of Fiduciary Duty (Claim Eleven)

Under Colorado law, to recover for breach of fiduciary duty, the plaintiff must demonstrate (1) "that the defendant was acting as a fiduciary for the plaintiff"; (2) "that he breached a fiduciary duty to the plaintiff"; (3) "that the plaintiff incurred damages"; and (4) "that the defendant's breach of a fiduciary duty was a cause of the plaintiff's damages." *In re Estate of Chavez, 2022 COA 89M, 520 P.3d 194, 203 (Colo. App. 2022)* (citation omitted).

A fiduciary relationship exists between two people where one of them is "under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation[ship]." *Brodeur v. Am. Home Assur. Co., 169 P.3d 139, 151 (Colo. 2007)* (citation omitted) (alteration in original). "A fiduciary relationship may exist as a matter of law or may arise where one party occupies a superior position relative to another," but "an unequal relationship

2024 U.S. Dist. LEXIS 147009, *43

does not automatically create a fiduciary duty." *Id.* Such a relationship "can arise out of a relationship of blood, business, friendship, or association" but the breach of that duty **[*44]** typically involves "a party who used his superior position . . . to the detriment of a vulnerable, dependent party." *Moses v. Diocese of Colo., 863 P.2d 310, 322 (Colo. 1993).*

Fiduciary liability requires more than the principal placing trust or confidence in his agent—it requires the assumption of a duty and breach of that duty. *Id.* (citing *Hill v. Bache Halsey Stuart Shields Inc., 790 F.2d 817 (10th Cir. 1986)*); *Hill, 790 F.2d at 824* (holding that the jury considering a breach of fiduciary duty claim "should have been instructed to decide first what [the agent] had agreed to do for [the principal] and then to determine whether [the agent] executed those tasks properly"). Where parties "are engaged in an arm's-length business transaction without any special relationship of trust and confidence and without one party assuming a duty to act in the other party's best interest, a fiduciary duty does not exist. *Mintz v. Accident & Inj. Med. Specialists, PC, 284 P.3d 62, 68-69 (Colo. App. 2010)* (citing *Biller Assocs. v. Peterken, 269 Conn. 716, 849 A.2d 847, 852 (Conn. 2004)*). Neither reliance nor past practice are sufficient to create a fiduciary duty. *Id. at 69.*

Here, the Court does not find that Plaintiffs have plausibly alleged the existence of a fiduciary duty or a breach thereof. The Court accepts as true Plaintiffs' allegation that they "grew to trust [Defendant] in a deep way," that Defendant and Kennedy were entrusted to oversee and manage production and distribution of the Graphic Novel, **[*45]** and that Defendant was "using Graphic Novel funds to fund other projects of his own choosing." *Second Am. Compl.* [#32], ¶¶ 26, 49, 50. Even so, Plaintiffs do not allege that Defendant "was in a superior and influential position" over them. *Mintz, 284 P.3d at 69.* If anything, Plaintiff Goode appears to have been in a superior position throughout this relationship. *See, e.g., Second Am. Compl.* [#32], ¶ 24 (the parties' relationship began with Defendant volunteering for Plaintiff Goode), ¶ 25 (Plaintiff Goode introduced Defendant to various people at Gaia), ¶ 28 (Plaintiff Goode secured Defendant a role as a writer), ¶ 29 (Gaia ended its contract with Defendant because Plaintiff Goode departed the show).

This is not the kind of relationship that is traditionally fiduciary in nature—it is more akin to an arm's-length transaction between business partners, employer/employee, or franchisor/franchisee. *Cf. Mintz, 284 P.3d at 68* (collecting cases and noting that fiduciary relationships include attorney-client, principal-agent, trustee-beneficiary, general partner-limited partner); *cf. Second Am. Compl.* [#32], ¶ 48 (stating that Defendant "agreed to perform certain duties or work for [Plaintiff] Goode and [Plaintiff] Goode either paid **[*46]** [Defendant] in cash and/or ownership interest in various entities"). Plaintiffs' trust and confidence in Defendant are not enough to create a fiduciary duty. *Moses, 863 P.2d at 322* (citing *Hill, 790 F.2d at 824*).

