**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. Civil Action No.: 1:24-cv-02811-GPG-NRN

URBAN INTERESTS LLC, individually and on
behalf of all other similarly situated,

   Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES, LLC,
JAMES EBERHARD,
JENIFER SNYDER, and THOMAS
SCOTT AVILA,

   Defendants.

---

### DEFENDANTS JAMES EBERHARD AND JENIFER SNYDER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants, James Eberhard ("Eberhard") and Jenifer Snyder ("Snyder") (collectively, "Defendants"), hereby respectfully request dismissal of all claims for relief as to them pursuant to Fed. R. Civ. P. 12(b)(6):

**I. CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a) and Section V.9 of the D.C.COLO. Uniform Civil Practice Standards of the United States Magistrate Judges, undersigned counsel certifies that via a telephonic conference that occurred on January 22, 2025, counsel for Defendants conferred in good faith with counsel for Plaintiff Urban Interests LLC ("Plaintiff") regarding the grounds for dismissal set forth in this Motion and the relief sought herein. In response, counsel for Plaintiff confirmed that Plaintiff opposes the relief sought in the Motion.

## II.     INTRODUCTION

As alleged in the Amended Complaint, Fluid Market Inc., and Fluid Fleet Services LLC, (collectively, "Fluid Truck") operated a Fluid Vehicle Investor Platform ("FVIP") that enabled "individuals and small business owners to purchase fleets of vehicles, and then rent them out via Fluid Truck's platform." [ECF No. 33 at ¶ 13.]  When vehicles on the FVIP platform reached the end of their lifespan, vehicle owners could elect to have Fluid Truck decommission their vehicles.  The decommissioning process involved Fluid Truck selling the vehicles on the owner's behalf and remitting the proceeds from the sales, after deducting certain costs and fees, to the owners.  [*Id.* at ¶ 19.]

According to Plaintiff, it entered into a contractual relationship with Fluid Truck pursuant to which Plaintiff purchased a fleet of 47 vehicles through the FVIP program. [*Id.* at ¶¶ 15-16.]  Notably, Plaintiff does *not* allege anywhere in the Amended Complaint that either of the Defendants participated in any way with the negotiation of Plaintiff's agreement with Fluid Truck.  Over time, Plaintiff alleges that it received the proceeds from Fluid Truck decommissioning 29 of Plaintiff's vehicles.  [*Id.* at 20.]  Again, Plaintiff does not allege that either Eberhard or Snyder took any actions or played any role in the decommissioning of these 29 vehicles or the provision of the proceeds to Plaintiff.  Plaintiff then alleges that, in reliance on *Fluid Truck's* decommissioning policy, it instructed *Fluid Truck* to decommission its remaining vehicles and that *Fluid Truck* sold fourteen of its vehicles.  [*Id.* at ¶¶ 26-29.]  Plaintiff finally alleges that it requested that *Fluid Truck* and newly-added defendant HHK Group, LLC ("HHK Group") remit the proceeds from the sales but that *Fluid Truck* and HHK Group refused.  [*Id.* at ¶¶ 30-31.]  Plaintiff does not allege that either Eberhard or Snyder took any actions or played any role in the foregoing.

- 2 -

All of Plaintiff's claims in this matter stem from Fluid Truck's and HHK Group's alleged refusal to remit to Plaintiff the proceeds from Fluid Truck's decommissioning of fourteen of Plaintiff's vehicles on Fluid Truck's FVIP platform. The Amended Complaint is bereft of a single factual allegation that either Eberhard or Snyder were personally involved in any way with the decommissioning of the vehicles at issue. Plaintiff does not allege that it engaged in a single communication with either Eberhard or Snyder nor does Plaintiff allege that either Eberhard or Snyder took any actions related to Fluid Truck's decommissioning of Plaintiff's vehicles. Despite this, Plaintiff includes Eberhard and Snyder in its claims for fraud, civil theft, and conversion (and, through those, its claim for declaratory and injunctive relief). As alleged by Plaintiff, each of these claims rest solely on conduct committed by Fluid Truck and/or HHK Group. Plaintiff fails to point to any conduct by either Eberhard or Snyder that could possibly give rise to personal liability because all of the allegedly improper actions were performed by Fluid Truck or HHK Group. Therefore, to the extent Plaintiff seeks to hold Eberhard or Snyder personally liable by virtue of their own actions, Plaintiff fails to state a claim for relief because Plaintiff fails to assert allegations of conduct by Defendants that satisfies the elements of its claims for fraud, civil theft, or conversion.

