# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. Civil Action No.: 1:24-cv-02811-GPG-NRN

URBAN INTERESTS LLC, individually and on
behalf of all other similarly situated,

        Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES, LLC,
HHK VEHICLES, INC.,
JAMES EBERHARD,
JENIFER SNYDER,
THOMAS SCOTT AVILA, and
PALADIN MANAGEMENT GROUP, LLC

        Defendants.

## MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT AGAINST HHK VEHICLES, INC.

4905-2965-6612.3

Defendant, HHK Vehicles, Inc. (herein known as "Defendant" or "HHK"), by and through its undersigned counsel, hereby submits the following Motion to Dismiss the Second Amended Class Action Complaint Against HHK Vehicles, Inc. (the "Motion"), and in support thereof, states as follows:

## I.    CERTIFICATE OF CONFERRAL

Undersigned counsel certifies that via an in-person conference that occurred on May 1, 2025, counsel for Defendant conferred in good faith with counsel for Plaintiff Urban Interests LLC ("Plaintiff") regarding the grounds for dismissal set forth in this Motion and the relief sought herein. In response, counsel for Plaintiff confirmed that Plaintiff opposes the relief sought in the Motion.

## II.    INTRODUCTION

Since Plaintiff filed its initial Class Action Complaint in early October of 2024 (the "Initial Complaint"), it has collected over 80G of discovery, equating to over 225,000 documents produced by the Parties and third-party entities. Critically, Plaintiff's Second Amended Class Action Complaint (the "SAC") does not reflect the wealth of discovery Plaintiff has enjoyed over the nearly seven months since it initially filed this case. Instead, the SAC omits and misrepresents crucial facts in a patently strategic effort by Plaintiff to shift the perception of culpability away from the bankrupt entity *actually* responsible for Plaintiff's damages—Fluid Market, Inc. ("Fluid")—on to distinct actors who might offer Plaintiff a better hope of recovery. Plaintiff's strategic desire to avoid the pitfalls of bankruptcy law is not sufficient justification to flout basic pleading requirements.

Unsurprisingly, Plaintiff's efforts to skip over facts pointing to Fluid's culpability and to redirect Fluid's actions toward other actors has resulted in a pleading that is a far cry from meeting the requirements of the Rules of Civil Procedure. On the face of the SAC,

- 1 -

Plaintiff pleads a few facts here and there and, where no facts exist that would establish liability for any individual or entity other than Fluid, Plaintiff resorts to conclusory statements unsupported by factual allegations. The Court should scrutinize the SAC to distinguish true factual allegations from mere conclusory statements. Plaintiff has obtained access to hundreds of thousands of pages of documents. Every claim in the SAC should be supported by a plethora of detailed factual allegations. The absence of such supporting factual allegations in the SAC underscores Plaintiff's strategic effort to cherry pick facts to build a false narrative establishing liability for individuals and entities not subject to bankruptcy protections. Plaintiff's efforts to shift responsibility to others for actions that were clearly taken by Fluid has already cost each Defendant in this case tens of thousands of dollars to defend against constantly changing allegations.

HHK is merely Plaintiff's latest target for attributing liability for actions that Plaintiff previously attributed to Fluid. Despite freely admitting that it was unaware of the existence of HHK prior to initiating this lawsuit, and despite having alleged across three different Complaints that the proceeds from the sales of its vehicles were stolen or converted by Fluid at the direction of the individual Defendants, Plaintiff now suddenly alleges that those funds were also somehow stolen or converted by HHK. Despite having received hundreds of thousands of documents and despite having taken hours of depositions, Plaintiff fails in the SAC to set forth a factual basis to support a finding that HHK, not Fluid, retained the funds in question. The Court need look no further than the fact that Plaintiff has *always* alleged—and *still* alleges in the SAC—that *Fluid* retained the funds at issue. Plaintiff's strategic desire to avoid becoming embroiled in Fluid's bankruptcy is not a proper basis for Plaintiff to suddenly shift to alleging that HHK possesses the funds that

Plaintiff has always alleged are in the possession of Fluid.  The Court should reject Plaintiff's tactical effort to shift responsibility from Fluid to HHK simply because HHK is not in bankruptcy.  The SAC should be dismissed as to HHK.

