# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. Civil Action No.: 1:24-cv-02811-GPG-NRN

URBAN INTERESTS LLC, individually and on
behalf of all other similarly situated,

    Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES, LLC,
JAMES EBERHARD,
JENIFER SNYDER,
THOMAS SCOTT AVILA, and
PALADIN MANAGEMENT GROUP, LLC

    Defendants.

---

## DEFENDANT JENIFER SNYDER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Defendant Jenifer Snyder ("Snyder" or "Defendant") hereby respectfully requests dismissal of all claims for relief as to her set forth in the Second Amended Class Action Complaint [ECF No. 76] pursuant to Fed. R. Civ. P. 12(b)(6). In support therefore, Snyder states as follows:

## I.  CERTIFICATE OF CONFERRAL

Counsel for Snyder certifies that, via an in-person conference that occurred on May 1, 2025, Counsel for Snyder conferred in good faith with counsel for Plaintiff Urban Interests LLC ("Plaintiff") regarding the grounds for dismissal set forth in this Motion and the relief sought herein. In response, counsel for Plaintiff confirmed that Plaintiff opposes the relief sought in the Motion.

## II.  INTRODUCTION

As alleged in the Second Amended Complaint, Fluid Market Inc., and Fluid Fleet Services LLC, (collectively, "Fluid Truck") operated a Fluid Vehicle Investor Platform ("FVIP") that enabled "individuals and small business owners to purchase fleets of vehicles, and then rent them out via Fluid Truck's platform." [ECF No. 76 at ¶ 17.] When vehicles on the FVIP platform reached the end of their lifespan, vehicle owners could elect to have Fluid Truck decommission their vehicles. The FVIP owners could then elect to have Fluid Truck sell the vehicles on the owner's behalf and remit the proceeds from the sales, after deducting certain costs and fees, to the FVIP owners. [*Id.* at ¶ 23.]

According to Plaintiff, it entered into a contractual relationship with Fluid Truck pursuant to which Plaintiff purchased a fleet of 47 vehicles through Fluid Truck's FVIP program. [*Id.* at ¶¶ 19-20.] Notably, Plaintiff does *not* allege anywhere in the Second Amended Complaint ("SAC") that Snyder participated in any way with the negotiation or

- 1 -

drafting of Plaintiff's agreement with Fluid Truck. Plaintiff alleges that, over time, it had Fluid Truck decommission and sell 29 of its 47 vehicles, and that it received the proceeds from those sales. [*Id.* at ¶ 25.] Again, Plaintiff does not allege that Snyder took any discrete actions or played any specific role in the decommissioning of these 29 vehicles or in the distribution of the proceeds to Plaintiff. Rather, when operations were flowing smoothly—as they were for the sale of these first 29 vehicles—Plaintiff attributes all decommissioning and FVIP vehicle sales activities to Fluid Truck. [*Id.*]

Plaintiff then had Fluid Truck decommission and sell 14 additional vehicles. [*Id.* at 45.] Unlike with the first 29 vehicles Fluid Truck sold on behalf of Plaintiff, Plaintiff alleges that a break down in Fluid Truck's decommissioning and sale process caused it to never receive the proceeds from the sale of these 14 additional vehicles. [*Id.* at 46-49.] Plaintiff does not allege that anything changed in terms of Fluid Truck's management or policies and procedures between the sale of these first 29 vehicles and the sale of the next 14 vehicles. Nevertheless, once Fluid Truck's decommissioning and sale process began to break down, suddenly, Plaintiff pivots to attributing all such activities to Defendants Snyder and Eberhard in their personal capacities. Plaintiff offers no explanation for why it attributes all decommissioning and sale activities for the sale of its first 29 vehicles to Fluid Truck and then suddenly shifts to attributing such activities to Defendants Snyder and Eberhard for the next 14 vehicles. But the reason for this is clear—Fluid's filing for bankruptcy protection caused Plaintiff to look elsewhere for recovery.

