# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2811-GPG-NRN

URBAN INTERESTS LLC, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.

FLUID MARKET INC., FLUID FLEET SERVICES LLC,
HHK VEHICLES, INC., JAMES EBERHARD, JENIFER SNYDER,
PALADIN MANAGEMENT GROUP, LLC, and THOMAS SCOTT AVILA,

    Defendants.

---

**DEFENDANT THOMAS SCOTT AVILA'S AND DEFENDANT PALADIN
MANAGEMENT GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED CLASS ACTION COMPLAINT**

---

Defendant Thomas Scott Avila ("Defendant Avila" or "Avila") and Defendant Paladin Management Group, LLC ("Defendant Paladin" or "Paladin"), by and through their undersigned counsel, O'HAGAN MEYER PLLC, hereby submit their Motion to Dismiss Plaintiff's[1] Second Amended Class Action Complaint (the "Second Amended Complaint"), and respectfully states as follows:

**Certification of Conferral:** Notwithstanding D.C.COLO.LCivR 7.1(b)(2), and in accordance with GPG Civ. Practice Standard 7.1B(b), Counsel for Defendants Avila and Paladin conferred with Counsel for Plaintiff on the relief sought herein on May 9, 2025, via phone. Plaintiff opposes this Motion.

## INTRODUCTION

Defendants Fluid Market Inc., and Fluid Fleet Services LLC, (collectively "Fluid Truck") provided a platform through which commercial vehicles can be rented. Fluid Truck also offered a product called the Fluid Vehicle Investor Platform ("FVIP"), which allowed owners of fleet vehicles to rent them out via Fluid Truck's platform. Vehicles in the FVIP program could be "decommissioned" at the owner's election and sold by Fluid Truck at auction. When a vehicle was sold, Fluid Truck remitted any net proceeds to the owner. Plaintiff alleges (individually and on behalf of a class of FVIP owners) that Fluid Truck stole more than $11 million in sales proceeds from FVIPs for its own use.

However, and like its predecessor pleadings, the Second Amended Complaint is fatally flawed in that it fails to state a viable claim against Avila and Paladin because there

---

[1] Defendants Avila and Paladin's reference to "Plaintiff" herein includes Urban Interests LLC and the putative class as alleged in Plaintiff's Second Amended Complaint. (*See* ECF #76 ¶ 93). Defendants Avila and Paladin do not, however, by way of this Motion or footnote, agree that a class can be certified under FED. R. CIV. P. 23.

1

are no allegations that Avila or Paladin—each engaged by Fluid Truck *after* all of Plaintiff's vehicle sales had been completed—had anything to do with the alleged theft. Plaintiff also <u>does not</u> allege Avila or Paladin have dominion or control over any of the proceeds at issue (now or in the past), or that they possess any such proceeds.

Plaintiff has seemingly (and without justification) lumped Avila and Paladin into this case based solely on their retention by Fluid Truck, and asserts they too are liable for civil theft and conversion without more. But Plaintiff's sparse allegations and unfounded conclusions miss the mark as a matter of law. Plaintiff has not asserted any basis for Avila or Paladin to be held liable in this matter because no such basis exists.

Despite their best efforts to help right the sinking ship that was Fluid Truck, Avila and Paladin appear to have been unjustly swept up in Plaintiff's scattershot lawsuit against Fluid Truck and others without any factual or legal basis. Accordingly, and as fully set forth below, Avila's and Paladin's Motion to Dismiss should be granted.

## RELEVANT BACKGROUND

### A. Relevant Parties and Vehicle Sales Though the FVIP Program.

Fluid Truck is an on-demand vehicle rental platform. (ECF #76, ¶ 16). Fluid Truck's FVIP program allows third parties to purchase fleets of vehicles and then rent them out via Fluid Truck's platform. (*Id.*, ¶ 17). In 2020, Plaintiff began participating in the FVIP program. (*Id.*, ¶ 19). Plaintiff allegedly purchased 47 vehicles through the FVIP program and rented them out through Fluid Truck's rental platform. (*Id.*, ¶ 20).

