IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2811-GPG-NRN

URBAN INTERESTS LLC, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES LLC,
HHK VEHICLES, INC.,
JAMES EBERHARD,
JENIFER SNYDER,
THOMAS SCOTT AVILA, and
PALADIN MANAGEMENT GROUP, LLC,

    Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT HHK VEHICLES, INC.'S MOTION TO DISMISS**

Plaintiff Urban Interests LLC ("Plaintiff") submits the following response in opposition to Defendant HHK Vehicles, Inc.'s ("HHK") Motion to Dismiss.

## INTRODUCTION

HHK's motion is striking in its boldness. HHK is the off-books side company that Fluid's executives, Defendants James Eberhard and Jenifer Snyder, used to divert proceeds from the sale of vehicles owned by Plaintiff and other class members. The vehicles and the proceeds from those vehicles were supposed to be held in trust by Fluid. Instead, Eberhard and Snyder decided to start using those funds elsewhere—to cover Fluid's growing operating deficit, and to fund Snyder's lavish personal lifestyle. HHK was the first step in this plan to keep and use Plaintiff's and other owners' money, a plan that Defendants put into action by continually lying to the owners and telling them the payment of sales proceeds was delayed for other reasons. Critically, the vehicle owners were never informed of HHK's existence or its role, which means HHK's retention and use of their money was unauthorized. As pleaded in the Complaint, Dkt. 76, these are very straightforward claims for civil theft and conversion against HHK.

After admitting that Plaintiff "was unaware of the existence of HHK prior to initiating this lawsuit," Dkt. 84 at 3, the main thrust of HHK's motion is an attempt to somehow transform that complete *lack* of authorization into *affirmative* authorization, and thus excuse HHK of liability for civil theft and conversion. Such Orwellian mental gymnastics are unavailing. Although Plaintiff never authorized HHK's retention and use of its funds, HHK claims that Fluid "could" have, and did, authorize HHK's role. *Id*. at 9. These factual allegations—from a defendant in a motion to dismiss—have no place in the Court's inquiry

1

of whether the Complaint fails to state a claim. More importantly, HHK's factual allegations fly in the face of the Complaint's well-pleaded allegations, namely that HHK was never authorized to play any role in the process, much less keep and use proceeds owed to FVIPs.

HHK also tries to depict itself as some innocent third party that had no idea its possession was unauthorized. This does not withstand any scrutiny. Not only is this yet another factual allegation, inappropriate for a motion to dismiss, but it ignores the undisputed and well-pleaded fact that the actual people behind HHK are Eberhard and Snyder—the very people with the most knowledge about the misappropriation of FVIP owners' funds for other purposes and the lack of authorization for diversion of sales proceeds to HHK.

Because HHK does not seriously dispute that the Complaint adequately alleges the other elements of civil theft and conversion, its authorization argument fails, and the Court should deny its motion as to those claims.

Finally, regarding Plaintiff's claim for money had and received, this is also a simple and equitable claim. Colorado law simply requires that the defendant has received money that, in equity and good conscience, he ought to pay over to the plaintiff. HHK, however, creatively proposes an additional element not required by Colorado law: that the defendant still possesses the funds in question. Indeed, this would be contrary to Colorado law, which still finds liability for this claim where the defendant has spent the funds elsewhere. For this claim as well, HHK tries to assert its own factual allegations, which, again, the Court must disregard on a motion to dismiss. This claim is more than

adequately stated against HHK, the secret, off-books company through which Eberhard and Snyder diverted other people's money.

## RELEVANT FACTS

From 2016 to 2024, Fluid was an online vehicle rental platform. Dkt. 76 ¶ 16. It offered a Fluid Vehicle Investor Platform ("FVIP") that enabled third parties to buy vehicles, and rent them out via Fluid's platform. *Id*. ¶ 17. Fluid managed all of the rental business on behalf of FVIP vehicle owners: it provided insurance, maintenance, and repair, collected payments, and handled all other day-to-day tasks. *Id*. ¶ 18.

