**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. Civil Action No.: 1:24-cv-02811-GPG-NRN

URBAN INTERESTS LLC, individually and on
behalf of all other similarly situated,

        Plaintiffs,

v.

FLUID MARKET INC.,
FLUID FLEET SERVICES, LLC,
HHK VEHICLES, INC.,
JAMES EBERHARD,
JENIFER SNYDER,
THOMAS SCOTT AVILA, and
PALADIN MANAGEMENT GROUP, LLC

        Defendants.

---

**DEFENDANT HHK VEHICLES, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Defendant, HHK Vehicles, Inc. ("HHK" or "Defendant"), hereby respectfully submits its Reply in Support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. (12)(b)(6):

## I.    INTRODUCTION.

Plaintiff Urban Interests LLC's ("Urban" or "Plaintiff") strategic effort in its Response in Opposition to Defendant HHK Vehicles, Inc.'s Motion to Dismiss (the "Opposition") to recharacterize every *argument* raised by HHK in the Motion to Dismiss [ECF No. 84] (the "Motion") as an improper *factual allegation* is baseless and should be ignored by the Court.   Equally meritless is Plaintiff's characterization of HHK's reasonable factual inferences based on the allegations in the Second Amended Complaint ("SAC") as improper "new factual allegations."   This is particularly true given that courts routinely make reasonable factual inferences based on factual allegations.   *See Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286, 1289 (Colo. 1992) ("It is fair to infer from the complaint…."); *see also Potts v. Gaia Child., LLC*, 2024 COA 58, ¶ 23, 555 P.3d 82, 88, *reh'g denied* (June 20, 2024) ("Viewing the allegations in the most favorable light to Potts, it would be reasonable to infer that…").   Plaintiff itself concedes—at least when favorable to its own arguments—that "the Court can infer from Plaintiff's allegations" facts not actually pleaded.   [ECF No. 90 at 8.]   Plaintiff's "inferences for me but not for thee" approach should be rejected.

Moreover, even were the Court to accept Plaintiff's argument and reject Defendant's assertion that the allegations in the SAC support a reasonable inference that HHK's involvement in the FVIP vehicle sale process was expressly authorized by Fluid Market, Inc. ("Fluid"), the Motion should *still* be granted.   Plaintiff fails in the Opposition to identify any allegation in the SAC that supports a finding that HHK's actions were *not* authorized by Fluid.   Nor can such an inference be reasonably reached, given that Plaintiff

concedes that Fluid was the entity with possession of the vehicles and the titles to the vehicles [*Id.* at ¶¶ 20-21], and the SAC is bereft of any allegations explaining how, absent authorization from Fluid, HHK obtained possession of the vehicles for purposes of selling those vehicles at auction.  Certainly, there is nothing in the SAC to suggest that HHK took the vehicles from Fluid by force, threat, deception, or any other improper means.  Plaintiff cannot be allowed to hold Defendant hostage in this case by intentionally omitting from the SAC exculpatory facts and then demanding that the Court bury its head in the sand with respect to the obvious inferences that flow therefrom.

## II.    ARGUMENT

### A.    Urban's Failure to Allege Sufficiently a Lack of Authorization on HHK's Part Should be Fatal to Its Civil Theft and Conversion Claims.

In the Opposition, Plaintiff states that "HHK does not dispute that Plaintiff's allegations are sufficient."  [ECF No. 90 at 5].  To use Plaintiff's own words, such an assertion is "striking in its boldness."  [*Id.* at 1].  It is unclear how Plaintiff could have reached such a conclusion given that Defendant *expressly* challenges the "sufficiency" of the allegations in the SAC in no fewer than *four* separate places in the Motion.  [ECF No. 84 at 9-10, 11, 12, 13].  Nevertheless, for the avoidance of doubt, HHK absolutely disputes that Plaintiff's allegations are sufficient to support claims for civil theft or conversion.

