IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2811-GPG-NRN

URBAN INTERESTS LLC, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

FLUID MARKET INC., FLUID FLEET SERVICES LLC,
HHK VEHICLES, INC., JAMES EBERHARD, JENIFER SNYDER,
PALADIN MANAGEMENT GROUP, LLC, and THOMAS SCOTT AVILA,

    Defendants.

**DEFENDANTS AVILA AND PALADIN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff criticizes Snyder/Eberhard's respective Motions to Dismiss, suggesting that the Court must purportedly "enter an alternative universe" to believe their arguments (ECFs 91 at 2; 92 at 2). Yet, Plaintiff's Response to Avila/Paladin's Motion to Dismiss does just that by advancing arguments that ignore its own allegations, omissions, and the law. Plaintiff unjustly asserts Avila and Paladin are trying "to shirk responsibility, or point the finger to other co-defendants" (ECF 93 at 5). Not true. *Plaintiff* points the finger at everyone else and *Plaintiff* has provided no factual or legal basis to maintain its claims for civil theft or conversion against Avila and Paladin. Plaintiff has pled itself into the legal equivalent of a rock and hard place as it squarely (and in great detail) places blame on other defendants that undermines the very fabric of its claims against Avila and Paladin.

As such, for the reasons set forth below and in their joint Motion to Dismiss, (ECF 89), Avila and Paladin's Motion to Dismiss should be granted in full, with prejudice.

1

I.  **Plaintiff's Deficient Civil Theft Claim Against Avila and Paladin Fails.**

   a.  ***Plaintiff has failed to assert a factual or legal basis to sustain a claim for civil theft against Avila and Paladin.***

Plaintiff asserts that the sole basis for its civil theft claim against Avila/Paladin is they "took money belonging to the FVIPs." (ECF 93 at 5, 8–9). That is simply untrue as the Second Amended Complaint makes no such allegations. (*See* ECF 76). Instead, the Second Amended Complaint merely asserts that Avila and Paladin, in their managerial capacities, used certain Funds in Fluid's possession to fund Fluid's operations. (*See, e.g.*, ECF 76 ¶¶ 71–72, 74–75). That is not a viable basis to assert a civil theft claim as it is undisputed, as Plaintiff concedes, such a claim can only be asserted against "takers" and "possessors." (ECF 93 at 8). But, even if a "user" could be held liable for civil theft (which it legally cannot), Plaintiff's claim still fails for the reasons set forth in Avila's and Paladin's Motion to Dismiss. (*See* ECF 89 at 9–12). Plaintiff's response as to each of the reasons set forth in Avila's and Paladin's Motion also fail.

*First*, in its Response, Plaintiff cites to various paragraphs in the Second Amended Complaint, which purportedly establish that Avila and/or Paladin took FVIP monies. (ECF 93 at 7–8). None of these paragraphs make any such allegations, (*see* ECF 76 ¶¶ 67–68, 71, 81, 90), or are unfounded, conclusory allegations not entitled to the presumption of truth. (*See id.* ¶ 127); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

What's more, Plaintiff fails to respond to the fact that the Second Amended Complaint does not allege that the $2.1 million in the Disposition Accounts *only* contained FVIP funds. *Compare* (ECF 89 at 10) *with* (ECF 93). Absurdly, Plaintiff states in its Response (but not the Second Amended Complaint) that at the time Avila and Paladin were retained Fluid held $2.1 million *in trust* belonging to Plaintiff and the other FVIPs.

2

(ECF 93 at 4) (citing ECF 76 ¶ 67). Not only does the Second Amended Complaint conclusively not say anything about funds being held in trust, it states the exact opposite. *Compare* (ECF 76 ¶ 67) *with* (ECF 76 ¶¶ 55–60, 62).

In fact, Plaintiff asserts in response to HHK, Snyder, and Eberhard's motions to dismiss that the at-issue funds were "*supposed to be held in trust by Fluid*," but were not. (*See* ECFs 90 at 2; 91 at 4; 92 at 4). And, because the Second Amended Complaint fails to state that the Disposition Accounts only contain FVIP funds, Plaintiff has not alleged and cannot allege that the portion of any of the accounts "used" by Avila and/or Paladin for Fluid operations actually belonged to Plaintiff or any FVIP. *See Million v. Grasse*, 2024 COA 22 ("[M]oney is fungible" so civil theft claims wherein the property at issue is money require a showing of specifically identifiable funds or accounts, such as escrow accounts).