Plaintiffs' allegations that Defendant undertook and breached a fiduciary duty are conclusory because they are not supported by any supporting factual averments—in fact, they do not even distinguish between Defendant's and Mr. Kennedy's specific conduct. *Id.*, ¶¶ 81-82 (allegations directed at "[Defendant] and [Mr.] Kennedy"). Plaintiffs' allegations that Defendant and Mr. Kennedy "failed to perform certain duties" or that they have "not delivered on [their] promises to not only deliver Graphic Novels to those who ordered them, but to deliver them with additional merchandise," *id.*, ¶ 82, are insufficient. Even taking the latter allegation as true, the allegation that Defendant and Mr. Kennedy failed to deliver orders to customers could "encompass a wide swath of conduct, much of it innocent" and, therefore, "[P]laintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins, 519 F.3d at 1247 (10th Cir. 2008)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*).

As for Plaintiffs' various allegations of misuse of funds, they are also completely unsupported. *Second Am.* **[*47]** *Compl.* [#32], ¶ 50 (alleging there were "funding issues created by [Defendant] using Graphic Novel funds to fund other projects of his own choosing"), ¶ 73 (Upon "information and belief, [Mr.] Kennedy and [Defendant] used that power over the finances in order to embezzle funds for their own use"), ¶ 75 (alleging that Defendant and Mr. Kennedy "were turning the Graphic Novel into a complete logistical catastrophe"), ¶¶ 78-79 (alleging harm caused by "[Defendant's] and [Mr.] Kennedy's mismanagement" of Graphic Novel funds and the project as a whole). The Court cannot tell what mismanagement is attributed to Defendant (as opposed to Mr. Kennedy), what funds Defendant allegedly embezzled (as opposed to Mr. Kennedy), or what logistical catastrophe Defendant allegedly

2024 U.S. Dist. LEXIS 147009, *47

created (as opposed to Mr. Kennedy). Accordingly, Plaintiffs' Claim Eleven (Breach of Fiduciary Duty) is not well-pleaded.

Finally, to the extent that Defendant's alleged breach of fiduciary duty arose from the failure to perform a contract, the District Judge has already found that Plaintiffs failed to plausibly allege the existence of specific contracts or the breach of specific contract terms. *Order on Motion to Dismiss* [#117] **[*48]** at 6 (finding that "[P]laintiffs' complaint does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform."). Therefore, Plaintiffs' breach of fiduciary duty claim fails for this reason, as well. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Eleven (Breach of Fiduciary Duty).


**10. Embezzlement (Claim Twelve)**

Plaintiffs allege that Defendant and Mr. Kennedy embezzled funds from his companies, in violation of *Colo. Rev. Stat. § 18-4-405* (the "stolen property" statute). *Second Am. Compl.* [#32], ¶¶ 195-98. That statute authorizes a private cause of action against the taker of "property obtained by theft, robbery, or burglary," and because there are no allegations that Defendant robbed or burglarized Plaintiffs, the embezzlement claim falls within the civil theft portion of the statute. *Colo. Rev. Stat. § 18-4-405*; *In re Marriage of Allen, 691 P.2d 749, 751 (Colo. App. 1984)* (holding that it includes embezzlement for purposes of the stolen property statute). A claim of civil theft requires Plaintiffs to show that Defendant "(1) knowingly obtained, retained, or exercised control over anything of value of another without authorization; and (2) **[*49]** intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse, 2024 COA 22, 549 P.3d 1043, 1051 (Colo. App. 2024)* (citing *Colo. Rev. Stat. § 18-4-401(1)*; *In re Estate of Chavez, 520 P.3d at 204*).