Having failed to meet the pleading standard to hold Defendants liable for directly engaging in acts that would constitute fraud, civil theft, or conversion, Plaintiff will likely attempt to argue that Eberhard and Snyder should be held liable by virtue of their direction, active participation in, or cooperation with Fluid Truck's or HHK's actions. However, this argument falls flat because Plaintiff still failed to allege facts sufficient to support Plaintiff's conclusory allegations that Eberhard or Snyder *actually* directed,

participated in, or cooperated with any of the alleged conduct of Fluid Truck or HHK. Accordingly, all of the claims against Defendants should be dismissed.

## III. LEGAL STANDARD

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of plaintiff's complaint. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Rule 8(a)(2) requires that all complaints contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Each element of Plaintiff's claim must be plausibly alleged with underlying facts in the complaint, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To survive a motion to dismiss, a complaint must present "allegations plausibly suggesting (not merely consistent with)" liability for the claims alleged. *See id.* at 678. The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Moreover, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006), *abrogated by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S.

262, 139 S. Ct. 1507, 203 L. Ed. 2d 791 (2019) (internal citations and quotations omitted); *See also Schaden v. DIA Brewing Co., LLC*, 2021 CO 4M, ¶ 57, 478 P.3d 1264, 1275, *as modified on denial of reh'g* (Feb. 1, 2021).

### IV. ARGUMENT

#### A. Choice of Law.

In multistate tort cases, courts determine which state's substantive law applies using the "most significant relationship test." *Sec. Serv. Fed. Credit Union v. First American Mortg. Funding, LLC*, Civil Action No. 08-cv-00955-WYD-CBS, 18 (D. Colo. 2012). "Using this approach, 'the court must determine which state has the most significant relationship to the occurrence and the parties.'" *Id.* (quoting *Abdelsamed v. New York Life Ins. Co.*, 857 P.2d 421, 428 (Colo. App. 1993)). "This analysis requires an evaluation of the relative importance of the following factors: 1) where the injury occurred; 2) where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; and 4) the place where the relationship is centered." *Id.* (internal citation omitted).

Here, the alleged injury and conduct that allegedly caused the injury occurred in Colorado because the funds Plaintiff alleges were improperly retained were for vehicles sold in Colorado. Additionally, Fluid Truck, Eberhard, and Snyder are domiciled in Colorado and the relationship between Plaintiff and Fluid Truck was, at all times, centered in Colorado. Accordingly, Colorado law applies to Plaintiff's claims.

#### B. Plaintiff Fails to State a Plausible Claim for Fraud Against Eberhard or Snyder.

"A plaintiff seeking to prevail on a claim of fraud must establish: (1) that the defendant made a false representation of material fact; (2) that the one making the

- 5 -

representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Vinton v. Vorzi*, 269 P.3d 1242, 1247 (Colo. 2012) (citing, *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *Brody v. Bock*, 897 P.2d 769, 775-76 (Colo. 1995); *Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1117-8 (Colo. 1989); *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987); *see also* CJI–Civ. 19:1 (CLE ed. 2011)).