## III.     RELEVANT FACTUAL BACKGROUND

As alleged in the SAC, Fluid and Fluid Fleet Services LLC (collectively, "Fluid Truck") operated "a Fluid Vehicle Investor Platform ("FVIP") that enabled individuals and small business owners to purchase fleets of vehicles, and then rent them out via Fluid Truck's platform."  [ECF No. 76 at ¶ 17].  When vehicles on the FVIP platform reached the end of their lifespan, FVIP vehicle owners could elect to decommission their vehicles and have Fluid Truck sell them on their behalf.  [*Id.* at ¶ 22].  Through this process, outlined in Fluid Truck's decommissioning policy, once Fluid Truck sold the vehicles, it would deduct certain costs and fees and remit the remaining sales proceeds to the FVIP owners.  [*Id.* at ¶ 23].  The SAC alleges that co-founders and former CEO and general counsel of Fluid Truck, James Eberhard and Jenifer Snyder, respectively, contributed to the Fluid Truck policy reflecting this decommissioning process.   [*Id.* at ¶¶ 1, 23].

According to the SAC, Fluid Truck never informed the FVIP owners that Fluid Truck would effectuate the sale of their vehicles through a third-party entity, HHK, that had obtained the motor vehicle dealer license required to sell vehicles through third-party auction services.  [*Id.* at ¶¶ 26-31].  Once HHK sold an FVIP vehicle, it was supposed to transfer the sale proceeds to Fluid Truck, which was then responsible for transferring the sale proceeds to the FVIP whose vehicle had been sold.  [*Id.* at ¶¶ 23, 32, 36-38]. According to the SAC, this decommissioning process eventually broke down, and FVIP owners were not paid the proceeds collected from the sale of their vehicles.  [*Id.* at ¶¶ 1,

- 3 -

48-51]. Fluid Truck's Board of Directors eventually terminated Eberhard and Snyder from their roles and retained a management company—Paladin Management Group, LLC ("Paladin"), whose co-founder, Scott Avila, was appointed interim CEO—to take over. [*Id.* at ¶¶ 65-66]. According to the SAC, Paladin and Avila continued to fail to pay to the FVIP owners the proceeds from the sale of their vehicles. [*Id.* at ¶ 66]. This lawsuit followed.

## IV.  LEGAL STANDARD

### A.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of plaintiff's complaint. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Rule 8(a)(2) requires that all complaints contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Each element of Plaintiff's claim must be plausibly alleged with underlying facts in the complaint, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To survive a motion to dismiss, a complaint must present "allegations plausibly suggesting (not merely consistent with)" liability for the claims alleged. *See id.* at 678. The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Choice of Law.

In multistate tort cases, courts determine which state's substantive law applies using the "most significant relationship test." *Sec. Serv. Fed. Credit Union v. First*

*American Mortg. Funding, LLC*, Civil Action No. 08-cv-00955-WYD-CBS, 18 (D. Colo. 2012). "Using this approach, 'the court must determine which state has the most significant relationship to the occurrence and the parties.'" *Id.* (quoting *Abdelsamed v. New York Life Ins. Co.*, 857 P.2d 421, 428 (Colo. App. 1993)). "This analysis requires an evaluation of the relative importance of the following factors: 1) where the injury occurred; 2) where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; and 4) the place where the relationship is centered." *Id.* (internal citation omitted).

Here, the alleged injury and conduct that allegedly caused the injury occurred in Colorado because the funds Plaintiff alleges were improperly retained were for vehicles sold in Colorado. Additionally, Fluid, Eberhard, Snyder, and HHK are domiciled in Colorado, and the relationship between Plaintiff and Fluid Truck was, at all times, centered in Colorado. Accordingly, Colorado law applies to Plaintiff's claims. Plaintiff conceded this point in its response to Defendants Eberhard and Snyder's original Motion to Dismiss the Amended Class Action Complaint (the "ACAC"). *See* ECF No. 45 at 6, n1.