But the idea that Snyder might offer Plaintiff a higher chance of recovery is not a legitimate reason for Plaintiff to falsely attribute actions plainly taken by Fluid Truck to her. Plaintiff is clear that it was in reliance on *Fluid Truck's* decommissioning policy that it

- 2 -

instructed *Fluid Truck* to decommission its remaining vehicles and, as a result, *Fluid Truck* sold fourteen additional vehicles belonging to Plaintiff. [*Id.* at ¶¶ 42-45.] Plaintiff is similarly clear that it requested that *Fluid Truck* remit the proceeds from the sales but that *Fluid Truck* refused. [*Id.* at ¶ 46.] As the foregoing illustrates, all of Plaintiff's claims in this matter stem from *Fluid Truck*'s alleged refusal to remit to Plaintiff the proceeds from *Fluid Truck*'s decommissioning of fourteen of Plaintiff's vehicles from *Fluid Truck*'s FVIP platform. The SAC is bereft of a single factual allegation that Snyder was *personally* involved in any way with the decommissioning of the *specific* vehicles at issue. Plaintiff does not allege that it engaged in a single communication with Snyder, nor does Plaintiff allege that Snyder took any actions related to Fluid Truck's decommissioning of Plaintiff's vehicles. Instead, Plaintiff simply alleges in conclusory fashion that "Eberhard and Snyder routed vehicle decommissioning activities through Defendant HHK Vehicles" (*Id.* at ¶ 28) and that "[a]t all relevant times until their removal from Fluid's management, Defendants Eberhard and Snyder personally directed the timing of sales proceeds payments to FVIP owners—including whether FVIP owners were paid at all." [*Id.* at ¶ 35.] Not only are such allegations contrary to the well-pleaded allegations that such activities were attributable to Fluid Truck, they are insufficient to justify Plaintiff's inclusion of Snyder in its claims.

As alleged by Plaintiff, each of these claims rest solely on conduct committed by Fluid Truck. Plaintiff fails to point to any conduct by Snyder that could possibly give rise to personal liability against her, because all of the allegedly improper actions were performed by Fluid Truck. Therefore, to the extent Plaintiff seeks to hold Snyder personally liable by virtue of her own actions, Plaintiff fails to state a claim for relief because Plaintiff fails to assert allegations of conduct by Snyder that satisfy the elements

- 3 -

of its claims for fraud, civil theft, or conversion.

Moreover, Plaintiff also fails in the SAC to satisfy the pleading standard to hold Snyder liable for Fluid Truck's or HHK Vehicles' actions by virtue of her direction, active participation in, or cooperation with Fluid Truck's or HHK Vehicles' actions. Despite having the benefits of copious amounts of discovery, hours of deposition, and now *three* attempts at drafting its claims, Plaintiff *still* fails to allege facts sufficient to support its conclusory allegations that Snyder *actually* directed, participated in, or cooperated with any of the alleged conduct of Fluid Truck or HHK Vehicles. Accordingly, all of the claims against Snyder should be dismissed.

## III.   LEGAL STANDARD

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of plaintiff's complaint. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Rule 8(a)(2) requires that all complaints contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Each element of Plaintiff's claim must be plausibly alleged with underlying facts in the complaint, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To survive a motion to dismiss, a complaint must present "allegations plausibly suggesting (not merely consistent with)" liability for the claims alleged. *See id.* at 678. The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In multistate tort cases, courts determine which state's substantive law applies using the "most significant relationship test." *Sec. Serv. Fed. Credit Union v. First American Mortg. Funding, LLC*, Civil Action No. 08-cv-00955-WYD-CBS, 18 (D. Colo. 2012). "Using this approach, 'the court must determine which state has the most significant relationship to the occurrence and the parties.'" *Id.* (quoting *Abdelsamed v. New York Life Ins. Co.*, 857 P.2d 421, 428 (Colo. App. 1993)). "This analysis requires an evaluation of the relative importance of the following factors: 1) where the injury occurred; 2) where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; and 4) the place where the relationship is centered." *Id.* (internal citation omitted).

Here, the alleged injury and conduct that allegedly caused the injury occurred in Colorado because the funds Plaintiff alleges were improperly retained were for vehicles sold in Colorado. Additionally, Fluid, Eberhard, Snyder, and HHK are domiciled in Colorado, and the relationship between Plaintiff and Fluid Truck was, at all times, centered in Colorado. Accordingly, Colorado law applies to Plaintiff's claims. Plaintiff conceded this point in its response to Defendants Eberhard and Snyder's original Motion to Dismiss the Amended Class Action Complaint (the "ACAC"). *See* ECF No. 45 at 6, n1.