"As part of the FVIP program, Fluid Truck allowed vehicle owners to 'decommission' their vehicles from the Fluid Truck platform under certain circumstances." (*Id.*, ¶ 22). Plaintiff asserts that pursuant to Fluid Truck's policy and practice, and beginning as early as 2022, Defendant <u>HHK Vehicles, Inc.</u>, ("HHK") – a side company

2

owned and controlled by Defendants Eberhard and Snyder – "would sell FVIP vehicles through third-party auction services"; HHK "would receive the sales proceeds belonging to FVIP owners"; and, after deducting any applicable fees, Fluid Truck would then "turn the proceeds over to the vehicle owner." (*Id.*, ¶¶ 1, 23, 27, 28, 30).

Plaintiff alleges that at "no time did HHK Vehicles have permission or authorization from FVIPs to possess proceeds from their vehicle sales." (ECF #76, ¶ 31). Meaning, according to Plaintiff, every dollar of proceeds at issue in this case was improperly possessed and controlled by HHK prior to being remitted to Fluid Truck. (*See, id.*).

Plaintiff alleges that prior to 2024, Fluid Truck decommissioned and sold 29 of Plaintiff's vehicles and properly remitted the net sale proceeds to Plaintiff. (ECF #76, ¶ 25). Between February and May 2024, Plaintiff alleges that it authorized the sale of and "Fluid Truck in fact sold" 14 of Plaintiff's remaining vehicles in the FVIP program. (*Id.*, ¶¶ 42, 45, 48). The final sale occurred on May 24, 2024. (*Id.*, ¶ 48).

Importantly, Plaintiff does not allege that any vehicles it owned (or those owned by other FVIP owners) were sold by Fluid Truck after May 24, 2024. (*See generally* ECF #76). Two months *after* the last vehicle was sold, Fluid Truck's board of directors retained Avila and Paladin to help right the already-sinking ship that was Fluid Truck. (*Id.*, ¶ 66).

### B. Fluid Truck and HHK's Routing and Spending of Sale Proceeds.

Plaintiff asserts that Fluid Truck owned two bank accounts—the Fluid Truck Disposition Account and the Fluid Truck Disposition Money Market Account (the "Disposition Accounts")—"that were designed to hold only FVIP vehicle owners' sales proceeds until they were transferred to the respective owners." (ECF#76, ¶ 52). The sale proceeds were funneled through HHK, and payments were delayed and sent without an account of what sale proceeds were being sent to Fluid Truck. (*Id.*, ¶¶ 30–31, 37-39).

3

Prior to Paladin and Avila's retention in July 2024, Fluid Truck had "formalized its regular use of the Disposition Accounts into the company's operating cash flows" and had used the Disposition Accounts as a "slush fund for Fluid Truck's operating expenses." (ECF #76, ¶¶ 60, 62). As such, by the time Avila and Paladin stepped in, the Disposition Accounts were not exclusively used to hold FVIP proceeds. (*See id.* ¶¶ 52–60, 62).

Moreover, Plaintiff alleges it and the class are owed "more than $11 million" that was misappropriated by Fluid Truck (ECF #76 ¶¶ 1, 50). But, Plaintiff then alleges:

- In <u>August 2023</u>, $1,550,000 was transferred by Eberhard/Snyder from the Disposition Accounts to the Fluid Truck operating accounts. (ECF #76 ¶ 56).

- In <u>September 2023</u>, $1,180,000 was transferred by Eberhard/Snyder from the Disposition Accounts to the Fluid Truck operating accounts. (*Id.*, ¶ 57).

- From <u>October to December 2023</u>, $2,437,000 was transferred by Eberhard/Snyder the Disposition Accounts to the Fluid Truck operating accounts. (*Id.*, ¶ 58).

- From <u>January to July 2024</u>, $2,600,000 was transferred by Eberhard/Snyder from the Disposition Accounts to the Fluid Truck operating accounts. (*Id.*, ¶ 59).

- From <u>January 2023 to July 2024</u>, $4,100,000 was transferred by Eberhard/Snyder from the Disposition Accounts to HHK Vehicles. (*Id.*, ¶ 62).