Plaintiff Urban Interests became an FVIP owner in 2020, and over time bought 47 vehicles. *Id*. ¶¶ 19-20. Urban Interests entrusted Fluid both with its vehicles and the original paper copies of the vehicle titles. *Id*. ¶ 21. When FVIP owners like Urban Interests wanted to "decommission" their vehicles—remove them from the Fluid fleet—Fluid solicited those FVIP owners to allow Fluid to "sell [the] vehicle on [owners'] behalf" through a third-party auction service. *Id*. ¶¶ 1, 22-23.

Until they were terminated for cause in mid-July 2024, James Eberhard and Jenifer Snyder were Fluid's chief executive officer and general counsel, respectively, as well as its co-founders. *Id*. ¶ 1. In addition to Fluid, Eberhard and Snyder owned and controlled another company called HHK Vehicles, Inc. *Id*. ¶¶ 5, 29.

"Unbeknownst to the FVIP vehicle owners," Eberhard and Snyder were diverting FVIP owners' proceeds through HHK as early as 2022. *Id*. ¶¶ 26-28, 30. Critically, HHK never had "authorization from FVIPs to possess proceeds from their vehicle sales." *Id*. ¶ 31; *see also id*. ¶¶ 47, 112, 114.

3

The reason for secrecy is now obvious: Eberhard and Snyder intentionally delayed—or totally failed to make—payment of FVIP owners' funds from HHK, and Snyder used HHK as a personal bank account. *Id*. ¶ 32. After receiving FVIP owners' sales proceeds, HHK "would delay payment or fail to make the transfer to Fluid Truck altogether." *Id*. ¶ 37. Further, HHK received transfers of more than $4.1 million from the segregated Disposition Accounts—Fluid bank accounts intended only for FVIP owners' funds—over a period of 18 months. *Id*. ¶¶ 52, 62. As of late July 2024, HHK "had failed to transfer more than $1.5 million HHK Vehicles had received from FVIP vehicle sales to Fluid Truck." *Id*. ¶ 39. For at least one of its owners, HHK was a source of personal funds: HHK issued to Snyder "hundreds of thousands of dollars' worth of 'shareholder loans,'" which Snyder never repaid. *Id*. ¶¶ 40, 41.

HHK knowingly obtained, retained, and exercised control over funds owned by Plaintiff and other FVIP owners without authorization, and transferred some of those funds to Defendant Jenifer Snyder for her personal use. *Id*. ¶¶ 110-14, 116-17. By retaining and using FVIP owners' funds in a manner inconsistent with the FVIP owners' permanent use and benefit, HHK acted with the specific intent to deprive Plaintiff and other FVIP owners of their rightful benefit of those funds. *Id*. ¶ 123. Therefore, the Complaint alleges that HHK's actions constitute civil theft. *Id*. ¶ 125.

For similar reasons, the Complaint pleads a conversion claim against HHK: HHK intentionally and substantially interfered with Plaintiff and FVIP owners' ownership of their vehicles and the sales proceeds from those vehicles by possessing and retaining such property without authorization or consent. *Id*. ¶¶ 130-132.

4

The Complaint also pleads a third claim against HHK, money had and received. HHK retained proceeds from the sale of Plaintiff's and other FVIP owners' vehicles which, in equity and good conscience, it should be required to pay over to the rightful owners. *Id*. ¶¶ 140-42.

## ARGUMENT

### A. The Complaint Thoroughly Alleged HHK's Lack of Authorization to Possess FVIP Owners' Money

As to nearly every element of both civil theft and conversion, HHK does not dispute that Plaintiff's allegations are sufficient. HHK's only argument for dismissal of the civil theft and conversion claims is its naked, conclusory factual allegation that HHK's possession of FVIP owners' money held in trust was somehow authorized. Dkt. 84 at 8-11. This meritless argument is directly contradicted by Plaintiff's allegations, and unsurprisingly unsupported by any legal authority.