Contrary to Plaintiff's claim that the SAC "thoroughly alleged HHK's lack of authorization to possess FVIP Owners' money," [ECF No. 90 at 5], the SAC is bereft of a single allegation that **Fluid** did not authorize HHK to possess FVIP Owners' money.  In fact, as explained *supra* herein, the reasonable inference of Plaintiff's allegations that Fluid was the entity with possession of the vehicles and the titles to the vehicles [*Id.* at ¶¶ 20-21] and that "throughout Defendant Eberhard and Defendant Snyder's management

- 2 -

of Fluid Truck, Eberhard and Snyder routed [Fluid's] vehicle decommissioning activities through Defendant HHK Vehicles" [SAC at ¶ 28] is that Fluid *did* authorize HHK. Instead, Plaintiff only alleges that, "[a]t no time did HHK Vehicles have permission or authorization from FVIPs to possess proceeds from their vehicle sales." [*Id.* at ¶ 31]. Plaintiff's argument misses the point. An assertion that *FVIPs* did not authorize HHK directly to possess proceeds from the sales is not sufficient to maintain claims against HHK for civil theft and conversion. As Plaintiff expressly alleges, "it authorized Fluid Truck to sell [the Vehicles] on its behalf." [*Id.* at ¶ 44]. Plaintiff does <u>not</u> allege in the SAC that FVIPs limited their authorization solely to Fluid or that they forbade Fluid from utilizing other entities in the sales process. Even if Plaintiff had made such an allegation, as explained in the Motion, "if Fluid Truck was unauthorized to involve HHK in the disposition of FVIP vehicles, such a violation would be one by Fluid Truck against the FVIP owners—not by HHK." [ECF No. 84 at 8-9]. For the foregoing reasons, a bald assertion that FVIPs did not authorize HHK to "possess proceeds from their vehicle sales" is *far* from "thoroughly alleging" HHK's lack of authority and far from sufficient to establish that HHK's involvement in the FVIP Vehicle sale process was undertaken without authority.

Moreover, this argument is supported by the Colorado case law on agency. "[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Fresquez v. Trinidad Inn, Inc.*, 2022 COA 96, ¶ 18, 521 P.3d 399, 404–05 (quoting *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 21, 396 P.3d 651, 656 (quoting Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006))) (internal quotations omitted).

"The focal point for determining whether an agent acted with actual authority is the agent's reasonable understanding at the time the agent takes action." *Id.* at ¶ 19 (quoting Restatement (Third) of Agency § 2.01 cmt. c.) (internal quotations omitted).

"An agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." *Id.* (quoting Restatement (Third) of Agency § 2.02(1)) (internal quotations omitted). "Actual authority incorporates concepts of express and implied authority." *Id.* at ¶ 21 (citing *State Farm*, ¶ 21, 396 P.3d at 656). "Express authority exists when the principal directly states that the agent may perform a particular act on the principal's behalf." *Id.* (quoting *State Farm*, ¶ 21, 396 P.3d at 656) (internal quotations omitted). "In contrast, implied authority includes 'the authority to perform acts that are 'incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.''" *Id.* (quoting *State Farm*, ¶ 22, 396 P.3d at 656 (quoting *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994))).

Plaintiff's argument that any authorization given by FVIPs was limited to Fluid is further undermined by the allegations in the SAC that: (i) "it authorized Fluid Truck to sell [the Vehicles] on its behalf" [SAC at ¶ 44], and (ii) Fluid Truck made the FVIPs aware through a decommissioning policy that it would "'sell [the] vehicle[s] on [owners'] behalf' through a third-party auction service." [SAC at ¶ 23]. Plaintiff does not allege that it objected to Fluid's proposed use of a third-party auction service to sell its vehicles. In Colorado, Regulation 44-20-102(22) of the Code of Colorado Regulations requires a company selling vehicles at "special sales events, shows, or other organized events" such

- 4 -

as a wholesale auction to carry a "motor vehicle dealer" license.[1]  Likewise, many third-party auction houses require motor vehicle dealer licenses to be held by those looking to sell vehicles at auction.  *See* Ex. 1 - https://dealer101.com/auctions/companies/manheim/ ("To get into Manheim auto auctions, you must first register with AuctionACCESS, **which is limited to licensed dealers and their authorized representatives**.") (emphasis added); *see also* Ex. 2 - https://www.carmaxauctions.com/policy ("This is a **DEALER-ONLY** auction…All Dealers must be properly licensed with the state or country [] in which that do business.") (emphasis in original); *see also* Ex. 3 - https://www.autonationautoauction.com/ ("Welcome to AutoNation Auto Auction This site is FOR DEALERS ONLY. We are not open to the public.).[2]  Fluid complied with this requirement by using third parties—like HHK—with such licenses [SAC at ¶ 27] and disclosed its intention to use third parties in the decommissioning policy.