Additionally, Avila and Paladin showed that of the roughly $11 million alleged to be at issue, Plaintiff asserts that other Defendants took over $11.8 million of the at-issue money before Avila/Paladin were retained. (ECF 89 at 5, 8). Plaintiff concedes this summation in its Responses to other Defendants' motions. (*See* ECFs 91 at 12; 92 at 12). More importantly, Plaintiff concedes that its allegations against Avila and Paladin relate only to actions taken after other Defendants were terminated, and thus "after" the "more than $11 million" was taken. (ECF 93 at 8).

Plaintiff has now alleged three time that "more than $11 million" was taken from FVIPs. (*See* ECFs 1 at ¶¶ 1, 27; 33 at ¶¶ 1, 33; 76 at ¶¶ 1, 50, 84). "More than $11 million" was calculated as just over $11.8 million. (ECF 89 at 5). Notwithstanding Plaintiff's very detailed allegation, Plaintiff does not allege it is owed "more than $12 million," which shows that Plaintiff is not seeking beyond $11.8 million, all of which money was allegedly

3

taken prior to Avila's and Paladin's retention. (*Id.* at 5). Plaintiff has no response to this summation, and it has failed to assert any allegations that the amount allegedly taken from FVIPs exceeds the $11.8 million taken prior to Avila/Paladin's retention.

*Second*, after Plaintiff concedes that civil theft claims may only be maintained against a "taker" or a "possessor," (ECF 90 8–9), it tries in the Response to twist its own allegations to argue that Avila and Paladin are *not* just users, but are "possessors" because their invoices were paid from the slush fund that were the Disposition Accounts. (ECF 93 at 10). That assertion also fails as Plaintiff cites only to unfounded legal conclusions, (*see* ECF 76, ¶¶ 120–122, 127), none of which assert Avila/Paladin possess at-issue funds. The only allegations Plaintiff makes on that issue is that Fluid or HHK possess the funds. (ECF 76 ¶¶ 1, 50, 83, 112–114, 124–125, 133, 140). That is why Plaintiff is *only* asserting a money-had-and-received claim against Fluid and HHK.

Plaintiff also fails to address that the *Goode* case cited by Defendants also discussed a failure to plead a civil theft claim in the absence of allegations that the *Goode* plaintiff had been deprived of *specific funds*. See *Goode v. Ramsaur*, 2024 U.S. Dist. LEXIS 147009, at *49–50 (D. Colo. Aug. 16, 2024) (noting that an allegation of the deprivation of *specific funds* is a "necessary element").

*Third*, Plaintiff bolds various words in its allegations in an attempt to hide the fact that it fails to allege that the $2.1 million allegedly in the Disposition Accounts when Avila and Paladin were retained were <u>only</u> FVIP proceeds. (ECF 93 at 10–11). Plaintiff then dodges the commingling argument proffered by Avila/Paladin and states, without more, that "even if the stolen funds were commingled with other funds, that is irrelevant to Plaintiff's claim for civil theft." (ECF 93 at 11). The reason why Plaintiff fails to provide an

4

explanation is because none exists. As Avila/Paladin showed, because the Disposition Accounts were purportedly commingled with non-FVIP funds, it makes it "impossible" to determine what funds were allegedly used. *Connolly v. Asbestos Abatement, Inc.*, 606 B.R. 871, 886 (Bankr. D. Colo. 2019); *U.S. v. Battles*, 745 F.3d 436, 456 (10th Cir. 2014).

*Fourth*, Plaintiff tries yet again to assert Avila/Paladin retained or possess at-issue funds by pointing solely to Paragraph 72 of the Second Amended Complaint. (*See* ECF 93 at 11–12). That is not what is alleged in that Paragraph. (ECF 76 ¶ 72) (alleging Avila and Paladin "used" funds in the slush Disposition Accounts). And, as stated above, no such allegations are asserted against Avila/Paladin, but only against HHK and Fluid.

*Fifth*, in response to Defendants' arguments against Plaintiff's attempts to expand the reach of the civil theft statute, Plaintiff relies exclusively on its conclusory allegation in Paragraph 127 to support its claim that Avila/Paladin allegedly "took FVIPs' property." (ECF 93 at 12). That allegation is merely a conclusory assertion without any factual basis, and is insufficient to assert a claim. Plaintiff then argues that Avila did not personally commit civil theft or conversion, he engaged in ancillary conduct apart from the allegedly tortious acts themselves, but can still be held personally liable as a corporate officer. (*See* ECF 93 at 13). In other words, Plaintiff believes this principle is sufficient by itself to assert a plausible claim for civil theft or conversion against Avila. That is incorrect.