"[M]oney belongs to another if anyone other than the defendant has a possessory or proprietary interest in it." *Id.* (citing *Colo. Rev. Stat. § 18-4-401(1.5)*). "If the property that is the subject of the civil theft claim is money, in order for the plaintiff to have a proprietary interest in the money, there must be either a specifically identifiable account or a wrongful obtaining, retention, or exercise of control over specifically identifiable funds that belong to the plaintiff." *Id. at 1051-52*. Thus, a plaintiff fails to state a civil theft claim where "the party claiming civil theft did not allege the deprivation of specific funds." *Id. at 1052* (discussing the Colorado Supreme Court's holding in *Van Rees v. Unleaded Software, Inc., 2016 CO 51, 373 P.3d 603 (Colo. 2016)*). Moreover, where the defendant "no longer has possession of the money," the plaintiff cannot recover under *Colo. Rev. Stat. § 18-4-405* because that statute only permits recovery where the other person still has possession of the stolen property. *Cedar Lane Invs. v. Am. Roofing Supply of Colorado Springs, Inc., 919 P.2d 879, 882 (Colo. App. 1996)*.

Thus, Plaintiffs have failed to plausibly plead a civil theft claim under the "stolen property" statute. The allegedly stolen property is money, i.e., "company funds for various companies belonging to [Plaintiff] **[*50]** Goode." *Second Am. Compl.* [#32], ¶ 196. To state a claim for stolen money under the statute, Plaintiffs had to allege the deprivation of *specific funds* and that Defendant still possesses those stolen funds. *Million, 549 P.3d at 1051-52*; *Cedar Lane Invs., 919 P.2d at 882*. They alleged neither necessary element. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Twelve (Embezzlement).


**III. Conclusion**

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiffs' **Motion for Default Judgment** [#130] be **DENIED WITHOUT PREJUDICE**. *See, e.g., Day v. Career Bldg. Acad., No. 18-cv-00837-RM-KMT, 2021 U.S. Dist. LEXIS 50965, 2021 WL 1723777, at *2 (D. Colo. Mar. 18, 2021)* (denying motion for default judgment without prejudice where the plaintiff had failed to state a cognizable claim).

2024 U.S. Dist. LEXIS 147009, *50

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, *Fed. R. Civ. P. 72(b)(2)* provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo **[*51]** review by the district court or for appellate review." *United States v. 2121 E. 30th St., 73 F.3d 1057, 1060 (10th Cir. 1996)*. The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1119 (10th Cir. 2005)*.

Dated: August 16, 2024

BY THE COURT:

/s/ Kathryn A. Starnella

Kathryn A. Starnella

United States Magistrate Judge

---

**End of Document**

## *Santana v. Experian Info. Sols., Inc.*

United States District Court for the Northern District of Oklahoma

November 16, 2021, Decided; November 16, 2021, Filed

Case No. 4:19-CV-270-RJS-JFJ

**Reporter**

2021 U.S. Dist. LEXIS 261063 *

EDDIE SANTANA, Plaintiff, v. EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; AND FAIR ISAAC CORP., Defendants.

**Counsel:** **[*1]** Eddie Santana, Plaintiff, Pro se, Tulsa, OK.

For Equifax, Defendant: Arthur F. Hoge III, LEAD ATTORNEY, Mee Hoge PLLP, Oklahoma City, OK; Kearstin Harumi Sale, LEAD ATTORNEY, Seyfarth Shaw LLP, Atlanta, GA; Maris Amanda Rae Skinner, LEAD ATTORNEY, Mee Mee Hoge & Epperson PLLP, Oklahoma City, OK.

For Experian Information Solutions Inc. Experian, previously named as, Defendant: Jimmy K Goodman, LEAD ATTORNEY, Crowe & Dunlevy (OKC), Oklahoma City, OK; Kim Purcell, Jones Day, Atlanta, GA.

For Fair Isaac Corporation, Fair Isaacs Corp., Fair Isaac Corporation, previously named as, Defendants: Erin Hoffman, LEAD ATTORNEY, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN; John H Tucker, LEAD ATTORNEY, Rhodes Hieronymus Jones Tucker & Gable PLLC, Tulsa, OK.

For Trans Union LLC Trans Union, previously named as, Defendant: Jason Goodnight, Joseph R Farris, Jennifer Ary Brown, LEAD ATTORNEYS, Franden Farris Quillin Goodnight & Roberts, Tulsa, OK; Lauren Michelle Wood, LEAD ATTORNEY, Quilling Selander Lownds Winslett & Moser P.C., Plano, TX.