In the Amended Complaint, each of Plaintiff's allegations regarding the alleged fraud are solely premised on the conduct of Fluid Truck and fail to state a plausible claim against either Snyder or Eberhard. Specifically, Plaintiff alleges that "***Fluid Truck's decommissioning policy*** represented that it would 'sell [the] vehicle on [the owners'] behalf' through a third-party auctioning service. ***Fluid Truck*** further represented that, from the sale proceeds and other amounts due, it would only deduct a decommissioning fee, the cost of any necessary repairs, and other applicable fees, and then remit the remaining proceeds to the relevant vehicle owner." [ECF No. 33 at ¶ 58] (emphasis added). Additionally, Plaintiff alleges, "***Fluid Truck knew its representations*** about turning decommissioning sales and proceeds and other amounts over to owners was false." [*Id.* at ¶ 59] (emphasis added). Plaintiff also alleges, "***Fluid Truck made its decommissioning misrepresentations*** with the intent that Urban Interests and the other Class members would rely on those misrepresentations." [*Id.* at ¶ 60] (emphasis added). Plaintiff then alleges that, "[t]he reliance by Urban Interests and other Class members on ***Fluid Truck's decommissioning misrepresentations*** caused damages to Urban

Interests and other Class members in an amount to be proven at trial." [*Id.* at ¶ 62] (emphasis added).

Plaintiff clearly alleges that Fluid Truck—not Defendants—made a false representation; knew the representation was false; and based upon Plaintiff's reliance on Fluid Truck's misrepresentations, Plaintiff was injured. However, notably absent from Plaintiff's allegations is any reference to conduct by Eberhard or Snyder that would give rise to liability for the alleged fraud. Plaintiff does not allege that it had *any* communications with Eberhard or Snyder or even that either Eberhard or Snyder had knowledge of Plaintiff or its interactions with Fluid Truck, let alone knowledge that those interactions included fraudulent misrepresentations. The only mention of Defendants in connection with Plaintiff's claim for fraud is found in a conclusory allegation that "James Eberhard and Jennifer Snyder have directed, actively participated in, and cooperated in Fluid Truck's decommissioning misrepresentations, and are therefore equally liable for such misrepresentations." [*Id.* at ¶ 63.] This threadbare assertion is woefully insufficient to state a claim as to Defendants based upon their conduct. Specifically, Plaintiff fails to allege any facts that support a finding that Defendants "directed, actively participated in, and cooperated" with Fluid Truck's misrepresentations. Plaintiff does not allege who at Fluid Truck Plaintiff was allegedly dealing with, let alone the relationship between either Eberhard or Snyder and that individual. Plaintiff does not allege any operational roles or responsibilities of either Snyder or Eberhard that would support a finding that they "participated in" the fraudulent misrepresentations in the normal course of their work. Finally, Plaintiff does not allege that either Snyder or Eberhard had any knowledge of *any* of the business dealings between Plaintiff and Fluid Truck. Accordingly, Plaintiff has

failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Instead, Plaintiff has merely recited, in a conclusory fashion, elements of a claim as identified in case law. Therefore, Plaintiff's fraud claim as to Defendants should be dismissed.

### C.  Plaintiff Fails to Plead Fraud with Sufficient Particularity.

Even if the Court finds that Plaintiff did allege sufficient factual matter to state a plausible claim for relief for fraud as to Eberhard and Snyder, Plaintiff's fraud claim should still be dismissed as to Eberhard and Snyder because it does not satisfy the heightened pleading standard under Rule 9(b). When pleading a claim for fraud, a Plaintiff must, at a minimum "set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Sikkenga* 472 F.3d at 726-27 (internal citations and quotations omitted).