### C. Civil Theft.

"To prevail on a claim for civil theft, 'a party must prove, by a preponderance of the evidence, that the defendant committed all of the elements of criminal theft.'" *In re Estate of Chavez*, 2022 COA 89M, ¶ 47 (quoting *Black v. Black*, 2018 COA 7, ¶ 93). "A person commits civil theft when he (1) knowingly obtained, retained, or exercised control over 'anything of value of another without authorization or by threat or deception'; and (2) acted intentionally or knowingly in ways that deprived the plaintiff of the thing of value permanently." *Id*. "Thus, civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property." *Id*. (internal

- 5 -

4905-2965-6612.3

quotations omitted).

### D. Conversion.

"Conversion under Colorado law is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.'" *Scott v. Scott*, 2018 COA 25, ¶ 31 (quoting *Itin v. Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000) (quoting *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956))). "To state a claim for conversion, [the plaintiff] was required to allege in her complaint that '(i) [the defendant] exercised dominion or control over property; (ii) that property belonged to [the plaintiff]; (iii) [the defendant's] exercise of control was unauthorized; (iv) [the plaintiff] demanded return of the property; and (v) [the defendant] refused to return it.'" *Id.* (quoting *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F.Supp.2d 1066, 1081 (D. Colo. 2012) (citing *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984))).

### E. Money Had and Received.

"[T]he action for money had and received is a slightly nebulous action with few set parameters. Few jurisdictions have defined the elements for proving the claim, which allows them to apply the claim to a wide variety of situations." § 2:5. Money had and received, 1 Handling Business Tort Cases § 2:5. "This claim is based on the well-established common law action of assumpsit arising where one has received money which in equity and good conscience he ought to pay over to another." *Nat'l Sur. Corp. v. Citizens State Bank*, 41 Colo. App. 580, 582, 593 P.2d 362, 364 (1978), *aff'd*, 199 Colo. 497, 612 P.2d 70 (1980). Although the Courts have given minimal instruction as to the elements required to prove such a claim, one thing is clear: a claim for money had and received requires that the defendant actually be in possession of the money at issue. *Ph.*

- 6 -

*Zang Brewing Co. v. Bernheim*, 7 Colo. App. 528, 529–30, 44 P. 380, 381 (1896) ("It is wholly unnecessary to the maintenance of this action that there should be any privity between the parties, or any promise to pay, other than the implied promise which results **when one man *has* another's money**, which he is bound to pay over.") (emphasis added); *see also Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1152 (Colo. App. 1993) ("The remedy of restitution is based on the general principle that **one should not be permitted to *keep* that which** 'in equity and good conscience' **should be restored to another**, and it encompasses, among others, the theories of recovery asserted here by trustee: unjust enrichment, quasi-contract, money had and received, and constructive trust.") (emphasis added).  Accordingly, if the money at issue in a claim for money had and received has already been passed on by the defendant to another party—in good faith—such a claim cannot lie.  *Id.*

**V.   ARGUMENT**

  **A.   Because the SAC Fails to Plausibly Allege that HHK Acted Without Authorization, It Cannot Sustain Claims for Civil Theft or Conversion.**

Critically, both civil theft and conversion require that a defendant's exercise of dominion over a thing of value belonging to the plaintiff be done *without authorization*.  If a plaintiff cannot establish that the defendant acted without authorization, neither a claim for civil theft nor conversion can be established.  *In re Estate of Chavez*, ¶ 47; *see also Scott*, ¶ 31.  Here, Plaintiff has failed to plausibly allege that HHK acted without authorization.  In fact, Plaintiff's allegations suggest otherwise—that HHK was, in fact, authorized to act as it did.