## IV. ARGUMENT

### A. The SAC Does Not State a Claim for Fraud Against Snyder.

"A plaintiff seeking to prevail on a claim of fraud must establish: (1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Vinton*

- 5 -

4926-1474-4893.2

*v. Vorzi*, 269 P.3d 1242, 1247 (Colo. 2012) (citing, *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *Brody v. Bock*, 897 P.2d 769, 775-76 (Colo. 1995); *Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1117-8 (Colo. 1989); *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987); *see also* CJI–Civ. 19:1 (CLE ed. 2011)).

### 1. The SAC Fails to Plausibly Allege Fraud Against Snyder.

In the SAC, each of Plaintiff's allegations regarding the alleged fraudulent representation are solely premised on the conduct of Fluid Truck. Specifically, Plaintiff identifies Fluid Truck's decommissioning policy as the fraudulent representation underlying its claim for fraud and specifically attributes the fraudulent representations to Fluid Truck. [*See* ECF No. 76 at ¶ 103] (alleging that "**Fluid Truck's decommissioning policy** represented that it would 'sell [the] vehicle on [the owners'] behalf' through a third-party auctioning service. **Fluid Truck** further represented that, from the sale proceeds and other amounts due, it would only deduct a decommissioning fee, the cost of any necessary repairs, and other applicable fees, and then remit the remaining proceeds to the relevant vehicle owner.") (emphasis added.) Plaintiff further alleges that *Fluid Truck* made the policy available on its website and that *Fluid Truck* distributed the policy to FVIP owners. [*Id.* at ¶ 23.]

Plaintiff's only effort to implicate Snyder in the fraud is by stating that "Defendants Eberhard and Snyder both revised and approved the Fluid Truck decommissioning policy" [*Id.*] and that "through the decommissioning policy[,] Eberhard and Snyder explicitly represented that 'Fluid will manage the sale and collect the fees and remit the money minus any fees **within 30 days of the sale**.'" [*Id.* at ¶ 24 (emphasis in SAC)]. This is one potent example of Plaintiff's confusion as to whether it is alleging individual liability

- 6 -

against Snyder for a statement she made in her personal capacity or whether it is seeking to impute Fluid Truck's liability for fraud to Snyder by virtue of her role as an officer of Fluid Truck. Plaintiff has already alleged that the fraudulent statement was contained in "**Fluid Truck's decommissioning policy**." [*Id.* at ¶ 103]. It cannot then allege in conclusory fashion that "Eberhard and Snyder explicitly represented" the fraudulent statement in their individual capacities when it has already conceded that Fluid Truck was the entity to make the representation through its own policy. [*Id.* at ¶ 24]. Not only is such an allegation disingenuous, it is inconsistent with the well-pleaded allegation that the fraudulent statement was made by Fluid Truck through its decommissioning policy. Because the Court **must** accept as true well-pleaded factual allegations in a complaint and need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[,]" the Court must disregard any conclusory statements that contradict the well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

Moreover, despite having three bites at the apple and the benefit of hundreds of thousands of pages of discovery, including Snyder's Fluid Truck email, as well as hours of deposition testimony from Brennan Dupree, the former head of Fluid Truck's FVIP relations, Plaintiff *still* does not allege in the SAC that Snyder provided the Fluid Truck decommissioning policy to Plaintiff or even that Snyder discussed the policy with Plaintiff. Having failed to plead that Snyder made the fraudulent representation to Plaintiff, it goes without saying that Plaintiff likewise fails in the SAC to allege, let alone support, that (i) the decommissioning policy was false at the time it was presented to Plaintiff (whenever that occurred) or (ii) Snyder knew it was false when it was presented to Plaintiff.

- 7 -

In fact, Plaintiff pleads that Fluid Truck complied with the decommissioning policy at least initially. [*Id.* at ¶ 25.] Plaintiff thus fails to demonstrate that the decommissioning policy contained intentionally false statements at the time it was presented to Plaintiff. Fraud requires more than the mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time. *State Bank v. States*, 723 P.2d 159, 160 (Colo. App. 1986). Unless the speaker making the representations *deliberately* falsified his or her intention in order to induce reliance, statements of future events are not actionable. *See Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995). As Plaintiff admits, Fluid Truck fulfilled its decommissioning obligations to Plaintiff at least *twenty-nine* times. [ECF No. 76 at ¶ 25.] Accordingly, Fluid Truck's decommissioning policy was not fraudulent, as evidenced by the fact Fluid Truck acted in accordance with its policy dozens of times. Rather, an unforeseeable change in circumstances prevented Fluid Truck from acting in accordance with its well-intentioned promises down the line. This is not fraud—merely a breach of contract, which Plaintiff does not allege, because it knows the only party with whom it contracted is the now bankrupt Fluid Truck.