Summed up, Plaintiff alleges that Eberhard and Snyder transferred $11,867,000 in FVIP proceeds from the Disposition Accounts to either Fluid Truck's operating accounts or to HHK *prior* to Paladin and Avila's retention. (*See* ECF #76 ¶¶ 50, 56–62, 66). <u>Meaning, per Plaintiff's own allegations, Paladin and Avila did not and could not have taken any of the money allegedly owed in this case as the alleged proceeds at issue had already been transferred out for other uses</u>.

**C. Plaintiff's Allegations as to the Retention of FVIP Sale Proceeds.**

Plaintiff alleges that, after its 14 vehicles were sold in 2024, "<u>Fluid Truck and HHK Vehicles</u> refused to remit the proceeds of those vehicle sales" to Plaintiff (ECF #76, ¶ 46).

4

Plaintiff further alleges that "Fluid Truck and HHK Vehicles" owe Plaintiff "gross proceeds" from the sale of these vehicles totaling $415,325, or "Fluid Truck owes $178,216 … for net sales and claims proceeds" to Plaintiff for the sold vehicles. (*Id.*, ¶¶ 48–49).

Plaintiff goes on to assert "Fluid Truck … was intentionally keeping more than $11 million in stolen funds owed to Plaintiff and the class as sales and claims proceeds," (*id.*, ¶ 50), and chose to "pocket the money" in question. (*Id.*, ¶ 1). Plaintiff also alleges "Fluid Truck and HHK Vehicles have stolen from the FVIP vehicle owners to fund Fluid Truck's ongoing operations." (*Id.*, ¶ 51). In fact, Plaintiff goes on to allege numerous times that Fluid Truck and/or HHK Vehicles "retained", "possessed", "wrongfully held", "refused to pay", and/or "failed to transfer" the sale proceeds/other amounts allegedly owed to Plaintiff and the class. (*Id.*, ¶¶ 83, 97, 112–114, 124–125, 133, 140).

As a result, Plaintiff explicitly asserts: By "obtaining" or "keeping the stolen sales proceeds without authorization," Fluid Truck's and HHK Vehicles' "actions constitute civil theft and conversion of Urban Interests' property, as well as unjust enrichment." (*Id.*, ¶¶ 85-86,124–125). Therefore: "Equity and good conscience demand that Fluid Truck and HHK Vehicles pay over the proceeds from the sale of the vehicles to Urban Interests and other Class members." (*Id.*, ¶ 142).

Regardless of the amounts allegedly owed, or whether the amount is owed by Fluid Truck or HHK Vehicles, Plaintiff's Second Amended Complaint makes clear that Avila and Paladin: (i) were not involved in the sale of any vehicles; (ii) Avila became the interim CEO and Paladin was retained after all vehicles were sold and proceeds obtained; (iii) Avila and Paladin do not possess, and never possessed, any of the money allegedly owed to Plaintiff or the class; and (iv) Avila and Paladin have no dominion or control, and never

5

had dominion or control, over any of the proceeds allegedly owed to Plaintiff or the class. (*See* ECF #76). Instead, the central allegations against Avila and Paladin merely allege:

- **Paragraphs 67, 71–72, 75–76, and 81**: Funds in a Fluid Truck Disposition Accounts were used for operating expenses, which by the time Paladin and Avila were retained allegedly contained $2.1 million of FVIP sales proceeds. However, Plaintiff <u>does not</u> allege that: (i) <u>all</u> of the money in the accounts, let alone how much, belonged to Plaintiff or any member in the putative class; (ii) the source of the funds (whether sale proceeds or income from another source) that were allegedly used for operating expenses or certain payments; or (iii) Plaintiff or the class have a proprietary interest in the Disposition Accounts.

  In fact, in Plaintiff's own words, the Disposition Accounts were a "slush" fund for over a year prior to Paladin's and Avila's retention. And, the practice of using the Disposition Accounts as operating cash flow was "formalized" by Eberhard and Snyder before Paladin and Avila's retention. (*See* ECF #76, ¶¶ 60, 62).

- **Paragraph 77**: Avila sent an email in August 2024 that provided an update on the financial status of Fluid Truck at that time. However, nothing in Avila's email infers or can be reasonably construed as evidencing he had knowledge of any wrongfully retained proceeds or that he had dominion/control of any money possessed by Fluid Truck.