To be sure, the civil theft statute and conversion claim both require that the defendant's action—the defendant's taking or possession for a civil theft claim, and the defendant's exercise of dominion or ownership for a conversion claim—be unauthorized. *See Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016) ("A person commits theft under section 18–4–401(1) when he or she 'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently.") (quoting C.R.S. § 18–4–401(1)(a)-(d))); *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) ("To state a claim for conversion, [plaintiff] was required to allege in her complaint that '(i) [defendant] exercised dominion or control over property;

5

(ii) that property belonged to [plaintiff]; (iii) [defendant's] exercise of control was unauthorized; (iv) [plaintiff] demanded return of the property; and (v) [defendant] refused to return it.'") (citation omitted).

Critically, that's exactly what Plaintiff has alleged about HHK's possession of FVIP owners' funds:

- "At no time did HHK Vehicles have permission or authorization from FVIPs to possess proceeds from their vehicle sales. FVIP owners were never informed, whether by HHK Vehicles, Eberhard, Snyder, or anyone else, that the sales proceeds to which those FVIP owners were entitled would be possessed and controlled by HHK Vehicles." Dkt. 76 ¶ 31; *see also id*. ¶ 47 ("[M]uch of Urban Interests' sales proceeds were held at HHK Vehicles, not Fluid Truck, without the knowledge or authorization of Urban Interests.").

- "All proceeds from the FVIP vehicle sales were sent to HHK Vehicles, without authorization from FVIP owners." *Id*. ¶ 111.

- "HHK Vehicles possessed the proceeds from the FVIP vehicle sales without authorization." *Id*. ¶ 112.

- "HHK Vehicles wrongfully held the FVIP vehicle sales proceeds without authorization and in some instances transferred proceeds instead to Snyder for personal 'loans.'" *Id*. ¶ 114.

- Defendants—including HHK—"knowingly retained funds belonging to Urban Interests and other Class members without authorization, and have intentionally used and misappropriated Urban Interests and other Class members' funds to fund Fluid

6

Truck's operating deficit and for other purposes—doing so in a manner and with the intent to permanently deprive Urban Interests and other Class members of their rightful benefit of those same funds." *Id*. ¶ 123.

HHK does not—and could not—challenge the many allegations set forth in the Complaint asserting that Plaintiff and the other FVIPs never gave permission or authority to HHK to possess their sales proceeds. In the face of these undisputed allegations, HHK tries to cobble together multiple insufficient points into a larger argument that HHK could have somehow possessed FVIPs' funds with authorization. These fail at every turn.

First, HHK finds it relevant that HHK did not owe any duty to Plaintiff and other FVIPs. Dkt. 84 at 8-9. But the existence of a duty is neither here nor there for purposes of civil theft and conversion. It is not an element required for either claim, and HHK offers no legal authority showing its relevance here. Nor would it make any sense: a third party possessing stolen property—knowing that it is stolen—can be liable for either claim, regardless of whether some earlier relationship existed between the plaintiff and defendant.

Second, HHK makes the factual allegation that "HHK's involvement could be—and was—authorized by Fluid Truck, the entity Plaintiff admits it authorized to sell its vehicles." Dkt. 84 at 9; *see also id*. at 10 ("Because Fluid Truck authorized HHK's involvement in the FVIP vehicle sales process . . . ."). Of course, HHK's factual allegation is beyond the scope of what the Court can consider when deciding a motion to dismiss, particularly where the Complaint clearly pleaded HHK's lack of authorization.

7

Even so, HHK tellingly offers no legal authority that authorization of one entity to sell personal property—and hold in trust sales proceeds for a limited period of time—is necessarily carte blanche for that entity to distribute those proceeds to any other person or company as it sees fit. To the contrary, Colorado courts have specifically instructed that acting on another's behalf does not exempt a defendant from civil theft liability. For example, where a law firm defendant allegedly obtained and exercised control over the plaintiff's assets at the direction of a third party, the Court denied the defendant's motion to dismiss the civil theft claim, reasoning that "the fact that [the third party directing the action] may have been the ultimate beneficiary of Defendants' alleged actions does not invalidate the civil theft claim." *Collins Fin. Consulting, LLC v. Serbinin Law Firm, LLC*, 2017 WL 11547505, at *6 (D. Colo. Jan. 25, 2017) (citing *People v. Witek*, 97 P.3d 240, 244 (Colo. App. 2004)).