Under the agency case law cited above, Fluid had the FVIP's *express* authority to sell their vehicles through a third-party auction house.  Moreover, since companies selling vehicles through wholesale auction houses are required to have dealers' licenses, if Fluid did not hold a dealer's license, it would be necessary for Fluid to go through a company

---

[1] Defendant asks the Court to take judicial notice of Regulation 44-20-102(22), as "[j]udicial notice may be taken of matters of public record and of common knowledge to an interested public…" such as "rules and regulations promulgated by a governmental agency pursuant to the agency's statutory authority and published in an official state publication, *such as Code of Colorado Regulations*…."  *One Hour Cleaners v. Indus. Claim Appeals Off. of State of Colo.*, 914 P.2d 501, 504 (Colo. App. 1995) (emphasis added).

[2] Defendant asks the Court to take judicial notice of the contents of the websites reflected by Exhibits 1-3 as of June 5, 2025.  *See* Decl. of Christine Maybee.  Colorado courts have found that "[t]he contents of a webpage on a specific date and time are not subject to reasonable dispute" and, by "suppl[ying] a copy of the webpage [] dated [that specific date] in her reply brief and request[ing] that [the court] take judicial notice of its contents," the plaintiff "complied with the requirements of CRE 201(d)."  *Shook v. Pitkin Cnty. Bd. of Cnty. Commissioners*, 2015 COA 84, n. 4, 411 P.3d 158, 161, n.4.

that did have such a license—like HHK [SAC at ¶ 27]—to accomplish the main authority delegated to it by the FVIPs of selling their vehicles through a third-party auction service.

But there is an even simpler analysis that does not require the Court to take judicial notice of the Code of Colorado Regulations or the content of the auction houses' websites. Specifically, the *Fresquez* case states that an agent's "actual authority" turns on whether the "agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Fresquez*, at ¶ 19. Given the fact that—by Plaintiff's own admission—the FVIPs expressly authorized Fluid to sell their vehicles, and to do so by turning them over to a third-party auction house to effectuate that purpose, there can be no question that Fluid reasonably believed that using the assistance of third-party entities in the vehicle sale process was acceptable to the FVIPs and even that the FVIPs wished for Fluid to do so where necessary based on their previous manifestations to Fluid.

In summation, an assertion that Plaintiff did not expressly authorize HHK directly to participate in the sales process is not sufficient to make out a claim for conversion or civil theft. Rather, in light of applicable agency and regulatory law and the disclosures in the decommissioning policy—all of which support a finding that Fluid was entitled to authorize HHK's involvement—Plaintiff needed to allege that it specifically *forbade* HHK from participating in the sales process in order to establish liability against HHK for civil theft or conversion. It is undisputed such allegations do not exist in the SAC. Moreover, though, even if Fluid was not authorized by the FVIP's to involve HHK in the sale of their vehicles, such liability for that lack of authorization lies *with Fluid*—the entity who owed a legal duty to the FVIPs—not HHK, who was simply acting in accordance with the authority

- 6 -

vested in it by Fluid.  Plaintiff has cited no legal authority or even provided an equitable explanation that would support holding HHK liable for Fluid's choices to involve it in the FVIP vehicle sale process.  Because claims for civil theft and conversion require a plaintiff to show that the defendant acted without authority—a point Plaintiff concedes in the Opposition [ECF No. 90 at 5-6]—and because Plaintiff has not adequately alleged HHK acted without authority, the Court should dismiss these claims against HHK.

### B. Urban's Failure to Allege Sufficiently a Specific Intent on HHK's Part to Permanently Deprive It of Its Funds Destroys Its Civil Theft Claim.