The cited principle serves to preclude a corporate officer, who personally "inflict[ed] wrong and injuries upon others" from "shield[ing] himself from liability behind his vicarious character." *Snowden v. Taggart*, 17 P.2d 305, 307 (Colo. 1932). It is not a stand-alone cause of action. *See id.* Moreover, in *Hoang v. Arbess*, the Court of Appeals held that an officer may be personally liable for their "individual acts … even though committed on

5

behalf of the corporation." 80 P.3d 863, 867 (Colo. App. 2003). "And the corporate veil need not be pierced where a tort action is brought against an officer or director **and the elements of the tort are proved.**" *Id.* at 868 (collecting cases) (emphasis added).

Meaning, the law Plaintiff cites is a pseudo-defense to a corporate officer trying to avoid liability because the officer engaged in conduct in their corporate capacity. That is not the case here. More importantly, an officer can be held personally liability only if the plaintiff establishes the requisite elements of that tort against that officer. Unless the plaintiff can establish an underlying claim against the officer, alleging the officer approved, sanctioned, or cooperated in some alleged conduct is irrelevant.

That is where Plaintiff misses the mark. Civil theft and conversion are intentional torts, and require the tortfeasor to *personally* deprive an owner of their property or *personally* exercise domain/control over the property. *See Chavez v. Chavez-Krumland*, 2022 COA 89M, ¶ 47 (civil theft requires specific intent); *Harris Group v. Robinson*, 209 P.3d 1188 (Colo. App. 2009) ("Conversion is an intentional tort"). As noted above (and below with respect to conversion), Plaintiff fails to allege Avila *personally* committed any act to sustain a claim for civil theft or conversion, much less does Plaintiff allege sufficient affirmative conduct by Avila to satisfy the elements of these torts. Thus, Plaintiff's argument for why Avila can be held liable is legally baseless and fails as a matter of law.

> **b.    *Plaintiff fails to establish specifically identifiable funds at issue, and thus fails to plead civil theft against Avila and Paladin.***

Plaintiff bizarrely states that the *Million* court "expressly limited its holding to cases in which a plaintiff alleged **both** a breach of contract and civil theft claim." (ECF 93 at 14). That is plainly wrong. *See generally Million*, 2024 COA 22 (not limiting its holding); *see also Goode*, 2024 U.S. Dist. LEXIS 147009, at *49–50 (holding that, to state a claim for

6

stolen money pursuant to C.R.S. § 18-4-405, an allegation of the deprivation of "*specific funds*" is a necessary element). Even Plaintiff's quotation of the *Million* case contradicts its argument. (ECF 93 at 14). Regardless, Plaintiff cites Paragraphs 52, 67–68, 77–78, and 81 of the Second Amended Complaint in a desperate attempt to show that it alleged specifically identifiable accounts and funds. (ECF 93 at 15). None of these paragraphs allege specifically identifiable accounts or funds that were in existence at the time Avila and Paladin entered the picture. (*See* ECF 76 ¶¶ 52, 67–68, 77–78, 81). At best, Plaintiff alleges the "*design*" of the accounts was to hold only FVIP proceeds, but Plaintiff explicitly alleges that the *actual usage* of the accounts was the opposite. (*Id.* ¶¶ 52–60, 62).

The Colorado Court of Appeals in *Million* clearly set forth the requirements to sustain a civil theft claim when then property at issue is money, and Plaintiff's allegations clearly fall outside the parameters of such a claim. *See Million*, 2024 COA 22, ¶¶ 47–50. Regardless of how the Disposition Accounts were *intended* to be used, or how they were initially used, <u>by the time Avila and Paladin were retained, the Disposition Accounts were conclusively not specifically identifiable accounts containing specifically identifiable funds</u>. (ECF 76, ¶¶ 60, 62). Plaintiff wholly fails to address Defendants' showing that Plaintiff affirmatively alleges that the use of the Disposition Accounts as slush funds was formalized prior to Avila's and Paladin's retention. *Compare* (ECF 89 at 5) *with* (ECF 93).

II.   **Plaintiff's Deficient Conversion Claim against Avila and Paladin Fails.**

Plaintiff surprisingly states that it sufficiently alleged that Defendants had dominion over the Disposition Accounts and the insurance proceeds. (ECF 93 at 15–16). To the contrary, the word "dominion" does not appear in the Second Amended Complaint, much less in Plaintiff's cited paragraphs, and Plaintiff does not allege Avila/Paladin exercised control or ownership over any actual FVIP funds at issue. (*See* ECF 89 at 14).

Plaintiff's reliance on the 1957 *Standley* case is also misplaced. The defendants in *Standley* admitted that money received belonged to others, which is indisputably not the case here. *See Standley v. Am. Auto. Ins. Co.*, 314 P.2d 696, 697 (Colo. 1957).