**Judges:** ROBERT J. SHELBY, United States Chief District Judge.

**Opinion by:** ROBERT J. SHELBY

# Opinion

## ORDER DISMISSING COMPLAINT

This case arises out of pro se Plaintiff Eddie Santana's allegedly **[*2]** inaccurate credit reports. Before the court is Santana's Amended Complaint.[1] For the reasons explained below, the Amended Complaint is DISMISSED with prejudice under *28 U.S.C. § 1915*.

## BACKGROUND AND PROCEDURAL HISTORY

Santana filed his initial Complaint against Defendants Equifax, Experian, Fair Isaac Corporation (FICO), Trans Union, and Webbank on May 20, 2019.[2] In it, he brought three claims against the Defendants: (1) violation of the *Fair Credit Reporting Act (FCRA)*, (2) breach of fiduciary duty, and (3) libel.[3] Also on May 20, 2019, Santana filed a

---

[1] ECF 84.

[2] ECF 1.

[3] *Id.* ¶¶ 15-17.

Motion to proceed *in forma pauperis*.[4] Judge John E. Dowdell granted Santana's motion to proceed *in forma pauperis* on May 24, 2019.[5] Thereafter, Defendants were served.[6]

On September 10, 2019, Defendant Equifax filed an Answer to Santana's Complaint.[7] On the same day, Defendant FICO filed a Motion to Dismiss for Failure to State a Claim.[8] On October 1, 2019, Defendant Trans Union also filed a Motion to Dismiss for Failure to State a Claim.[9] On October 2, 2019, Santana voluntarily dismissed Webbank from the action.[10] On October 22, 2019, Experian filed its Motion to Dismiss for Failure to State a Claim.[11] On March 18, 2020, Equifax filed a Motion for Judgment on the Pleadings, along with a Motion **[*3]** for Joinder in Experian and Trans Union's Motions to Dismiss.[12]

The case was reassigned to the undersigned on June 30, 2021.[13] On September 14, 2021, the court held a hearing on the Motions to Dismiss and Motion for Judgment on the Pleadings.[14] In an oral ruling, the court granted the Motions to Dismiss and Motion for Judgment on the Pleadings, finding Santana had not alleged adequate facts to support a claim under the FCRA, nor for breach of fiduciary duty or libel.[15] The court dismissed Santana's Complaint without prejudice and granted him leave to file an Amended Complaint.[16]

Santana filed his Amended Complaint on October 5, 2021.[17] The Amended Complaint is brought under the FCRA alone with no state law claims.[18] Because Santana has been permitted to proceed *in forma pauperis*, the court now examines the sufficiency of his Amended Complaint under the authority of *28 U.S.C. § 1915*, the *in forma pauperis* statute.

## LEGAL STANDARDS

Under *28 U.S.C. § 1915*, "the court shall dismiss the case at any time if the court determines that the action . . . fails to state a claim upon which relief may be granted."[19] When determining whether to dismiss an action for failure to

---

[4] ECF 2.

[5] ECF 3.

[6] ECF 6.

[7] ECF 21.

[8] ECF 24.

[9] ECF 33.

[10] ECF 35.

[11] ECF 42.

[12] ECF 46 (Motion for Judgment on the Pleadings); ECF 47 (Joinder in Motion).

[13] ECF 66.

[14] ECF 82 (Minutes).

[15] *Id.*; *see also* ECF 83 (Order Following Oral Ruling).

[16] ECF 82.

[17] ECF 84.

[18] *See id.*

[19] *28 U.S.C. § 1915(e)(2)(B)(ii)*.

state a claim, the court employs the same standard used **[*4]** to analyze motions to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*.[20]

Additionally, the Court construes Santana's Amended Complaint liberally because he is a pro se litigant, holding his pleadings to a less stringent standard than formal pleadings drafted by lawyers.[21] Yet, even under liberal review, Santana is not excused from compliance with federal pleading requirements or from stating a claim for which relief may be granted.[22] It "is not the proper function of the Court to assume the role of advocate for a pro se litigant,"[23] and the court should not "supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded."[24]

## DISCUSSION

The court will first evaluate the sufficiency of Santana's Amended Complaint under *Rule 12(b)(6)*, and then determine whether the Complaint should be dismissed with or without prejudice.