Plaintiff's claim for fraud is deficient as to Fluid Truck—the party it alleged actually took actions which it alleges constitute fraud—and therefore must also necessarily be deficient as to Defendants because Plaintiff does not even allege Defendants actually engaged in any of the alleged conduct it alleges amounted to fraud. Plaintiff does not identify in the Amended Complaint who it communicated with at Fluid Truck, what was communicated, when the communication took place, or even whether the communication happened over email, telephone or through some other medium. In fact, Plaintiff does not even identify a particular fraudulent misrepresentation made by Fluid Truck generally. As Plaintiff admits, Fluid Truck fulfilled its decommissioning obligations to Plaintiff at least *twenty-nine* times. [ECF No. 33 at ¶ 20.] Accordingly, Fluid Truck's decommissioning

- 8 -

*policy* was not fraudulent. Rather, the alleged fraudulent misrepresentation presumably occurred at some point during the particular transactions related to the fourteen vehicles that Plaintiff alleges Fluid Truck sold but did not remit payment for. The Amended Complaint is bereft of any specific factual allegations related to Plaintiff's communications with Fluid Truck in regard to those vehicles or the particular transactions for those vehicles. Plaintiff's fraud allegations do not come *close* to satisfying the pleading standard under Rule 9(b). Accordingly, if the Court does not dismiss Plaintiff's fraud claim outright, it should require Plaintiff to amend its Amended Complaint[1] to allege fraud with the requisite particularity as to Eberhard and Snyder.

### D. Plaintiff Fails to State a Plausible Claim for Civil Theft as to Eberhard and Snyder.

A claim for "[c]ivil theft requires proof of two elements: (1) the defendant knowingly obtained control over the plaintiff's property without authorization and (2) the defendant did so with the specific intent to deprive the plaintiff of the benefit of the property. *Tisch v. Tisch*, 439 P.3d 89, 103 (Colo. App. 2019) (citing *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009); *see* § 18-4-405 (rights in stolen property)). In the Amended Complaint, Plaintiff alleges, "***Fluid Truck and HHK Group*** have knowingly retained funds belonging to Urban Interests and other Class members without authorization, and has intentionally used and misappropriated Urban Interests and other Class members' funds to support its failing business—doing so in a manner that will permanently deprive Urban Interests and other Class members of their rightful benefit of

---

[1] Notably, Plaintiff has already amended its complaint once, casting doubt on what, if any, amendments Plaintiff could possibly make to plead allegations that meet the Rule 9(b) standard. Even if such amendment is possibly, it is highly prejudicial to Defendants to have to contend with multiple iterations of a complaint containing insufficient allegations.

those same funds." [ECF No. 33 at ¶ 66] (emphasis added).

Plaintiff's allegations make clear that it believes Fluid Truck and HHK Group—not Eberhard or Snyder—knowingly exercised control over its funds without authorization in a manner that has harmed Plaintiff. In fact, Plaintiff explicitly states that Fluid Truck and/or HHK Group—not Eberhard or Snyder—have retained the funds at issue. Because Plaintiff does not allege that Eberhard or Snyder have personally retained the funds at issue or set forth any allegations to plausibly support such a conclusion, Plaintiff's claim for civil theft against Eberhard and Snyder is not actionable and should be dismissed. *See Cedar Lane Invs. v. Am. Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996) (reasoning a claim under Colo. Rev. Stat. Ann. § 18-4-405 is not actionable if the defendant is not in possession of the money).

Plaintiff's recitation of the nearly identical conclusory allegation set forth *supra* in connection with its fraud claim that "James Eberhard and Jennifer Snyder have directed, actively participated in, and cooperated in the theft of Urban Interests and other Class members' property, and are therefore equally liable for such theft" (ECF No. 33 at ¶ 68) is not sufficient to save the claim as to Eberhard and Snyder. Plaintiff does not provide *any* factual allegations that support its claim that Defendants "directed, actively participated in, and cooperated in" the alleged civil theft. Plaintiff does not, for example, identify who Eberhard and Snyder allegedly directed or any actions that either Eberhard or Snyder allegedly took in "cooperation" with the alleged theft. Nor does Plaintiff allege any facts—such as an operational role or responsibility—that could plausibly support a finding that Eberhard or Snyder were somehow involved in the alleged transaction. In fact, Plaintiff fails to differentiate between Eberhard and Snyder and their presumed