As an initial matter, the SAC does not include a single allegation that HHK owed any duty to Plaintiff—contractual, legal, or otherwise.  The SAC does not allege any

relationship between Plaintiff and HHK. Rather, the SAC alleges a relationship between Plaintiff and Fluid Truck. (*See* SAC at ¶¶ 19-23, 25). Accordingly, *Fluid Truck*—**not** HHK—is the Party that owed legal and contractual duties to Plaintiff. The sole factual allegation in the SAC that Plaintiff apparently believes justifies liability against HHK for civil theft and conversion is that "[a]t no time did HHK Vehicles have permission or authorization from FVIPs to possess proceeds from their vehicle sales. FVIP owners were never informed, whether by HHK Vehicles, Eberhard, Snyder, or anyone else, that the sales proceeds to which those FVIP owners were entitled would be possessed and controlled by HHK Vehicles." [*Id.* at ¶ 31]. Because HHK had no relationship with FVIPs, HHK had no obligation to inform FVIPs of its involvement. Moreover, this allegation presupposes—incorrectly—that Plaintiff was the sole party that was allowed to authorize HHK's involvement. Contrary to Plaintiff's belief, HHK's involvement could be—and was—authorized by Fluid Truck, the entity Plaintiff admits it authorized to sell its vehicles.

Specifically, the SAC admits that "[a]t all relevant times, Urban Interests was the title owner of the Vehicles ***that it authorized Fluid Truck to sell on its behalf***." [*Id.* at ¶ 44 (emphasis added)]. Plaintiff does not allege in the SAC that it placed any limits on Fluid Truck's authorization to sell its vehicles or that Fluid Truck was required to keep it informed regarding each step of the sales process. Even if Plaintiff had alleged that Fluid Truck was legally and contractually obligated to inform FVIP owners of its plans to route vehicle sales through HHK, and even if Plaintiff had alleged Fluid Truck failed to satisfy that obligation, such facts would *still* not justify a conclusion that such failures were the fault and legal responsibility of HHK. Rather, if Fluid Truck was unauthorized to involve HHK in the disposition of FVIP vehicles, such a violation would be one by Fluid Truck

- 8 -

against the FVIP owners—not by HHK.

Moreover, though, Plaintiff does not identify anything in the SAC that it alleges prohibited Fluid Truck from involving HHK in the vehicle sale process nor anything that it alleges imposed on Fluid Truck an obligation to inform FVIP owners of HHK's participation in the vehicle decommissioning and sale process. Similarly, the SAC does not allege that HHK took control of FVIP vehicles by force, threat, deception, or some other improper means or even that HHK's involvement in the vehicle sale process was done without Fluid Truck's express approval. [*See generally* SAC]. Indeed, based on the allegations in the SAC, Fluid Truck is the only entity that could have gotten HHK involved in the vehicle sales process and even specifically authorized HHK's involvement. [*Id.* at ¶¶ 16-47]. Because Fluid Truck authorized HHK's involvement in the FVIP vehicle sales process, Plaintiff cannot maintain a claim against HHK for civil theft or conversion, because both claims require that Defendant exercise control over Plaintiff's property "without authorization."[1]  *In re Estate of Chavez*, ¶ 47; *see also Scott*, ¶ 31. Far from *not* authorizing HHK, the allegations support a finding that HHK's actions *were* authorized by Plaintiff by virtue of its unlimited authorization for "Fluid Truck to sell [its vehicles] on its behalf." [*See* SAC at ¶44.] Because the SAC supports a finding that HHK acted with Fluid Truck's authority and because the SAC is bereft of any facts to support a finding that Plaintiff restricted Fluid Truck from using HHK, the conversion and civil theft claims must be dismissed as against HHK.

Moreover, even if Plaintiff were to allege—which it did not—that Fluid Truck's

---

[1] A claim for civil theft can be maintained if a defendant exercises control over a plaintiff's property "without authorization or by threat or deception," but Plaintiff likewise does not allege that HHK used threats or deception to obtain control over its vehicles.