Because Plaintiff fails in the SAC to plead facts to support its claim that Snyder made fraudulent representations to it, that the representations were false at the time they were presented, or that Snyder knew of the falsity, the fraud claim should be dismissed.

### 2. The SAC Fails to Allege Fraud Against Snyder with Particularity.

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the

- 8 -

identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006), *abrogated by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 139 S. Ct. 1507, 203 L. Ed. 2d 791 (2019) (internal citations and quotations omitted); *See also Schaden v. DIA Brewing Co., LLC*, 2021 CO 4M, ¶ 57, 478 P.3d 1264, 1275, *as modified on denial of reh'g* (Feb. 1, 2021).

Plaintiff's claim for fraud is deficient as to Snyder because Plaintiff does not even allege that Snyder actually engaged in any of the alleged conduct it alleges amounted to fraud. Plaintiff does not identify in the SAC who provided it with the decommissioning policy, what was communicated about the decommissioning policy, when the communication took place, or even whether the communication happened over email, telephone or through some other medium. Moreover, Plaintiff's only connection between Snyder and the decommissioning policy is that she revised and approved it. But Plaintiff does not allege when she revised and approved the policy, what her revisions were, nor whether she was aware of any false statements in the policy—nor which statements were false, how they were false, or how she was aware they were false—at the time she approved it. For example, if Snyder was only asked to revise and approve the intro paragraph to the policy and only did so by adding a few commas and never looked at the portion of the decommissioning policy that contained the fraudulent statement, such review, revision, and approval would not be sufficient to render her liable for the fraudulent statements. This is a perfect example of why the law requires the Plaintiff to "set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false

- 9 -

statements and the consequences thereof." *Sikkenga*, 472 F.3d at 726-27.

For this reason alone, the allegation is not sufficient to salvage Plaintiff's fraud claim against Snyder. But it bears repeating that, even if Plaintiff had pleaded specific details about Snyder's revisions and approval, those details would still not support Plaintiff's allegation that *Snyder* made the fraudulent representations to Plaintiff in her personal capacity given that Plaintiff has identified the fraudulent representation as the policy in its entirety and that *Fluid Truck,* not Snyder, put forth the policy. [*Id.* at ¶ 103.] Unspecified contributions to a document is far from sufficient to support a claim for liability for fraud. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)) (holding that a Plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")

Plaintiff's assertion of fraud against Snyder remains nothing more than a naked attempt by Plaintiff—dissatisfied with the reality that the true wrongdoer, Fluid Truck, has declared bankruptcy and is currently beyond its reach—to attribute wrongs admittedly committed by Fluid Truck to a chosen few Fluid Truck employees, and the allegations do not come *close* to satisfying the pleading standard under Rule 9(b). For those reasons, Plaintiff's fraud claim as to Snyder should be dismissed.

**B.    The SAC Fails to State Plausible Claims for Civil Theft or Conversion.**

A claim for "[c]ivil theft requires proof of two elements: (1) the defendant knowingly obtained control over the plaintiff's property without authorization and (2) the defendant did so with the specific intent to deprive the plaintiff of the benefit of the property." *Tisch v. Tisch*, 439 P.3d 89, 103 (Colo. App. 2019) (citing *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009); *see* § 18-4-405 (rights in stolen property)).

Under Colorado law, "conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Mason v. Farm Credit of S. Colo.*, 419 P.3d 975, 983 (Colo. 2018) (quoting *Byron v. York Inv. Co.*, 133 Colo. 418, 296 P.2d 742, 745 (1956)); *See also Maryland Casualty Company v. Messina*, 874 P.2d 1058, 1065 (Colo. 1994). To adequately plead a claim for conversion in Colorado, a Plaintiff must allege "(i) a defendant exercised dominion or control over property; (ii) that the property belonged to [plaintiff]; (iii) the defendant's exercise of control was unauthorized; (iv) [plaintiff] demanded the return of the property; and (v) the defendant refused to return it." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012).