- **Paragraphs 79, 89–90, 120–122, 127–128, 136** are unfounded conclusions that Avila and Paladin "approved", "sanctioned", and/or "continued" the use of FVIP proceeds. However, Plaintiff alleges no factual basis to support these assertions, thereby rendering them conclusory allegations without any supporting factual averments.

Plaintiff further fails to allege that the Disposition Accounts were in fact owned by FVIP owners, that the funds at issue were specifically identifiable funds, or that the Disposition Accounts in fact only contained proceeds from sales of FVIP vehicles. (*See* ECF #76). Accordingly, based on Plaintiff's own allegations, for the reasons below, Paladin's and Avila's Motion to Dismiss should be granted.

### D. Procedural History.

On October 10, 2024, Plaintiff filed its original Class Action Complaint against Fluid Truck, Eberhard, Snyder, and Avila. (ECF #1). On January 9, 2025, Plaintiff filed its

Amended Complaint, which added certain allegations and HHK as a defendant. (*See* ECF #32-1, #33, #54). On January 23, 2025, Avila filed his Motion to Dismiss the Amended Complaint (ECF #37). Avila's Motion was fully briefed on February 27, 2025. (ECF #55).

Plaintiff was permitted to continue engaging in discovery while Avila's Motion was pending. Then, on April 15, 2025, Plaintiff filed its Second Amended Complaint. (ECF #76). Despite the significant discovery Plaintiff has obtained to date, and the fact motions to dismiss had already been briefed, the Second Amended Complaint still fails to assert any viable claim against Avila and Paladin. This Motion to Dismiss now follows.

## STANDARD OF REVIEW

### 1. Dismissal Under Rule 12(b)(6).

"'Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face.'" *Cline v. Clinical Perfusion Sys.*, 92 F.4th 926, 930 (10th Cir. 2024). "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To accept a plaintiff's "allegations as true, they must be *well-pleaded* allegations." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (emphasis in original). Such a determination "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, at 679). "The court must determine whether the plaintiff has pleaded 'enough facts to state a claim to relief that is plausible on its face,' not just 'conceivable.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, accepting "'as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Church v. Church*, 2023 LEXIS 91044, at *7–8 (D. Colo. 2023) (citing *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th

7

Cir. 1998)) (Neureiter, M.J.).[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.*

"If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Warnick*, at 751 (quoting *Iqbal*, at 679).

### 2. Substantive Law Under CAFA.[3]

CAFA expanded "federal diversity jurisdiction over interstate class actions.'" *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017). Meaning, in CAFA cases, "the substantive law of the forum state governs the analysis of the underlying claims" *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Therefore, Colorado substantive law applies to Plaintiff's claims.

### ARGUMENT

### I. The Second Claim for Relief (Civil Theft) Should be Dismissed as to Avila and Paladin Because Plaintiff Fails to Assert a Plausible Claim for Relief.

#### a. Avila and Paladin Did Not Commit Any Act of Civil Theft.

"A person commits civil theft when he (1) knowingly obtained, retained, or exercised control over 'anything of value of another without authorization or by threat or deception'; and (2) acted intentionally or knowingly in ways that deprived the plaintiff of the thing of value permanently." *Chavez v. Chavez-Krumland (In re Estate of Chavez)*, 2022 COA 89, ¶ 47. "[C]ivil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property." *Id.* (quoting *Scott v. Scott*, 2018 COA 25, ¶ 26). Plaintiff's civil theft claim fails for several reasons.

---

[2] All unpublished cases are attached hereto as **Exhibit A**.

[3] Plaintiff invokes this Court's original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (*See* ECF #33, ¶ 9).

8

*First*, as set forth above, Plaintiff makes no allegation that Avila or Paladin (knowingly or otherwise) obtained, retained, or exercised control over any proceeds (now or in the past) that were specifically owed to Plaintiff or a member of the class. Those allegations are asserted exclusively against Fluid Truck and HHK Vehicles. Plaintiff also makes no allegation that Avila or Paladin took any action with the specific intent to permanently deprive Plaintiff or a class member of any proceeds.