Further, to the extent Plaintiff and FVIP owners authorized anyone to possess their sales proceeds—and they only authorized Fluid, and only temporarily—the Court can infer from Plaintiff's allegations that such authority was expressly time limited, and payment delays were not authorized. *See* Dkt. 76 ¶ 24 (Fluid's decommissioning policy "explicitly represented that 'Fluid will manage the sale and collect the fees and remit the money minus any fees within 30 days of the sale.'"). Under Colorado law, the control required for civil theft "need not be unauthorized from the outset; rather 'theft can occur even though initial control of the property has been authorized . . . .'" *People v. Am. Health Care, Inc.*, 591 P.2d 1343, 1345 (Colo. App. 1979) (quoting *People v. Treat*, 568 P.2d 473, 477 (Colo. 1977)) (interpreting section 18–4–401).

8

Third, HHK tries to plead yet another factual allegation directly contradicted by the Complaint's allegations: that HHK is an innocent bystander that had "no reason to know that Fluid Truck was not authorized by the vehicle owners to enlist HHK to sell the vehicles on its behalf." Dkt. 84 at 11. Again, not only is this factual allegation inappropriate for a motion to dismiss, but it just isn't true. HHK knew because the actual people who own and control it—James Eberhard and Jenifer Snyder—knew. The Complaint alleges Eberhard and Snyder, the same Fluid executives who diverted sales proceeds through HHK, Dkt. 76 ¶¶ 27-31, were the same people who "personally owned and controlled HHK Vehicles," *id*. ¶ 115. Such allegations are enough for HHK's unauthorized possession or control to be knowing for purposes of the civil theft elements.

Finally, HHK very briefly claims the Complaint "does not allege HHK's specific intent to permanently deprive FVIP owners of the benefit of their property." Dkt. 84 at 11. This is also wrong. Paragraph 123 of the Complaint alleges that HHK has retained FVIP owners' funds "without authorization," and has "intentionally used and misappropriated" such funds "in a manner and with the intent to permanently deprive" FVIP owners of the benefit of those funds. Dkt. 76. The Court can also infer such specific intent by HHK's conduct and use of the property "inconsistent with the owner's permanent use and benefit." *People v. Pedrie*, 727 P.2d 859, 862 (Colo. 1986). Here, the Court can infer specific intent from HHK's lengthy delays in paying proceeds to Fluid, Dkt. 76 ¶ 32, HHK "fail[ing] to make the transfer to Fluid . . . altogether," *id*. ¶ 37, and HHK issuing to Snyder "hundreds of thousands of dollars' worth of 'shareholder loans,'" which were never repaid, *id*. ¶¶ 40-41. These actions are inconsistent with the FVIP owners' permanent use and

9

benefit of these funds, and thus the Complaint has sufficiently alleged HHK's specific intent to deprive.

Because Plaintiff has sufficiently alleged facts satisfying the elements of civil theft and conversion, the Court should deny HHK's motion on those claims.

### B. A Claim for Money Had and Received Does Not Require Current Possession of Funds, and the Complaint States a Claim

HHK seeks dismissal of Plaintiff's claim for money had and received based on: (1) elements nowhere found in the case law concerning this cause of action; and (2) facts nowhere pleaded in the Complaint. The Court should reject these arguments.