The Court must also dismiss the civil theft claim against HHK, because there is not a single *factual* allegation in the SAC that HHK had the **specific intent** to permanently deprive FVIP owners of the benefit of their property.  Though Plaintiff attempts to downplay this requirement in its Opposition, this is a *mandatory element* of a civil theft claim.  *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016) (quoting C.R.S. § 18-4-401(1)(a)-(d)).  The only Paragraph in the SAC that Plaintiff cites to in its Opposition for the argument that it *did*, in fact, allege HHK's specific intent to permanently deprive it of the benefit of its property in Paragraph 123 of the SAC, which states, "Defendants have knowingly retained funds belonging to Urban Interests and other Class members without authorization, and have intentionally used and misappropriated Urban Interests and other Class members' funds to fund Fluid Truck's operating deficit and for other purposes—doing so in a manner and with the intent to permanently deprive Urban Interests and other Class members of their rightful benefit of those same funds."  [SAC at ¶ 123].  This is the very definition of a conclusory statement rather than a factual allegation, and the Court is "'not required to accept as true legal conclusions that are couched as factual allegations,' or 'bare, conclusory assertions' that are unsupported by

factual allegations.  In other words, a plaintiff can't rely on 'naked assertion[s] devoid of further factual enhancement.'"  *Woodall v. Godfrey*, 2024 COA 42, ¶ 8 (quoting *Fry v. Lee*, 2013 COA 100, ¶17, *Warne v. Hall*, 2016 CO 50, ¶ 27, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citations and quotations omitted).  "A 'conclusory' allegation is one '[e]xpressing a factual inference without stating the underlying facts on which the inference is based.'"  *Id.* at ¶ 33.

In its Opposition, Plaintiff identifies Paragraphs 32, 37, 40, and 41 of the SAC as alleging the underlying facts on which the inference in Paragraph 123 is based.  But none of those paragraphs support an inference that HHK knowingly retained FVIP funds with the *specific intent* to **permanently** deprive the Plaintiff of their benefit:

- Paragraph 32 alleges that, "Eberhard and Snyder would ***delay*** HHK Vehicles' payment of sales proceeds to Fluid Truck, and then from Fluid Truck to FVIP owners…" [SAC at ¶ 32 (emphasis added)].  But a specific intent to **permanently** deprive the owner of funds the use of those funds cannot be inferred from a delay in payment, because "delay" suggests that the funds were eventually paid, so Plaintiff was not *permanently* deprived;

- Paragraph 37 alleges that, "[r]ather than send wire transfers immediately after HHK Vehicles received the proceeds from a FVIP vehicle sale, Snyder would delay payment or fail to make the transfer to Fluid Truck altogether."  [*Id.* at ¶ 37].  But this is an allegation against *Snyder*—not HHK.  An allegation that *Snyder* would fail to make the transfer altogether suggests nothing about *HHK*'s specific intent— particularly given that Plaintiff alleges that Snyder was only half of HHK.  [*Id.* ¶ 27].

- Finally, Paragraphs 40 and 41 allege that "Snyder was using HHK Vehicles as

a fence through which she was able to issue to herself hundreds of thousands of dollars' worth of 'shareholder loans' from HHK Vehicles [and that] Snyder failed to account for these 'loans' or pay them back to FVIP owners." But nowhere in the SAC does Plaintiff allege that the *only* money in HHK's bank accounts was FVIP money, so the mere allegation that *Snyder*—again, only one half of HHK—issued herself loans from HHK that she did not pay back suggests nothing about whether that was FVIP money *or*, if it was, about *HHK*'s specific intent to permanently deprive Plaintiff of the benefit of its money.

Because the SAC does not allege **any** underlying facts on which the inference in Paragraph 123 that "Defendants [] knowingly retained funds belonging to [Plaintiff] without authorization…doing so in a manner and with the intent to permanently deprive [Plaintiff] of their rightful benefit of those same funds" could be based, the paragraph constitutes a conclusory allegation, which the Court need not accept as true. [SAC at ¶ 123]. Since this is the only allegation that HHK had the specific intent to permanently deprive Plaintiff of its funds, the civil theft claim <u>must</u> fail as a matter of law.