Continuing Plaintiff's exploration of historical cases, Plaintiff cites to the 1970 *Schmidt* case in an attempt to excuse its own failure to plead that Plaintiff made a demand upon Avila and/or Paladin for the return of its alleged monies. (ECF 93 at 16). However, Colorado law is clear that a "demand … for the return of the property and a refusal to comply therewith were prerequisites to [a plaintiff's] right to recover damages for conversion." *McCartney v. Foster*, 150 Colo. 537, 539 (1962) (citing *Davis v. American Nat'l Bank*, 149 Colo. 34 (1961)); *Williams v. Genesis Fin. Techs., Inc.*, 790 Fed. Appx. 161, 165 (10th Cir. 2019) ("Under Colorado law … A demand for return of the property and refusal by the controlling party are predicates to a successful claim.").

But, even if *Schmidt* applies, Plaintiff states that a demand is unnecessary because "Mr. Avila announced his refusal to return FVIP owners' funds in his August 21, 2024 email", and certain insurance proceeds were not segregated when received by Fluid. (ECF 93 at 16) (citing ECF 76 ¶¶ 77, 81). Plaintiff's argument fails for two reasons.

*First*, Paragraph 77, which largely quotes Avila's alleged August 21, 2024, email, states nothing that could possibly be interpreted as a refusal to return FVIP monies. (ECF 76 ¶ 77). In that email, Avila communicates on behalf of Fluid, as opposed to in his personal capacity, that Fluid is facing significant financial challenges and are, at that time, unable to process arrears payments, but that the company expects to pay out insurance and sales proceeds monies in a timely manner moving forward. (*Id.*). Paragraph 81 is also inapplicable as it concerns *Fluid* allegedly using insurance funds for operations that

8

Case No. 1:24-cv-02811-GPG-NRN    Document 98    filed 06/13/25    USDC Colorado
pg 9 of 10

should have been segregated, not Avila or Paladin controlling, claiming, possessing, or refusing to relinquish such funds. (*Id.* ¶ 81).

*Second*, Plaintiff once again argues itself into a corner by citing the *Montgomery Ward* case for the proposition that "the tort of conversion is complete upon the taking." (ECF 93 at 16). Plaintiff seemingly forgets that it alleges that HHK first possessed all of the sale proceeds at issue without authorization, (ECF 76 ¶ 31), and Fluid improperly retained or spent all proceeds thereafter. (*Id.* ¶¶ 1, 50–51). Meaning, the alleged conversion was completed by HHK and Fluid before Avila/Paladin allegedly did anything. And, as noted above, Plaintiff concedes the total amount being sought in this case ($11.8 million) was allegedly taken before Avila/Paladin entered the picture. (*See* ECFs 89 at 5; 93 at 8). Therefore, Plaintiff's conversion claim fails as a matter of law.

## CONCLUSION

WHEREFORE, for the reasons stated above, and those set forth in their Motion to Dismiss, Defendants Avila and Paladin respectfully request that this Court GRANT their Motion to Dismiss, dismiss with prejudice Plaintiff's Second and Third Claims for Relief against Avila and Paladin, and grant to them any and all further relief as this Court deems just and appropriate.

Respectfully submitted,

O'HAGAN MEYER, PLLC

By: */s/ William R. Thomas*
William R. Thomas, Esq.
Brian R. DeMocker, Esq.
1331 17th Street, Suite 350
Denver, Colorado 80202
303.652.5881
wthomas@ohaganmeyer.com
bdemocker@ohaganmeyer.com

Dated: June 13, 2025

9

## CERTIFICATE OF SERVICE

  I hereby certify that on this 13th day of June, 2025, a true and correct copy of **DEFENDANTS AVILA AND PALADIN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT** was filed and served electronically via the CM/ECF system which will send notification of the filing to the following:

David C. Holman, Esq.
John K. Crisham, Esq.
Christopher T. Carry, Esq.
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
dave@crishamholman.com
john@crishamholman.com
chris.carry@crishamholman.com
*Attorneys for Plaintiff Urban Interests LLC*

John C. Hawk, IV, Esq.
WOMBLE BOND DICKINSON LLP
1899 Wynkoop Street, Suite 750
Denver, CO 80202
John.hawk@wbd-us.com
*Attorney for Defendants Fluid Market, Inc. and Fluid Fleet Services LLC*

Chad T. Nitta, Esq.
Heather N. Tilley, Esq.
Shelby L. Morbach, Esq.
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Chad.Nitta@kutakrock.com
Shelby.Morbach@kutakrock.com
Heather.tilley@kutakrock.com
*Attorney for Defendants James Eberhard and Jenifer Snyder*

            *s/ Ramona Raub*
            Ramona Raub, Legal Assistant