## I. Santana Fails to State A Claim for Relief

To survive a motion to dismiss under *Rule 12(b)(6)*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference **[*5]** that the defendant is liable for the misconduct alleged."[26] When determining whether a complaint meets these criteria, the court will "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[27] "The court's function on a *Rule 12(b)(6)* motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[28]

Santana purportedly brings a claim under the FCRA against Defendants Equifax, Experian, and Trans Union.[29] As a threshold matter, Santana adequately alleges the three named Defendants are potentially liable under the FCRA by alleging they are consumer reporting agencies (CRAs) that "assemble[] or evaluate[]" consumer information.[30] However, Santana fails to state a plausible claim against the three named Defendants under the FCRA.

---

[20] *See, e.g., Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007)*.

[21] *See, e.g., Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*.

[22] *Id.*

[23] *Id.*

[24] *Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)*, *cert. denied*, **493 U.S. 1059 (1990)**.

[25] *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*).

[26] *Id.* (citing *Twombly, 550 U.S. at 556*).

[27] *Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009)*.

[28] *Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)*.

[29] ECF 84 ¶¶ 2-4. The Amended Complaint does not bring any claims against Defendant FICO.

[30] *See id.*; *see also 15 U.S.C. § 1681a(f)* (defining "consumer reporting agency" under the FCRA).

As the court discussed on the record during the hearing dismissing Santana's first Complaint, to state a claim under *§ 1681e(b) of the FCRA*, a plaintiff must allege: "(1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report **[*6]** in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury."[31] Plaintiffs may also bring claims under the FCRA alleging a defendant failed to properly investigate or reinvestigate a consumer dispute, or that a defendant issued or obtained a consumer report for an improper purpose.[32]

None of these possible FCRA claims are plausibly alleged on the face of Santana's Amended Complaint. In the Amended Complaint, Santana does not describe any particular credit report, let alone one containing an inaccuracy. Nor does he describe any reasonable procedures the CRAs failed to follow.[33] Most of the allegations in the Amended Complaint are general grievances about how the credit scoring system operates and do not describe any specific wrongdoing. For example, Santana states that because "I as an individual do not have the means to single-handedly reform the credit-reporting and scoring scheme, I would love my credit score and report reflect that the law and the system is actually working for me, since I feel I am not rightly represented or protected by the FCRA."[34] He further writes that Defendants "penalize[] **[*7]** consumers for applying for credit," which "in essence tell[s] consumers how to manage their consumer affairs."[35] He complains that "adverse information" can cause a credit score to go down, offering the hypothetical that "running up $2000 or $3000 credit" "will cause one's credit score to go down 75 points," but when that credit is paid, "then the consumer's credit score goes up only a third of the amount that was originally cut down."[36] None of these general allegations identifies any specific misconduct for which the Defendants could be liable, nor do these allegations provide any "factual content" that would allow the court to make the "reasonable inference" the Defendants are liable for misconduct.[37]

Only one sentence in the Amended Complaint describes any specific facts relevant to Santana: "[t]he hard inquiries in one's file along with an overall lower score has caused being turned down for credit by the Mercury credit card company; refusal to raise the credit limit to my Citibank credit card account, and higher insurance rate at Shelter Insurance and Geico insurance."[38] However, the fact that a consumer has been turned down for credit or has a lower credit score **[*8]** is not enough to make out a claim under the FCRA. As discussed *supra*, Santana must describe a specific inaccuracy in his reports that has led to the harmful result of being turned down for credit or paying higher insurance rates. No such inaccuracy is apparent on the face of Santana's Amended Complaint. Neither does Santana allege facts suggesting Defendants failed to investigate a dispute or used one of his credit reports for an improper purpose. Therefore, the Amended Complaint fails to state a claim under the FCRA.