different roles within Fluid Truck. Even if Plaintiff had alleged sufficient facts to support the finding that either Eberhard or Snyder were involved—which it did not—those allegations would not support a finding that *both* were involved. It is not as if Eberhard and Snyder—who Plaintiff alleges fulfilled different roles at Fluid Truck—were somehow "joined at the hip" such that they undertook all actions jointly. Even if that was Plaintiff's theory—putting aside its outlandish and unrealistic nature—Plaintiff does not allege a single allegation to support such a finding. Accordingly, Plaintiff does not support its conclusory allegation that Eberhard and Snyder "directed, participated in, and cooperated in" the alleged civil theft and therefore the bald allegation is not sufficient to save the claim for civil theft as to Eberhard and Snyder. Plaintiff's claim for civil theft is not sufficiently plead as to Eberhard and Snyder and should be dismissed. *See Iqbal*, 556 U.S. at 678.

### E. Plaintiff Fails to State a Plausible Claim for Conversion as to Eberhard and Snyder.

Under Colorado law, "conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Mason v. Farm Credit of S. Colo.*, 419 P.3d 975, 983 (Colo. 2018) (quoting *Byron v. York Inv. Co.*, 133 Colo. 418, 296 P.2d 742, 745 (1956)); *See also Maryland Casualty Company v. Messina*, 874 P.2d 1058, 1065 (Colo. 1994). To adequately plead a claim for conversion in Colorado, a Plaintiff must allege "(i) a defendant exercised dominion or control over property; (ii) that the property belonged to [plaintiff]; the defendant's exercise of control was unauthorized; (iv) [plaintiff] demanded the return of the property; and (v) the defendant refused to return it." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)

In the Amended Complaint, Plaintiff alleges "***Fluid Truck and HHK Group intentionally and substantially interfered*** with Urban Interests and other Class members' ownership of their vehicles, and their right to the proceeds and other amounts due from the vehicles' sale, by refusing to return Urban Interests and other Class members' sales proceeds and other amounts due after Urban Interests and other Class members demanded the return of those funds."  [ECF No. 33 at ¶ 73] (emphasis added). Additionally, Plaintiff alleges "Neither Urban Interests nor any other Class member consented to ***Fluid Truck and HHK Group's retention of the sales proceeds and other amounts*** due to Urban Interests and the other Class members in connection with the sales of vehicles."  [*Id.* at ¶ 74] (emphasis added).

As with Plaintiff's claims for fraud and civil theft, its claim for conversion fails to allege any factual support that could plausibly support a finding that Eberhard or Snyder engaged in conduct sufficient to give rise to liability for a claim of conversion.  Plaintiff has clearly alleged that Fluid Truck and/or HHK Group retained the proceeds that Plaintiff alleges it is owed.  In so doing, Plaintiff alleges that Fluid Truck and/or HHK Grouphave exercised the requisite dominion over the property in question.  In fact, any attempt by Plaintiff in response to this Motion to re-characterize its allegations to claim that either Snyder or Eberhard exercised dominion over the funds would undermine Plaintiff's allegations against Fluid Truck and HHK Group.  Plaintiff cannot have it both ways.  The elements of the claim required it to identify the parties that exercised dominion over its property for purposes of the conversion claim.  Plaintiff did not identify Eberhard or Snyder as allegedly exercising dominion over the property at issue and its conversion claim fails against Defendants fails for this reason alone.