- 9 -

delegation of this authority to HHK somehow exceeded Fluid Truck's own authorization, such an allegation would *still* not be sufficient to support a claim of civil theft against HHK because such a claim requires a defendant's improper exercise of control over a plaintiff's property to be done "knowingly." *In re Estate of Chavez*, ¶ 47. In light of the fact that Fluid Truck was in possession of both the vehicles and the physical copies of the titles of the vehicles [SAC at ¶¶ 20-21], HHK would have no reason to know that Fluid Truck was not authorized by the vehicle owners to enlist HHK to sell the vehicles on its behalf. More importantly for purposes of this Motion, though, Plaintiff did not allege that HHK knew it was acting without authorization. Such allegation is a *requirement* for a civil theft claim. *In re Estate of Chavez*, ¶ 47 ("Thus, civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property."). Because the SAC does not allege HHK's specific intent to permanently deprive FVIP owners of the benefit of their property, the civil theft claim against HHK must be dismissed.

### B. Because the SAC Fails to Plausibly Allege That HHK Retained Money Belonging to Plaintiff, It Cannot Sustain a Claim for Money Had and Received.

As explained herein *supra*, an action for money had and received may only be brought against a party that is actively in possession of the money at issue. This is because the action "is based on the general principle that one should not be permitted to keep that which 'in equity and good conscience' should be restored to another." *Berger*, 868 P.2d at 1152. If a defendant does not have the money, the defendant cannot keep the money—plain and simple. Rather, the action should be brought against the party that actually has the money. In this case, as Plaintiff is *well* aware, that party is Fluid Truck.

Because Plaintiff has subpoenaed and received HHK's bank records and *knows* that HHK did not retain the sales proceeds from FVIP vehicle sales and did, in fact, pass

- 10 -

those proceeds through to Fluid Truck, Plaintiff could not include any factual allegations in the SAC stating that HHK had retained the funds it received for the sale of Plaintiff's vehicles. Rather, the only allegations that HHK had retained funds belonging to Plaintiff are an incomplete and mischaracterized factual allegation that "Fluid Truck employees [] determined in late July 2024 that HHK Vehicles had failed to transfer more than $1.5 million HHK Vehicles has received from FVIP vehicle sales to Fluid Truck" [*See* SAC at ¶ 39] and inconsistent and conclusory statements that "HHK Vehicles have retained the proceeds from the sale of the vehicles…." [*Id.* at ¶ 140]. Both allegations are insufficient.

The latter is plainly a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements[,]" which the Court need not accept as true.[2] *Ashcroft*, 556 U.S. at 663. The former was pleaded very carefully to give the appearance of having alleged sufficient facts while also avoiding a Rule 11 violation. Specifically, the allegation does not actually state that HHK *did* fail to transfer $1.5 million in FVIP vehicle sales proceeds. Rather, the SAC merely states that, in late July of 2024, "Fluid Truck employees [] determined" that HHK had failed to transfer $1.5 million in FVIP vehicle sales proceeds. The SAC takes no position on the veracity of the determination reached by Fluid Truck employees nearly one year ago, nor whether, in the nearly one year since that determination was reached, HHK worked with Fluid Truck to reconcile its books and transfer any funds it received for FVIP vehicle sale proceeds. This way, Plaintiff avoided

---

[2] The conclusory nature of the allegation that HHK retained funds is demonstrated by the facts that (i) there are no actual *factual* allegations regarding HHK's **ongoing** retention of funds or how much money HHK allegedly retained and (ii) the SAC contains a slew of factual allegations demonstrating that Fluid Truck is the entity that actually retained the funds. Two distinct entities cannot both be in possession of the same funds. As explained *infra*, given the specificity with which Plaintiff alleges that Fluid Truck actually retained the funds, its conclusory allegations that HHK *also* retained the *same* funds cannot stand.

- 11 -

a claim that it knowingly alleged facts that documents in its possession have disproven.