As an initial matter, the SAC makes clear that Plaintiff believes Fluid Truck and HHK Vehicles, Inc. ("HHK") are the entities guilty of civil theft and conversion. Plaintiff's only attempt to implicate Snyder for the civil theft and conversion claims are its allegations that "James Eberhard and Jenifer Snyder have directed, actively participated in, and cooperated in the theft of Urban Interests and other Class members' property and are therefore equally liable for such theft" [ECF No. 76 at ¶ 126] and that "James Eberhard and Jennifer Snyder have directed, actively participated in, and cooperated in the conversion of Urban Interests and other Class members' property, and are equally therefore liable for such conversion." [*Id.* at ¶ 134.] In other words, Plaintiff seeks to impute liability to Snyder by virtue of her direction of Fluid Truck and HHK. In order for Plaintiff to do so, it must first plead a prima facie case against Fluid and/or HHK. The SAC falls far short of this task.

Critically, both civil theft and conversion claims require that a defendant's exercise

of dominion over a thing of value belonging to the plaintiff be done *without authorization*. If a plaintiff cannot establish that the defendant acted without authorization, neither a claim for civil theft nor conversion can be established. *In re Estate of Chavez*, ¶ 47; *see also Scott*, ¶ 31. Here, Plaintiff has failed to plausibly allege that either Fluid Truck or HHK acted without authorization. In fact, Plaintiff's allegations suggest otherwise—that both Fluid Truck and HHK were, in fact, authorized to exercise dominion over Plaintiff's vehicles and the sales proceeds from the same.

Specifically, Plaintiff alleges that "[a]t all relevant times, Urban Interests was the title owner of the Vehicles ***that it authorized Fluid Truck to sell on its behalf***." [*Id.* at ¶ 44 (emphasis added)]. Thus, Plaintiff admits that Fluid Truck *was* authorized to exercise control over Plaintiff's property. In light of this admission, a claim for civil theft cannot stand. Similarly, as explained in HHK's Motion to Dismiss, HHK was also authorized to exercise control over Plaintiff's property. [ECF No. 84 at 7-10.] If Plaintiff cannot demonstrate that Fluid Truck or HHK acted without authorization, it cannot sustain a claim against them for civil theft. And, if Plaintiff's underlying claim against Fluid and HHK cannot be sustained, neither can Plaintiff's effort to impute liability for that faulty claim onto Snyder by virtue of her direction of those companies as an officer succeed. For this reason alone, the civil theft and conversion claims against Snyder must be dismissed.

But, even if Plaintiff's underlying claims against Fluid and HHK were not doomed, Plaintiff still has not pleaded sufficient allegations to impute their liability to Snyder. Plaintiff does not provide *any* factual allegations that support its claim that Snyder "directed, actively participated in, and cooperated in" the alleged civil theft or conversion. Plaintiff does not, for example, identify who Snyder allegedly directed or any actions that

Snyder allegedly took in "cooperation" with the alleged theft or conversion. Nor does Plaintiff allege any facts—such as an operational role or responsibility—that could plausibly support a finding that Snyder was somehow involved in the alleged transactions. In fact, Plaintiff does not even attribute direction and control solely to Snyder. Instead, Plaintiff falls back on its crutch of alleging that Eberhard and Snyder committed all relevant actions as a single entity, regardless of its detailed allegations to the contrary. For example, Plaintiff alleges "Eberhard and Snyder would delay HHK Vehicles' payment of sales proceeds to Fluid Truck, and then from Fluid Truck to FVIP owners, and falsely tell FVIP owners that the third-party auction service had delayed payment." [*Id.* at ¶ 32.] Then, in the same breath, Plaintiff alleges that it was Eberhard alone who "personally directed the delay of payments to FVIP owners." [*Id.* at ¶ 33.] Plaintiff's contradiction of its claims against Snyder further undercuts the sufficiency of the allegations in the SAC.

Because Plaintiff concedes that Fluid Truck and HHK acted with authorization, and because the SAC does not include anything beyond a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements[,]" which the Court need not accept as true, as to Snyder's direction in the activities giving rise to liability, the claims for civil theft and conversion must be dismissed as to Snyder. *Ashcroft*, 556 U.S. at 663.

Moreover, though, Plaintiff's allegations make clear that it believes Fluid Truck and HHK Vehicles—not Snyder—knowingly exercised control over its funds without authorization in a manner that caused it harm. [ECF No. 76 at ¶¶ 123-25.] Because Plaintiff does not allege that Snyder has personally retained the funds at issue or set forth any allegations to plausibly support such a conclusion, Plaintiff's claim for civil theft against Snyder is not actionable and should be dismissed. *See Cedar Lane Invs. v. Am.*

- 13 -

4926-1474-4893.2

*Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996) (reasoning a claim under Colo. Rev. Stat. Ann. § 18-4-405 is not actionable if the defendant is not in possession of the money). Likewise, the SAC is bereft of a single allegation that *any* party—let alone Snyder—acted with an intent to permanently deprive Plaintiff of the funds from the sale of its vehicles. Such allegation is a *requirement* for a civil theft claim. *In re Estate of Chavez*, ¶ 47 ("civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property."). Because the SAC does not allege Snyder's specific intent to permanently deprive FVIP owners of the benefit of their property, the civil theft claim must fail.