*Second*, if the property forming the basis for a civil theft claim is money, and the defendant does not have "'possession of the money,' the plaintiff cannot recover under Colo. Rev. Stat. § 18-4-405 because that statute only permits recovery where the other person still has possession of the stolen property." *Goode v. Ramsaur*, 2024 LEXIS 147009, at *49 (D. Colo. 2024) (quoting *Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996)). Again, Plaintiff does not allege that Avila or Paladin possess any of the sale or insurance proceeds at issue. And, as shown above, Plaintiff's own allegations make clear that the more than $11 million at issue in this case was disposed of by Eberhard and Snyder <u>before</u> Paladin/Avila were retained.

*Third*, even if Plaintiff's math is ignored, the money Plaintiff alleges Paladin/Avila used from the Disposition Accounts is of no consequence because Plaintiff does not allege that the $2.1 million in the accounts when Paladin/Avila were retained were only FVIP proceeds. That means non-FVIP proceeds were comingled in these accounts, which tracks with Plaintiff's allegation these accounts were a pre-existing "slush" fund.

The comingling of funds in the Disposition Accounts is fatal to Plaintiff's claim because "[m]oney is fungible. If it is comingled with other funds, it becomes <u>impossible</u> to pinpoint which specific dollars belonged to the claimant." *Connolly v. Asbestos*

9

*Abatement, Inc.*, 606 B.R. 871, 886 (Bankr. D. Colo. 2019); *see also U.S. v. Battles*, 745 F.3d 436, 456 (10th Cir. 2014) ("'Obviously, when tainted money is mingled with untainted money in a bank account, there is no longer any way to distinguish the tainted from the untainted because money is fungible.'"). Thus, Plaintiff cannot and does not allege that Paladin/Avila specifically used FVIP proceeds for any purpose.

*Fourth*, and to the latter point, in each iteration of the complaint, Plaintiff has alleged a "money had and received" claim against other Defendants—but never against Paladin or Avila. (*See* ECF #1, #33, #76). The essence of that claim is "the defendant 'has received money which, in equity and good conscience, he ought to pay over.'" *Monday v. Anderson*, 77 P.3d 855, 857 (Colo. App. 2003). This claim "exists to prevent unjust enrichment" and "operates to return funds" to the proper party. *Mullens v. Hansel-Henderson*, 65 P.3d 992, 999 (Colo. 2002).

The fact Plaintiff asserts a "money had and received" claim against only Fluid Truck and HHK is no fluke. This is because Plaintiff knows that Paladin or Avila do not possess the proceeds at issue. In fact, Plaintiff alleges that Fluid Truck intends to keep the proceeds, and that Fluid Truck and HHK Vehicles stole more than $11 million from FVIP owners, which shows that *other* Defendants allegedly took and/or possess the money at issue. (ECF #76, ¶¶ 83–84). Plaintiff's allegations against Paladin and Avila are merely that they paid certain expenses from accounts that were treated as a "slush" fund, containing comingled funds, and used for various purposes other than hosting FVIP proceeds long before their retention. (*See id.*, ¶¶ 60, 62, 66).

*Finally*, civil theft claims are wholly a product of statute. *See* C.R.S. § 18-4-405. The civil theft statute explicitly limits such claims to be brought only against the "taker" or

10

"possessor" of property, but it does not permit a claim against someone who allegedly approved, sanctioned, or cooperated in the taking or possession of property held by a third party. *See* C.R.S. § 18-4-405; *Estate of Brookoff v. Clark*, 2018 CO 80, ¶ 6 (affirming that courts "may not write special limitations into a statute as '[t]hat is a function of the legislature and not the courts.'"). Thus, Plaintiff's theory against Avila or Paladin cannot succeed as a matter of law.

### b. *Plaintiff Does Not Allege the Funds in the Disposition Accounts are Specifically Identifiable Funds that Create a Proprietary Interest.*

For civil theft claims involving money, there must be an additional inquiry because "money is fungible." *Million v. Grasse*, 2024 COA 22, ¶ 49 (citing *Franklin Drilling & Blasting, Inc. v. Lawrence Constr. Co.*, 2018 COA 59, ¶ 26). Specifically, "in order for the plaintiff to have a proprietary interest in the money, there must be either <u>a specifically identifiable account</u> or a wrongful obtaining, retention, or exercise of control <u>over specifically identifiable funds</u> that belong to the plaintiff." *Id.* ¶ 50 (emphasis added).