First, HHK invents a requirement that "an action for money had and received may only be brought against a party that is actively in possession of the money at issue." Dkt. 84 at 11; *see also id*. at 7-8. For support, HHK cites *Berger v. Dixon & Snow, P.C.*, which in very general terms describes restitution as the "principle that one should not be permitted to keep that which 'in equity and good conscience' should be restored to another." 868 P.2d 1149, 1152 (Colo. App. 1993). Of course, that broad-brush description is not a holding, much less an adoption of some absolute rule. If anything, the cases require only that the defendant "has received" the money. *See Monday v. Robert J. Anderson, P.C.*, 77 P.3d 855, 857 (Colo. App. 2003) ("A plaintiff can maintain an action for money had and received whenever the defendant 'has received money which, in equity and good conscience, he ought to pay over.'" (quoting *Spencer v. Brundage*, 194 P. 1104, 1105 (Colo. 1921))). Applying this claim, Colorado courts have recognized that the defendant who wrongly "has received" the money should be required to repay it—whether the defendant still has the money or not. *See, e.g., Hollander v. Zito*,

10

2011 WL 5834688, at *6 (D. Colo. Nov. 21, 2011) (denying motion to dismiss claim for money had and received where defendant "ultimately received [the money] and used it himself"). For a claim that is well recognized as "less restricted and fettered by technical rules and formalities than any other form of action," 66 Am. Jur. 2d Restitution and Implied Contracts § 156 (2d ed. 2025), the Court is still free to apply it to these circumstances, and should deny HHK's argument on that ground alone.

Second, HHK argues—on a motion to dismiss—that HHK's bank records, obtained in discovery, show "HHK did not retain the sales proceeds from FVIP vehicle sales and did, in fact, pass those proceeds through to Fluid Truck." Dkt. 84 at 11-12. Even if this were true (which it is not), and even if HHK had provided evidence of this contention (which it has not), this point is wholly irrelevant for deciding a motion to dismiss, and not dispositive for a money-had-and-received claim, as discussed above. As the Court knows, its review on a motion to dismiss is limited to the facts alleged in the Complaint, and to certain documents referenced in the Complaint. HHK's factual allegations are not in the Complaint. Thus, HHK's factual allegations should be disregarded.

Undeterred, HHK tries to carefully parse the purported differences between Plaintiff's allegations concerning HHK, and its allegations concerning Fluid. Dkt. 84 at 13-15. This reading fails on multiple levels. Most fundamentally, it fails because the law does not require that HHK still possess the funds for Plaintiff to state a claim for money had and received, as discussed above.

Factually, to the extent ongoing possession is relevant (which it is not), Plaintiff alleges both that Fluid used sales and insurance proceeds held in trust for Plaintiff and

11

other class members, Dkt. 76 ¶¶ 53-61, and that HHK wrongfully possessed and misused FVIP funds in its possession, id. ¶¶ 26-32, 36-41. Both things can be true. And it's easy to see how. For example, Jenifer Snyder "us[ed] HHK Vehicles as a fence through which she was able to issue herself hundreds of thousands of dollars' worth of 'shareholder loans' from HHK Vehicles," which she never repaid. *Id*. ¶¶ 40-41. And Eberhard and Snyder transferred Disposition Accounts funds (i.e., FVIP owners' money held in trust) to HHK Vehicles. *Id*. ¶ 62. Even if HHK proves it repaid certain funds to Fluid, the Complaint alleges that HHK possessed—and spent, at least in part—FVIP owners' money, and that more than $11 million is outstanding to Plaintiff and the class. The Complaint alleges HHK took part in stealing that money. *See, e.g.*, *id*. ¶ 84 ("Fluid Truck and HHK Vehicles had stolen more than $11 million from FVIP owners."). Such allegations are sufficient to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant HHK Vehicles, Inc.'s Motion to Dismiss should be denied.

12

Dated this 23rd day of May 2025

        Respectfully submitted,

        */s/ David C. Holman*
        David C. Holman
        John K. Crisham
        Christopher T. Carry
        CRISHAM & HOLMAN LLC
        2549 West Main Street, Suite 202
        Littleton, Colorado 80120
        Telephone: (720) 739-2176
        E-mail: Dave@crishamholman.com
        E-mail: John@crishamholman.com
        E-mail: Chris.Carry@crishamholman.com

        *Attorneys for Plaintiff Urban Interests LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of May, 2025, a true and correct copy of the foregoing document was filed via this Court's CM/ECF filing system and served on all counsel of record.

*/s/ Amanda Turney*