### C.   Urban's Arguments in Its Opposition Fail to Save Its Claim for Money Had and Received.

HHK argued in its Motion that, because Plaintiff alleged that Fluid is actually the entity who ended up with the money—not HHK—the ***equitable*** claim for money had and received cannot be brought against HHK, given it is not actually in possession of the money. Plaintiff's primary defense against this argument in the Opposition is that "Colorado courts have recognized that the defendant who wrongly "has received" the money should be required to repay it—whether the defendant still has the money or not." [ECF No. 90 at 10-11 (citing a case that "den[ied] motion to dismiss claim for money had

and received where defendant 'ultimately received [the money] **and used it himself**.'")
(emphasis added)]. It should be clear to the Court that there is a major difference between
the case at issue here and the one cited by Plaintiff: the SAC does not allege that HHK
used the money itself—rather, it alleges that "Fluid Truck and HHK Vehicles have stolen
from the FVIP vehicle owners **to fund Fluid Truck's ongoing operations**—and Fluid
Truck effectively concedes as much." [SAC at ¶ 51 (emphasis added)]. Plaintiff's
argument boils down to this: Fluid was supposed to receive the FVIP vehicle sale
proceeds—not HHK. Thus, HHK "wrongly 'has received' the money." [ECF No. 90 at
10]. Of course, HHK *did* give the money over to Fluid, and Fluid was the one who
ultimately misappropriated the FVIP funds for its own use. But, since HHK did at some
point wrongly *receive* the money, it is immaterial that it no longer has the money and paid
it over to the entity who was supposed to receive it all along, who then used it for itself.
Thus, Court, the only equitable solution would be to let Fluid retain the $11 million Plaintiff
alleges it used for its own operations and leave HHK holding the bag for that $11 million,
because the money did at some point pass through HHK, which it wasn't supposed to do.
This, Plaintiff says, is the equitable result intended by the equitable cause of action of
money had and received.

To the extent it needs to be said explicitly, there is nothing equitable about
Plaintiff's proposed outcome, and the only case Plaintiff cites in support of the notion that
a defendant sued for money had and received need not actively possess the funds is one
easily distinguished by the fact that the defendant there spent the funds on itself, and
Defendant here transferred them to Fluid. Thus, this equitable claim for relief must fail.

### III.    CONCLUSION.

For the reasons set forth herein, the Motion should be granted.

Respectfully dated this 6th day of June, 2025.

KUTAK ROCK LLP


By: *s/ Chad T. Nitta*
    Chad T. Nitta, # 31921
    chad.nitta@kutakrock.com
    Shelby L. Morbach, #55913
    shelby.morbach@kutakrock.com
    Heather N. Tilley, #54149
    Heather.tilley@kutakrock.com

    2001 16th Street
    Suite 1800
    Denver, CO  80202-5292
    Telephone:    (303) 297-2400
    Facsimile:    (303) 292-7799

    *Attorneys for Defendants HHK Group,*
    *LLC, James Eberhard and Jenifer*
    *Snyder*

4925-3723-3738.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, I electronically filed the foregoing **DEFENDANT HHK VEHICLES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David C. Holman, Esq.
John K. Crisham, Esq.
Crisham & Holman LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
*Attorneys for Plaintiff*

William R. Thomas, Esq.
Brian R. DeMocker, Esq.
O'Hagan Meyer, PLLC
1331 17th Street, Suite 350
Denver, CO 80202
wthomas@ohaganmeyer.com
bdemocker@ohaganmeyer.com
*Attorneys for Defendant Thomas Scott Avila*

John Chrisman Hawk, Esq.
Womble Bond Dickinson LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com

Laura D. Jones, Esq.
David M. Bertenthal, Esq.
Timothy P. Cairns, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market St, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
ljones@pszlaw.com
dbertenthal@pszlaw.com
tcairns@pszlaw.com
*Attorney for Fluid Market, Inc. and Fluid Fleet Services LLC*

s/ Chad T. Nitta
Chad T. Nitta
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Tel:  303-297-2400
Chad.nitta@kutakrock.com

- 12 -