Because the Amended Complaint does not state a claim for relief under the FCRA, it does not meet the pleading standards of *12(b)(6)* and must be dismissed for insufficiency under *28 U.S.C. § 1915*.

## II. The Complaint is Dismissed with Prejudice

---

[31] *Cassara v. DAC Services, Inc., 276 F.3d 1210, 1217 (10th Cir. 2002)*; *see also* ECF 83 at 6 (explaining the same elements are necessary to bring a claim under *§ 1681i(a)*, a related provision of the FCRA).

[32] *15 U.S.C. § 1681s-2(b)* (failure to investigate); *1681b(f)* (improper purpose).

[33] *See generally* ECF 84.

[34] *Id.* ¶ 8.

[35] *Id.* ¶ 9.

[36] *Id.* ¶ 10.

[37] *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 556*).

[38] ECF 84 ¶ 11.

2021 U.S. Dist. LEXIS 261063, *8

A district court "should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[39] "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[40] Indeed, even if it is possible to "conceive of amendments to the complaint" [*9] that would cure some of its identified defects, where a complaint exhibits a defect that "no amendment could cure," it is "appropriate for [a] district court to dismiss the complaint with prejudice."[41]

Here, in two rounds of pleading, Santana has not alleged a single fact suggesting that any of the named Defendants produced a credit report that contained an inaccuracy, as required to plead a claim under the FCRA. In fact, Santana does not even describe any particular credit report containing an inaccuracy, only offering a hypothetical example.[42] The two Complaints repeat many of the same general grievances with the credit reporting system, and the Amended Complaint is even less specific than the first.[43] In fact, Santana's initial Complaint contained at least the bare allegation the credit reporting system was "inaccurate" and that his credit score did not accurately reflect his current financial status.[44] However, the Amended Complaint contains no such allegation, and instead only reiterates grievances Santana has with the credit reporting system.[45] Indeed, Santana admits that his Amended Complaint does not "come in the form of a 'complaint and demand for relief,' but in the form of [*10] a request for the right thing to be done."[46] As discussed on the record in the Motion to Dismiss hearing, a complaint brought in Federal Court, even by a pro se plaintiff, must adhere to the pleading standards of the Federal Rules of Civil Procedure and state a plausible claim to relief under a specific cause of action. "Threadbare recitals of a cause of action" along with "mere conclusory statements" are not enough to state a claim.[47]

At this stage, it is not possible to conceive of amendments to Santana's Amended Complaint that would cure the identified defects, as an entire set of factual allegations would have to be invented to state a claim under the FCRA. Considering the insufficiency of the two Complaints, alongside the fact that the Amended Complaint was even less sufficient than the first, the court concludes that granting Santana a second opportunity to amend his Complaint would be futile, and run afoul of the court's obligation under the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action."[48] Accordingly, the Amended Complaint is dismissed with prejudice.

**CONCLUSION**

---

[39] *Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)*.

[40] *Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999)*.

[41] *Curley, 246 F.3d at 1282*; *see also Requena v. Roberts, 893 F.3d 1195, 1205-06 (10th Cir. 2018)* (in considering whether amendment would be futile, a court "will not conjure facts [a plaintiff] might conceivably raise in support of his claims; that would make us his advocate.").

[42] ECF 84 ¶ 10.

[43] *Compare* ECF 1 ¶¶ 6-14 *with* ECF 84 ¶¶ 9-12.

[44] ECF 1 ¶ 11; 14.

[45] ECF 84 ¶ 5-11.

[46] *Id.* ¶ 12.

[47] *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S. at 555*).

[48] *Fed. R. Civ. P. 1*; *see also Curley, 246 F.3d at 1284* ("[S]ua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

2021 U.S. Dist. LEXIS 261063, *10

For the reasons stated above, Santana's **[*11]** Complaint is DISMISSED with prejudice. The Clerk of Court is directed to close the case.

SO ORDERED this 16th day of November, 2021.

BY THE COURT:

/s/ Robert J. Shelby

ROBERT J. SHELBY

United States Chief District Judge

---

**End of Document**