- 12 -

The only mention of Eberhard or Snyder in connection with Plaintiff's conversion claim is the same conclusory, unsupported allegation that Plaintiff recites in support of its claims for fraud and civil theft against Eberhard and Snyder as discussed *supra*—namely that "James Eberhard and Jennifer Snyder have directed, actively participated in, and cooperated in the conversion of Urban Interests and other Class members' property, and are equally therefore liable for such conversion." [*Id.* at ¶ 75.]  The mere repetition of a conclusory allegation does not lend it more credibility.  As with its other invocations of the same conclusory allegation, Plaintiff fails to put forth a single factual allegation in the Amended Complaint to support its assertion that Defendants "directed, actively participated in, and cooperated" with the alleged conversion.  Plaintiff identifies other individuals at Fluid Truck, such as Brennen DuPree (¶ 32) but does not allege any connection between DuPree and either Snyder or Eberhard.  Similarly, Plaintiff acknowledges that Fluid Truck was run by a Board of Directors but offers no explanation for how Snyder or Eberhard—and not the Board "directed" the alleged conversion.  Most inconsistent of all, Plaintiff alleges that Defendant Avila—the person who took over Eberhard's operational role at Fluid Truck—also "approved of, sanctioned, and cooperated" in the alleged conversion. [ECF No. 33 at ¶ 76.]  Given that Defendant Avila filled the same position as Eberhard and they did not work at Fluid Truck at the same time, there is no plausible way both Eberhard and Avila could have "cooperated" in the *same conversion*.  Plaintiff's conclusory, unsupported allegation against Eberhard and Snyder is insufficient to satisfy the pleading standard for a claim of conversion.  *See Iqbal*, 556 U.S. at 678 (finding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Therefore, Plaintiff's claim

- 13 -

4917-1175-5277.4

for conversion against Defendants Eberhard and Snyder should be dismissed.

### F. Plaintiff Fails to Allege Facts Sufficient to Impute Liability to Defendants for Fluid Truck's Actions.

Having failed to sufficiently allege that either Eberhard or Snyder engaged in conduct sufficient to make them personally liable for fraud, civil theft, or conversion, Plaintiff may attempt to argue that the liability of Fluid Truck or HHK Group should be imputed to Defendants based upon their roles as corporate officers at Fluid Truck. Even if Plaintiff were to assert this theory—which is *not* set forth in the Amended Complaint—that too would fail because Plaintiff has failed to allege facts sufficient to plausibly impute liability to Defendants.

Courts have held that corporate officers cannot be held personally liable for a tort committed by a corporation solely based upon his or her official capacity. *See Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003). "To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort." *Id.* at 868. "At a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization." *Id.* at 868.

The allegations in the Amended Complaint are insufficient to meet this standard. In conclusory fashion, Plaintiff alleges that Defendants were the "masterminds" behind the alleged scheme to retain Plaintiff's funds and that Defendants "launched, supervised, and personally directed all day-to-day details" of the alleged scheme. [*See* ECF No. 32 at ¶¶ 1, 44.] Yet the Amended Complaint is bereft of a single factual allegation that supports Plaintiff's bald assertion. Nowhere in the Amended Complaint does Plaintiff allege any facts about discrete actions taken by Eberhard or Snyder to supervise or personally direct any of the alleged conduct that led to the alleged harm—no

- 14 -

communications between Plaintiff and Defendants are alleged, no direction given by Defendants to Fluid Trucks' (unidentified) personnel to engage in the alleged wrongful conduct, nothing.  Further, Plaintiff fails to set forth allegations that support a finding that *both* Eberhard and Snyder "supervised" or "personally directed" all day-to-day activities despite occupying different roles at Fluid Truck. Moreover, Plaintiff points to communications it had with Brennan DuPree, Fluid Truck's head of FVIP relations and with Douglas Trussler, a partner with Bison Asset Management, LLC, which is an investor in Fluid Truck.  [*Id.* at ¶¶ 32, 41.]  Perhaps those allegations could theoretically support an assertion that either of those individuals played a role in the alleged wrongdoing, but the theoretical involvement of *other* individuals in no way supports a finding as to the involvement of Snyder or Eberhard, particularly given that Plaintiff does not allege any working or supervisory relationship between either Snyder or Eberhard and either DuPree or Trussler.  Finally, as set forth *infra*, Plaintiff also seeks to hold Defendant Avila liable under the theory that he "approved of" the allegedly improper conduct.  Such an allegation against an individual who *never* worked at Fluid Truck at the same time as either Eberhard or Snyder— undercuts Plaintiff's claims that Eberhard and Snyder "supervised" and "personally directed" all of the allegedly tortious actions that were undertaken by Fluid Truck.