Strategic wording aside, it is indisputable that the sole allegation that "Fluid Truck employees [] determined" nearly a year ago that HHK had at one point in time retained funds that should have been paid to Fluid Truck is insufficient to state a claim that HHK is **still** in possession of funds belonging to Plaintiff. If the Court somehow finds that the distinction between an allegation that "*Fluid Truck employees determined* that HHK retained funds" and an allegation that "HHK *did* retain funds" is too tenuous a ground upon which to grant dismissal, it could instead grant dismissal on the grounds that the SAC does not include any factual allegations that, as of the date of the SAC, HHK *continues* to retain funds properly belonging to Plaintiff. A claim for money had and received cannot be maintained against a defendant who does not actively possess the funds at issue. *Berger*, 868 P.2d at 1152.

Far from a plain allegation that HHK is still in possession of monies belonging to Plaintiff, the SAC is filled with allegations that Plaintiff's monies are in the possession of Fluid Truck. [*See, e.g.,* SAC at ¶ 33 ("Rather than transfer the money that belonged to FVIP vehicle owners, Eberhard was using their money to fund, among other things, Fluid Truck's failing operations."), ¶ 50 ("After months of delays, deception, and obfuscation about the status of payment, Fluid Truck finally admitted to Urban Interests and other members of the class that it was intentionally keeping more than $11 million in stolen funds owed to Plaintiff and the class as sales and claims proceeds."), ¶ 51 ("Simply put, Fluid Truck [] ha[s] stolen from the FVIP vehicle owners to fund Fluid Truck's ongoing operations—and Fluid Truck effectively concedes as much."), ¶ 63 ("Fluid Truck was in dire financial distress and using Vehicle sales proceeds that belonged to FVIPs for its

operations…."); ¶ 69 ("For Fluid to have 'sufficient funds through 12/31, Mr. Avila made 'a few key assumptions,' including that '[n]o payments to antecedent debts for . . . 'FVIP's (including the $250K the company was previously paying)' would be made.  In other words, Mr. Avila ratified—and doubled down on—the previous management team's approach of using sales and insurance proceeds owed to FVIPs for the company's operations."), ¶¶ 70-71 ("In an August 1, 2024 email, Mr. Avila was instructed by a Fluid Truck employee and a Paladin partner that the FVIP vehicle sale funds could not be used for Fluid Truck's operations.  Despite this, at Mr. Avila's direction, those funds were used for Fluid Truck's operating expenses.  Fluid Truck then drained monies from the Disposition Accounts and insurance claim proceeds, rather than remit those monies to the FVIP owners."), ¶ 79 ("Mr. Avila and Paladin representatives personally approved of Fluid Truck's continued use of FVIP owners' sales and insurance proceeds, with the knowledge that such funds were sales and insurance proceeds owed to FVIP owners."), and ¶ 83 ("Douglas Trussler, a partner with Bison Capital Asset Management, LLC ("Bison Capital"), which was an investor in Fluid Truck, informed Urban Interests by telephone on October 2, 2024, and by email on October 3, 2024, that Fluid Truck fully intends and is resolved to keep the sales proceeds stolen from [Plaintiff] and other FVIP owners.")]. Because the Court **must** accept as true all well-pleaded factual allegations in a complaint, the plethora of factual allegations asserting that Fluid Truck retained the funds from the FVIP vehicle sales proceeds must be taken as true.

Further, a threadbare recital that is unsupported by any factual allegations is insufficient to overcome the specific allegations that Fluid Truck retained the monies.  *See Ashcroft*, 556 U.S. at 663 (holding that a court must disregard any conclusory statements