Similarly, the elements of a claim for conversion required Plaintiff to identify the parties that exercised dominion over its property. Plaintiff did not identify Snyder as allegedly exercising dominion over the property at issue, and its conversion claim fails against Snyder for this reason alone. Moreover, though the SAC does not include any allegations pertaining to Plaintiff demanding that Snyder return Plaintiff's alleged property, or Snyder personally refusing to return this property. [*See id.* at ¶¶ 129-137.] For these reasons, the conversion claim against Snyder must fail.

### C. Plaintiff Fails to Allege Facts Sufficient to Impute Liability to Defendant for Fluid Truck's Actions.

Having failed to sufficiently allege that Defendant engaged in conduct sufficient to make her personally liable for fraud, civil theft, or conversion, Plaintiff may attempt to argue that the liability of Fluid Truck or HHK Vehicles should be imputed to Snyder based upon her role as a corporate officer. Even if Plaintiff were to assert this theory—which is *not* set forth in the SAC—it too would fail because, as has already been touched on herein, Plaintiff failed to allege facts sufficient to plausibly impute liability to Snyder.

"To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort." *See Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003). "At a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization." *Id.* Every allegation included by Plaintiff in an effort to impute liability to Snyder is plainly a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements[,]" which the Court need not accept as true. *Ashcroft*, 556 U.S. at 663 [ECF No. 76 at ¶¶ 32, 53, 55-59, and 62.]

Because Plaintiff has not alleged any actual *factual* allegations to support its effort to impute liability onto Snyder, its conclusory statements cannot save it.

## V.  CONCLUSION

The problem with the SAC's approach is that it does not seem to know whether it seeks to impose liability against the individual Defendants in their individual capacity for actions they took in their personal capacity or whether it seeks to impute Fluid Truck's liability onto them by virtue of their roles as decision-makers at Fluid Truck. Instead, the SAC blends these two legal theories in implausible ways—such as by attributing actions the SAC makes clear were taken by Fluid Truck to Defendants Eberhard and Snyder in their personal capacities—that has resulted in a tangled mess of inconsistent factual allegations that contradict themselves and that have made it impossible for Snyder to launch a coherent defense given the constantly moving targets. Plaintiff should not be permitted to continue with this untenable approach that has cost Snyder significantly in attempting to defend herself. Plaintiff has obtained hundreds of thousands of documents and hours of deposition testimony in discovery. There is simply no excuse for this sloppy pleading to continue. For the reasons set forth herein, the Motion should be granted, and the fraud, civil theft, and conversion claims against Snyder should be dismissed.

Respectfully dated this 2nd day of May, 2025.

                KUTAK ROCK LLP

                By: *s/ Chad T. Nitta*
                    Chad T. Nitta, # 31921
                    chad.nitta@kutakrock.com
                    Shelby L. Morbach, #55913
                    shelby.morbach@kutakrock.com
                    Heather N. Tilley, #54149
                    Heather.tilley@kutakrock.com

                    2001 16th Street
                    Suite 1800
                    Denver, CO  80202-5292
                    Telephone:  (303) 297-2400
                    Facsimile:  (303) 292-7799

                    *Attorneys for Defendants James Eberhard and Jenifer Snyder*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2025, I electronically filed the foregoing **DEFENDANT JENIFER SNYDER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David C. Holman, Esq.
John K. Crisham, Esq.
Crisham & Holman LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
*Attorneys for Plaintiff*

William R. Thomas, Esq.
O'Hagan Meyer, PLLC
1331 17th Street, Suite 350
Denver, CO 80202
wthomas@ohaganmeyer.com
*Attorney for Defendant Thomas Scott Avila*

John Chrisman Hawk, Esq.
Womble Bond Dickinson LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com
*Attorney for Fluid Market, Inc. and Fluid Fleet Services LLC*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Tel: 303-297-2400
Chad.nitta@kutakrock.com

- 17 -

4926-1474-4893.2