"A specifically identifiable account could be an escrow, trust, or other specific account." *Id.*, ¶ 50 fn. 5. For example, courts permit civil theft claims when there is an agreement that "required 'all proceeds from the sale' to be placed in an escrow account, which established specifically identifiable funds, and, therefore, a proprietary interest." *Id.*

Here, Plaintiff makes no such allegation of an agreement, or that the Disposition Accounts (allegedly used as "slush" funds) were a trust or escrow account. In fact, Plaintiff alleges that Fluid Truck, at the direction of Eberhard/Snyder, "formalized" the "regular use of the Disposition Accounts into the company's operating cash flows'" (ECF #76 ¶ 60). The closest that Plaintiff gets to a legally cognizable claim, though it falls *well* short, is an allegation that the two Disposition Accounts "were <u>designed</u> to hold only FVIP vehicle

11

owners' sales proceeds." (ECF #76 ¶ 52). But, Plaintiff admits that, as far back as January 2023 the accounts were not used as designed. (*Id.* ¶¶ 60, 62). Logically, an account's "design" does not dictate an account's use in practice, and that is the case here as Plaintiff alleges the accounts were transformed into "slush" funds for other purposes.

Plaintiff makes much ado about the two Disposition Accounts but wholly fails to allege any proprietary interest in the accounts. Because money is fungible and the funds at issue are not specifically identifiable, Plaintiff's claim fails. *See Million*, 2024 COA 22.

What's more, Plaintiff alleges transfers out of the Disposition Accounts exceeding $11 million, and there were funds in the Disposition Accounts that were <u>not</u> due to FVIP owners. Thus, Plaintiff can neither claim a proprietary interest in the disposition accounts nor point to specifically identifiable funds, because money is fungible. *See Million*, 2024 COA 22 ¶ 49. Regardless, even if the Court inferred that the Disposition Accounts contained specifically identifiable funds due to FVIP owners, Plaintiff alleges that the sale of its vehicles concluded on and mostly before May 24, 2024—before Paladin or Avila were retained. (ECF #76 ¶¶ 48, 66). Thus, even with a finding of specifically identifiable funds, <u>*Plaintiff's*</u> proceeds were taken months prior to Paladin's and Avila's retention.

Accordingly, Plaintiff's civil theft claim should be dismissed.

**II.     The Third Claim for Relief (Conversion) Should be Dismissed as to Avila and Paladin Because Plaintiff Fails to Assert a Plausible Claim for Relief.**

"Common-law conversion is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.'" *Itin v. Bertrand T. Ungar, P.C.*, 17 P.3d 129, 135 n.10 (Colo. 2000) (quoting *Byron v. York Inv. Co*, 296 P.2d 742, 745 (Colo. 1956). To state a claim for conversion, Plaintiff must assert: (1) Avila and Paladin "exercised dominion or control over property"; (2) "that property

12

belong to" Plaintiff; (3) Avila's and Paladin's "exercise of control was unauthorized; (4) Plaintiff "demanded return of the property"; and (5) Avila and Paladin "refused to return it." *Scott*, 2018 COA 25, ¶ 31 (quoting *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012)).

"Conversion takes place when the converter takes dominion over the property at issue." *Scott v. Scott*, 2018 COA 25, ¶ 33. With respect to "the conversion of money", a claim exists "where there is an obligation to return or otherwise particularly treat specific money." *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008). Thus, an inherent requirement to assert a claim for conversion is the converter possessed the property. *See Scott*, at ¶¶ 31, 33; *Hutchins*, at 1195.

Plaintiff's claim for conversion fails for several reasons. *First*, as discussed above, Plaintiff makes no allegation that Avila or Paladin has or had dominion or ownership over any of Plaintiff's or the putative class's property. *Second*, Plaintiff makes no allegation that it demanded the return of any property from Avila or Paladin, or that either refused to return said property. (*See* ECF #76). <u>The lack of demand or refusal is unsurprising because it would be illogical for Plaintiff to demand Avila or Paladin return property that it does not allege are possessed or controlled by either</u>. And, as noted above, the fact Plaintiff is not asserting a "money had and received" claim against Avila or Paladin reinforces the truth that neither possesses nor has ever possessed the proceeds at issue.