On the face of the Amended Complaint, it is clear that Plaintiff is simply speculating that by virtue of Eberhard's and Snyder's positions at Fluid Truck they were the masterminds of the alleged scheme.  Such speculation is insufficient to impute liability to Defendants.  Accordingly, the Court should reject any argument by Plaintiff seeking to impute liability to Defendants.

4917-1175-5277.4

### G. Plaintiff Fails to State a Plausible Claim for Injunctive and Declaratory Relief as to Eberhard and Snyder.

"'Injunctive relief is not a separate cause of action; rather it is one form of relief for the other legal violations alleged.'" *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018) (quoting *Burns v. Mac*, 2014 WL 124032, at *2 n.1 (D. Colo. Mar. 26, 2014)). Plaintiff's claim for injunctive relief as to Defendants is solely related its claims for fraud, civil theft, and conversion. [*See* ECF No. 33 at ¶¶ 83-87.] For the same reasons that those claims should be dismissed as to Eberhard and Snyder, so too should any claim for injunctive relief related to those claims.

Regarding Plaintiff's claim for declaratory relief, it is not clear whether Plaintiff is seeking such relief under Colorado's Uniform Declaratory Judgment Law ("CUDJL"), C.R.S. 13-51-106, or the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. *See* ECF No. 33 at pp. 17-18. However, in either case declaratory relief does not create a substantive right, only a procedural avenue for a remedy. *See Air Sols., Inc. v. Spivey*, 2023 COA 14, ¶ 95, 529 P.3d 644, 664, *reh'g denied* (Mar. 23, 2023), *cert. denied*, No. 23SC283, 2023 WL 8006993 (Colo. Nov. 14, 2023) (noting the "CUDJL provides for a remedy[.]"); *see also Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (finding "[b]ecause Mr. Long's substantive claims have failed, his request for declaratory relief in relation to those claims is not viable."). Accordingly, for the same reasons Plaintiff's claims for fraud, civil theft, and conversion should be dismissed as to Eberhard and Snyder, so too should the claim for declaratory relief.

### V. CONCLUSION

For the reasons set forth herein, the Motion should be granted and the claims against Defendants Eberhard and Snyder should be dismissed.

- 16 -

4917-1175-5277.4

Respectfully dated this 23rd day of January, 2025.

KUTAK ROCK LLP

By: *s/ Chad T. Nitta*
Chad T. Nitta, # 31921
chad.nitta@kutakrock.com
Shelby L. Morbach, #55913
shelby.morbach@kutakrock.com
Heather N. Tilley, #54149
Heather.tilley@kutakrock.com

2001 16th Street
Suite 1800
Denver, CO  80202-5292
Telephone: (303) 297-2400
Facsimile: (303) 292-7799

*Attorneys for Defendants James Eberhard and Jenifer Snyder*

- 17 -

4917-1175-5277.4

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2025, I electronically filed the foregoing **DEFENDANTS JAMES EBERHARD AND JENIFER SNYDER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David C. Holman, Esq.
John K. Crisham, Esq.
Crisham & Holman LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
*Attorneys for Plaintiff*

William R. Thomas, Esq.
O'Hagan Meyer, PLLC
1331 17th Street, Suite 350
Denver, CO 80202
wthomas@ohaganmeyer.com
*Attorney for Defendant Thomas Scott Avila*

John Chrisman Hawk, Esq.
Womble Bond Dickinson LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com
*Attorney for Fluid Market, Inc. and Fluid Fleet Services LLC*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Tel: 303-297-2400
Chad.nitta@kutakrock.com

- 18 -