- 13 -

that contradict the factual allegations that must be taken as true.) Because two distinct entities cannot both be in possession of the same funds at the same time, it cannot be true that **both** Fluid Truck and HHK are currently in possession of the same funds. Thus, if the Court must accept the SAC's allegations that "Fluid Truck finally admitted to Urban Interests and other members of the class that it was intentionally keeping more than $11 million in stolen funds owed to Plaintiff and the class as sales and claims proceeds" [*See* SAC at ¶ 50], then it must also disregard the SAC's conclusory statement that "HHK Vehicles have retained the proceeds from the sale of the vehicles without paying those proceeds over to Urban Interests and other Class members." [*Id.* at ¶ 140]. Moreover, because the SAC alleges that the total amount misappropriated from FVIPs is "more than $11 million" [*Id.* at ¶ 1] and because the SAC concedes that Fluid Truck *itself* **admits** that "it was intentionally keeping more than $11 million in stolen funds," [*Id.* at ¶ 50], Plaintiff cannot plausibly claim that HHK also retained stolen funds, since it has already conceded that the full sum of the stolen funds is being retained by Fluid Truck, *by its own admission*.

Because Plaintiff cannot—and has not—plausibly allege[d] that HHK is **currently** still in possession of the funds from the FVIP vehicle sales, it cannot maintain an action against HHK for money had and received, and the Court should dismiss that claim as to HHK.

## VI. CONCLUSION

The only claims raised against HHK are for (i) civil theft, (ii) conversion, and (iii) money had and received. Because the SAC does not plausibly allege that HHK's involvement in the sale of FVIP vehicles and the collection of FVIP vehicle sale proceeds on Fluid Truck's behalf was unauthorized, the claims against HHK for civil theft and

- 14 -

conversion must be dismissed. Moreover, because the SAC does not include *any* allegations that HHK had a specific intent to permanently deprive FVIP owners of the benefit of their property, the civil theft claim against HHK must be dismissed. Finally, because the SAC does not plausibly allege that HHK is currently in possession of funds belonging to FVIP owners—and, in fact, alleges, to the contrary, that all such funds are in the possession of Fluid Truck—the claim for money had and received must be dismissed as to HHK.

Respectfully dated this 2nd day of May, 2025.

KUTAK ROCK LLP

By: *s/ Chad T. Nitta*
Chad T. Nitta, # 31921
chad.nitta@kutakrock.com
Shelby L. Morbach, #55913
shelby.morbach@kutakrock.com
Heather N. Tilley, #54149
Heather.tilley@kutakrock.com

2001 16th Street
Suite 1800
Denver, CO  80202-5292
Telephone: (303) 297-2400
Facsimile: (303) 292-7799

*Attorneys for Defendants HHK Vehicles, Inc., James Eberhard and Jenifer Snyder*

- 15 -

# CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2025, I electronically filed the foregoing **MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT AGAINST HHK VEHICLES, INC.** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| David C. Holman, Esq.<br>John K. Crisham, Esq.<br>Christopher T. Carry, Esq.<br>Crisham & Holman LLC<br>2549 West Main Street, Suite 202<br>Littleton, CO 80120<br>dave@crishamholman.com<br>john@crishamholman.com<br>chris.carry@chrisamholman.com<br>*Attorneys for Plaintiff* | John Chrisman Hawk, Esq.<br>Womble Bond Dickinson LLP<br>1899 Wynkoop Street, Suite 750<br>Denver, CO 80202<br>John.hawk@wbd-us.com<br><br>Laura D. Jones, Esq.<br>David M. Bertenthal, Esq.<br>Timothy P. Cairns, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market St, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899<br>ljones@pszlaw.com<br>dbertenthal@pszlaw.com<br>tcairns@pszlaw.com |
| William R. Thomas, Esq.<br>Brian R. DeMocker, Esq.<br>O'Hagan Meyer, PLLC<br>1331 17th Street, Suite 350<br>Denver, CO 80202<br>wthomas@ohaganmeyer.com<br>bdemocker@ohaganmeyer.com<br>*Attorneys for Defendant Thomas Scott Avila* | *Attorney for Fluid Market, Inc. and Fluid Fleet Services LLC* |

                                    *s/ Chad T. Nitta*
                                    Chad T. Nitta
                                    KUTAK ROCK LLP
                                    2001 16th Street, Suite 1800
                                    Denver, CO 80202
                                    Tel: 303-297-2400
                                    Chad.nitta@kutakrock.com

4905-2965-6612.3