Accordingly, Plaintiff's conversion claim should be dismissed.

### III.   Leave to Further Amend the Complaint Should be Denied as Futile.

Under Rule 15(a)(2), leave to amend shall be freely granted when justice so requires. *Church*, 2023 LEXIS 91044, at *6 (Neureiter, M.J.). However, leave to amend may be denied due to "futility of the amendment." *Id.* (citing *Frank v. U.S. West, Inc.*, 3

13

F.3d 1357, 1365 (10th Cir. 1993)). "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).'" *Id.* (quoting *Dorough v. Am. Family Mut. Ins. Co.*, 2016 LEXIS 49086, at *2 (D. Colo. Apr. 11, 2016)).

If the Court agrees that Plaintiff's allegations fail to assert viable claims for relief against Paladin or Avila, the Court should dismiss the claims against them with prejudice on the basis of futility. Plaintiff's claims against Avila and Paladin do not fail for lack of detail, specificity, or numerosity. Rather, there is no factual or legal basis to hold Avila or Paladin liable for the harms alleged. If facts or circumstances existed to hold Avila or Paladin liable, the Court should assume Plaintiff would have included such allegations in its original Complaint, its Amended Complaint, or its Second Amended Complaint – the latter of which is the product of months of fact discovery. The absence of such allegations after <u>three</u> bites at the apple shows that no such allegations exist. Permitting a fourth opportunity would be futile.

What's more, now that the complaint's deficiencies have been spelled out, further amendment would invite Plaintiff to invent allegations, or plead some fiction "upon information and belief", solely to survive another Rule 12 motion. Just like at least one of its sister courts, the Court should foreclose further opportunity to amend as futile. *See Santana v. Experian Info. Sols., Inc.*, 2021 LEXIS 261063, at *10 (N.D. Okla. 2021) (denying leave to amend a second time as futile as "it is not possible to conceive of amendments to Plaintiff's Amended Complaint that would cure the identified defects, as an entire set of factual allegations would have to be invented to state a claim").

14

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Defendants Thomas Scott Avila and Paladin Management Group respectfully request this Court GRANT their Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, dismiss with prejudice Plaintiff's Second and Third Claims for Relief against Avila and Paladin, and grant them any and all such further relief as this Court deems just and appropriate.

Respectfully submitted,

O'HAGAN MEYER, PLLC

By: /s/ William R. Thomas
William R. Thomas, Esq.
Brian R. DeMocker, Esq.
Attorneys for Defendants Thomas Scott Avila and Paladin Management Group
1331 17th Street, Suite 350
Denver, CO  80202
303-652-5881
wthomas@ohaganmeyer.com
bdemocker@ohaganmeyer.com

Dated:  May 9, 2025

15

## CERTIFICATE OF SERVICE

   I hereby certify that on this 9th day of May, 2025, a true and correct copy of **DEFENDANT THOMAS SCOTT AVILA'S AND DEFENDANT PALADIN MANAGEMENT GROUP, LLC'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** was filed and served electronically via the CM/ECF system which will send notification of the filing to the following:

David C. Holman, Esq.
John K. Crisham, Esq.
Christopher T. Carry, Esq.
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
chris.carry@crishamholman.com
*Attorneys for Plaintiff Urban Interests LLC*

John C. Hawk, IV, Esq.
WOMBLE BOND DICKINSON LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com
*Attorney for Defendants Fluid Market, Inc.
and Fluid Fleet Services LLC*

Chad T. Nitta, Esq.
Heather N. Tilley, Esq.
Shelby L. Morbach, Esq.
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Chad.Nitta@kutakrock.com
Shelby.Morbach@kutakrock.com
Heather.tilley@kutakrock.com
*Attorneys for Defendants James Eberhard,
Jenifer Snyder, and HHK Vehicles, Inc.*

                *s/ Marian Mesta*
                Marian Mesta, Legal Assistant